# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| NORTHEAST OHIO COALITION FOR THE HOMELESS, et al., | : | Civil Action No. _____ |
| | : | Judge _____ |
| Plaintiffs, | : | |
| vs. | : | **MOTION FOR TEMPORARY RESTRAINING ORDER** |
| J. KENNETH BLACKWELL, | : | |
| Defendant. | : | |
| | : | |

---

Plaintiffs The Northeast Ohio Coalition for the Homeless ("NEOCH") and Service Employees International Union, Local 1199 ("SEIU") (collectively "Plaintiffs") respectfully move this Court under Federal Rule of Civil Procedure 65(b) for a temporary restraining order enjoining the enforcement of the voter-identification provisions in House Bill 3 and codified in Ohio Revised Code Sections 3501.01(AA), 3501.19, 3505.18, 3505.181(A)(2), 3505.181(A)(3), 3505.181(A)(4), 3505.181(A)(12), 3505.181(A)(13), 3505.181(B)(6), 3505.181(B)(7), 3505.181(B)(8)(a), portions of 3505.182, 3505.183(B)(3)(d), 3505.183(B)(4)(a)(v), 3505.183(B)(4)(a)(vii), 3509.03(E), portions of 3509.04, portions of 3509.05, portions of 3509.06(D) and portions of 3509.07.

These new voter-identification laws are confusing, vague, and impossible to apply, are in fact being applied differently by Ohio's Boards of Elections, and subject voters to possible criminal penalties. The laws will cause the November 2006 election to be conducted in a manner that is fundamentally unfair, will have a chilling effect on the willingness of voters to exercise their right to vote, and will apply the laws unequally to voters across the State of Ohio, including Plaintiffs' members, and thus will deprive them of their rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.

Voters who vote on Election Day will be confronted with these problems on November 7, 2006. But these problems are causing immediate and irreparable harm to absentee voters who are now voting or attempting to vote, and who are threatened with the deprivation of their right to vote. Accordingly, a Court order temporarily restraining the enforcement of these provisions is required. A proposed Order is attached as Exhibit A.

Respectfully submitted,

Caroline H. Gentry, Trial Attorney (0066138)
Andrew J. Gottman (0071600)
PORTER WRIGHT MORRIS & ARTHUR LLP
One South Main Street, Suite 1600
Dayton, OH 45402
Telephone: (937) 449-6748
Facsimile: (937) 449-6820
Email: cgentry@porterwright.com

and

Subodh Chandra (0069233)
THE CHANDRA LAW FIRM, LLC
2275 Chestnut Hills Drive
Cleveland, OH 44106-4602
Telephone: (216) 965-6463
Facsimile: (216) 721-4008 (call first)
Email: Subodh.Chandra@StanfordAlumni.org

and

H. Ritchey Hollenbaugh (0001072)
CARLILE PATCHEN & MURPHY LLP
366 East Broad Street
Columbus, OH 43215
Telephone: (614) 228-6135
Facsimile: (614) 221-0216
Email: hrh@cpmlaw.com

Attorneys for Plaintiffs

## MEMORANDUM IN SUPPORT OF
## MOTION FOR TEMPORARY RESTRAINING ORDER

**I.   THE NEW VOTER-IDENTIFICATION LAWS ARE CONFUSING, VAGUE, AND IMPOSSIBLE TO APPLY, AND IN FACT ARE BEING APPLIED DIFFERENTLY AND UNEQUALLY BY OHIO'S BOARDS OF ELECTIONS**

Plaintiffs request immediate relief because the voter-identification provisions in House Bill 3 are so vague as to be incomprehensible in several respects, and this vagueness is leading to the unequal and unfair application of the laws by Boards of Election to absentee voters.

In 2006 the Ohio General Assembly passed House Bill 3, which amended the Ohio Election Code to require that voters provide specific types of identification in order to cast a regular ballot in state and federal elections held in Ohio. Under the new laws, a registered voter who appears in a polling place to vote must provide documentary proof of her identity

> in the form of a current and valid photo identification, a military identification that shows the voter's name and current address, or a copy of a current utility bill, bank statement, government check, paycheck, or other government document, other than a notice of an election mailed by a board of elections under section 3501.19 of the Revised Code or a notice of voter registration mailed by a board of elections under section 3503.19 of the Revised Code, that shows the name and current address of the elector.[1]

(A "photo identification" must show the voter's name, current address and photograph.[2]  It must also include an expiration date that has not passed and have been issued by either the U.S. Government or the State of Ohio.[3])  A registered voter who provides one of these required forms of identification shall be permitted to cast a regular ballot.[4]

---

[1] Ohio Rev. Code § 3505.18(A)(1).
[2] Ohio Rev. Code §3501.01(AA).
[3] *Id.*
[4] Ohio Rev. Code § 3505.18(B).

Several aspects of these new voter-identification laws are confusing, vague, or impossible to apply. Indeed, Boards of Elections are applying them differently and unequally to absentee voters, including early in-person voters. Voters who vote by absentee or provisional ballot must acknowledge that they face criminal penalties if they violate election laws, and the uncertainty surrounding the voter-identification laws is likely to chill voters from exercising their rights to vote. Moreover, the unequal application of the laws to registered voters across the State of Ohio will cause and is causing the November 2006 election to be conducted in a fundamentally unfair manner. Because the constitutional rights of Plaintiffs' members are violated, this Court should temporarily restrain and enjoin the enforcement of these laws.

A. **Portions Of The New Voter-Identification Laws Are Confusing, Vague, Or Impossible To Apply, And Boards Of Elections Are In Fact Applying These Laws Differently To Absentee Voters**

Six aspects of the new voter-identification laws are confusing, vague, or impossible to apply, and in fact are being applied differently by Boards of Elections to absentee voters who cast their votes by mail or in early in-person voting.

1. *Boards of Elections are applying different interpretations of the phrase "current utility bill, bank statement, government check, paycheck, or other government document."*

Voters may provide a "current utility bill, bank statement, government check, paycheck, or other government document."[5] The Ohio Election Code does not define the word "current" or specify whether one of these documents will be "current" and acceptable if (a) it is dated within the last thirty days, (b) it is dated within the last sixty days, (c) it is dated within the last ninety days, (d) it is dated within any fixed time period, or (e) it has any date so long as the address is current.

---

[5] Ohio Rev. Code § 3505.18(A)(1).

Boards of Elections either are either applying differing interpretations of the word "current" or have not promulgated a standard at all:[6]

- A Cuyahoga County Board of Elections representative says that a "current" a utility bill or similar form of identification should be this month's bill to be acceptable, doesn't "think" they'll disenfranchise anyone over last month's bill, but says the board will not honor older bills even with a current address.[7]
- The Mahoning and Franklin County Boards of Elections do not have policies regarding how "current" a utility bill or similar form of identification must be to be acceptable.[8]
- Sixty-three Ohio Boards of Elections maintain websites. Only four of them attempt to explain how current a utility bill or similar form of identification must be to be acceptable but even they offer only that the identification be valid.[9]

These examples, and they are only a few, show that Boards of Elections will apply different standards, or no standards, when interpreting the word "current" in the phrase "current utility bill, bank statement, paycheck, government check or other government document" in the new laws. Defendant has failed to provide guidance on this issue and voting is underway.

2. *Boards of Elections are applying different interpretations of the phrase "other government document."*

Voters may provide an "other government document."[10] The Ohio Election Code does not define this phrase or specify whether the "government" must be the State of Ohio or the United States Government as is required for photo identifications to be acceptable,[11] or whether it could be some other government.

---

[6] The facts presented in this motion are found in the Declarations filed concurrently with this motion.

[7] Staib Decl. at ¶ 18.

[8] Barga Decl., Ex. B (board representative only says bill should be "current" and offers only "[o]ne would suppose" in response to question about whether bill is acceptable no matter how old if address on bill is address where voter is currently registered"); Clayton Decl. at ¶ 20.

[9] Trevas Decl. at ¶ 3 and Ex. 1, Column C; Eldridge Decl. at ¶ 3 and Ex. 1, Column C.

[10] Ohio Rev. Code § 3505.18(A)(1).

[11] *Id.* at § 3501.01(AA).

Boards of Elections are applying different standards when interpreting the phrase "other government document":

- The Cuyahoga County Board of Elections will accept any type of government document, U.S., city, state, or county government.[12]
- The Hamilton and Knox County Boards of Elections will only accept a document that was issued by the State of Ohio or the United States Government.[13]
- One representative of the Franklin County Board of Elections had "'no idea'" stating the term is "not defined" but would exclude board of elections documents. Another representative seemed to have a more expansive view.[14]
- Of the sixty-three Ohio Boards of Elections that maintain websites, only Knox and Hamilton Counties attempt to explain the meaning of this phrase.[15]

These few examples show that Boards of Elections will apply different standards, or no standards, when interpreting the phrase "other government document" in the voter-identification laws. Defendant has failed to provide any guidance on this issue and voting is underway.

3. ***Boards of Elections are applying different practices regarding whether the "Photograph Number" on Ohio driver's licenses will be accepted.***

When requesting or returning an absentee ballot, voters may provide a driver's license number in lieu of one of the required forms of identification.[16] There are, however, two numbers on an Ohio driver's license: (a) a small number buried along the center of the left-hand side of the driver's license under the words "LICENSE NO" (License Number); and (b) a much larger and more prominent number that appears over the photograph (Photograph Number). The statute does not specify which of those two numbers is an acceptable form of identification.

---

[12] Staib Decl. at ¶ 20.
[13] Travas Decl. at Ex. 1, page 1, Column D, Row 32; Eldridge Decl. Ex. 1, page 1, Column D, Row 32.
[14] Clayton Decl. at ¶ 24.
[15] *Id*
[16] Ohio Rev. Code § 3509.03(E)(1), 3509.05(A)

Boards of Elections are applying different standards, or no standards, to the issue of whether they will accept both the Photograph Number and the License Number:

- While the executive director of the Cuyahoga County Board of Elections said that the Board will count absentee ballots with the Photograph Number, two other staff persons reported that such ballots are being rejected.[17]

- The Mahoning County Board of Elections will not accept the Photograph Number.[18]

- The Franklin County Board of Elections has made a formal inquiry to Defendant regarding whether it may accept the Photograph Number.[19]

- The Trumbull County Board of Elections does not understand the issue.[20]

- Of the sixty-three websites maintained by different Boards of Elections, none of them address this issue.[21]

These examples show that Boards of Elections will apply different standards, or no standards, to the issue of whether the Photograph Number is an acceptable form of identification. Defendant has failed to provide any guidance on this issue as well, and people are trying to vote.

4. **Boards of Elections are applying different practices regarding whether military-identification cards that do not show current addresses are acceptable.**

Voters may also provide "a military identification that shows the voter's name and current address."[22] On information and belief, however, military-identification cards issued by the Army, Air Force, and Navy to their military personnel do not show the holder's current address. The impossibility of providing a military-identification card with a current address is causing and will cause significant confusion when people who are serving their country try to

---

[17] *Compare* Griffin Decl. at ¶¶ 6, 7, 24-26 (Cuyahoga County Board of Elections executive director Vu claims both numbers will be honored; same board's staff person Dreamer says ballots with photo numbers are being rejected) *with* Staib Decl. at ¶ 10 (same board's staff person DeFranco says that photo number is not being accepted).
[18] Barga Decl. at Ex. B, page 2, top half of page.
[19] Clayton Dec. at ¶ 13.
[20] Barga Decl. at Ex. A, page 2, top half of page.
[21] Travas Decl. and Eldridge Decl.
[22] Ohio Rev. Code §3505.18(A)(1).

present military-identification cards while exercising their right to vote absentee, early, or on election day.

Boards of Elections are applying different standards to the issue of whether military-identification cards that do not show a current address are an acceptable form of identification:

- The Mahoning and Trumbull County Boards of Elections refuse to accept military-identification cards that do not show an address.[23]
- The Cuyahoga County Board of Elections will accept military-identification cards that do not include current addresses.[24]
- Several of the sixty-three websites maintained by Boards of Elections repeat the statutory language requiring military-identification cards to show current addresses; three of them state that military-identification cards are acceptable without specifying whether they must show current addresses.[25]

These examples show that Boards of Elections will apply different standards, or no standards, to the issue of whether military-identification cards that do not show current addresses are acceptable forms of identification. Defendant has also failed to provide any guidance on this issue, yet people are already voting.

5.  *Some Boards of Elections are wrongly requiring voters to produce a photo identification with a current address.*

Voters may provide a "current and valid photo identification."[26] The phrase "current and valid photo identification" is not defined in the statute in which it appears. The term "photo identification" is however, defined in a different statute,[27] which explains that it must show the voter's name and photograph, have an expiration date that has not passed, have been issued by either the U.S. Government or the State of Ohio, and have a current *or former* address.

___

[23] Barga Decl. at Exs. A & B. page 2, center of pages
[24] Staib Decl. at ¶ 19
[25] Travas Decl. at Ex. 1, page 2, Column E, Rows 56, 76, 79; Eldridge Decl., Ex. 1, page 2, Column E, Rows 56, 76, 79
[26] Ohio Rev. Code § 3505.18(A)(1).
[27] Ohio Rev. Code § 3501.01(AA).

Accordingly, Ohio driver's licenses or state-identification cards that show former addresses are acceptable forms of identification under the new voter-identification laws.

Some Boards of Elections, however, are not accepting Ohio driver's licenses or state-identification cards that show former addresses:

- The Trumbull County Board of Elections will deny to right to case a regular ballot to voters who present an unexpired Ohio driver's license or state identification, but Mahoning County next door will permit the voter to vote.[28]
- Cuyahoga County's Board of Elections staff attempted to deny at least one voter the right vote a regular ballot who presented a driver's license with his previous address, despite the executive director's assurance that that was not the practice. The voter, a lawyer who knew the law, had to persist through a layer of supervision before the issue was resolved.[29]
- Sixty-three Ohio Boards of Elections maintain websites, and only four of them state that valid driver's licenses with former addresses will be accepted.[30]

These examples show that Boards of Elections will apply different standards when deciding whether to accept Ohio driver's licenses or state-identification cards with former addresses. Defendant, yet again, has failed to provide guidance on this issue. And people are trying to vote.

6. ***Some Boards of Elections are wrongly requiring absentee voters to produce one of the required forms of identification.***

Absentee voters who vote either by mail or in-person at their Boards of Elections are permitted to provide a Social Security number or driver's license number in lieu of the required identification.[31]

---

[28] *Compare* Barga Decl. at Ex. A, page 2 (Trumbull County) *with* Barga Decl. at Ex. B, page 2.
[29] Griffin Decl. at ¶¶ 9-19.
[30] Travas Decl. at Ex. 1, page 1, Column G, Rows 10, 26, 30, 32; Eldridge Decl., Ex. 1, page 2, Column G, Rows 10, 26, 30, 32.
[31] Ohio Rev. Code §§ 3509.03, 3509.04, 3509.05(A).

Nevertheless, contrary to law, some Boards of Elections are refusing to accept Social Security numbers from absentee voters who vote in person at the Board of Elections instead of by mail:

- The Lucas County Board of Elections is requiring early in-person voters to provide one of the required forms of identification and will not accept Social Security numbers.[32]
- The Cuyahoga County Board of Elections is requiring early in-person voters to provide one of the required forms of identification and will not accept Social Security numbers—but will accept Social Security numbers from absentee voters who mail in their ballots.[33]

These examples show that Boards of Elections will apply different standards when deciding whether to accept Social Security numbers from early in-person voters.

<b>B.    Absentee Voters Who Vote Prior To Election Day Have Been And Will Be Immediately And Irreparably Harmed By The Uncertainty And Confusion Surrounding These New Voter-Identification Laws</b>

Absentee voting began in early October, is occurring at the present time across the State of Ohio, and will continue up to Election Day. The harm caused to absentee voters by the uncertainty and confusion surrounding the voter-identification laws is immediate and irreparable.

Absentee voters who provide a copy of what they believe to be the proper identification (e.g., a six-month-old utility bill that shows the current address, a document issued by their local government, a military-identification card that does not show a current address, the Photograph Number from a driver's license, a driver's license that contains a former address, or a Social Security Number rather than one of the required forms of identification), will be deprived of their right to vote if their Board of Elections later determines that this identification is not acceptable. These absentee voters will also be irreparably harmed because they will not be given notice of

---

[32] Burnard Decl. at ¶¶ 1-4; Hill Decl. at ¶¶ 1-5.
[33] Staib Decl. at ¶¶ 11.

the need to provide a different form of identification, or the opportunity to provide it. They will also be irreparably harmed because they, unlike provisional voters,[34] cannot ever find out if their ballots were rejected and not counted.

The inability of these absentee voters to know what identification they must provide, to provide a different form of identification if the document that they provided is later deemed not to be acceptable, or even to find out if their absentee ballots were rejected or accepted, has caused and will cause immediate and irreparable harm to absentee voters who will be deprived of their fundamental right to vote as a result of this uncertainty and confusion.

### C. The Confusion Surrounding The New Voter-Identification Laws Will Have A Chilling Effect On Voters, Including Absentee Voters, Who Face Potential Criminal Sanctions For Violating The Election Laws

Voters who violate Ohio's election laws may be found guilty of a number of criminal offenses set forth in the Ohio Election Code. One offense is the crime of election falsification,[35] a fifth-degree felony punishable by a fine up to $ 2,500 and a prison term of between six and twelve months.[36] Offenses that are not specifically described fall within the "general penalty" section,[37] which provides that *any* violation of the Ohio Election Code (including the laws that impose obligations on voters to provide specified forms of identification) is a first-degree misdemeanor punishable by a fine up to $ 1,000 and a prison term of up to six months.[38] Whether a violation is "knowing" is *not* an element of the first-degree misdemeanor offense.

---

[34] *See* Ohio Rev. Code § 3505.181(B)(5)(b).
[35] A voter who "knowingly" states a falsehood as to a material matter is guilty of the crime of election falsification. Ohio Rev. Code § 3399.36.
[36] Ohio Rev. Code §§ 2929.14, 2929.18.
[37] Ohio Rev. Code § 3599.40.
[38] Ohio Rev. Code §§ 2929.24, 2929.28.

The concern that voters will be chilled from exercising their right to vote because of these criminal penalties is not academic. Voters who submit absentee ballots or provisional ballots must acknowledge that they face possible criminal penalties.[39] Both types of voters must affix a signature to their ballots on a line close to the following statement, in all capital letters: "WHOEVER COMMITS ELECTION FALSIFICATION IS GUILTY OF A FELONY OF THE FIFTH DEGREE."[40] Voters who cannot understand the new voter-identification laws—which are vague, confusing, and impossible to apply—may reasonably elect not to exercise their right to vote rather than face criminal prosecution for providing the wrong form of identification.

## II. THE NEW VOTER-IDENTIFICATION LAWS VIOLATE THE DUE PROCESS AND EQUAL PROTECTION CLAUSES OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

The facts described above establish that some of Plaintiffs' members, who are registered voters and who are following the language of the Ohio Election Code to the best of their ability, may be unable to interpret the new voter-identification laws in the same manner as their Board of Elections (who cannot agree themselves) and thus will be unfairly deprived of their right to vote. They also may be chilled from exercising their fundamental right to vote due to possible criminal penalties. Finally, it is clear that Boards of Elections are applying different standards to voters who are attempting to satisfy the new voter-identification laws. These facts constitute a denial of the right to vote of registered voters, including Plaintiffs' members, and violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.

---

[39] Ohio Rev. Code §§ 3509.04, 3505.182.
[40] *Id.*

### A. The New Voter-Identification Laws Violate The Due Process Clause Because The Uncertainty And Unequal Standards Faced By Absentee Voters Will Cause The Election To Be Fundamentally Unfair

A number of courts have held that the right to substantive due process will be denied if an election "is conducted in a manner that is fundamentally unfair."[41]  The Due Process Clause is not violated by "garden[-]variety" election irregularities but is violated by pervasive errors that undermine the integrity of the vote.[42]

After reviewing the relevant case law, the Ninth Circuit formulated this two-part test for determining whether an election is so fundamentally unfair that it violates the right to substantive due process:

> A general pattern emerges from all of these cases taken together. Mere fraud or mistake will not render an election invalid. However, a court will strike down an election on substantive due process grounds if two elements are present: (1) likely reliance by voters on an established election procedure and/or official pronouncements about what the procedure will be in the coming election; and (2) significant disenfranchisement that results from a change in the election procedures.[43]

The court further held that "[t]his is not an exhaustive description of electoral problems that might be fundamentally unfair."[44]  The Ninth Circuit later held that an election would alternatively be fundamentally unfair if the challenged action "so upsets the evenhandedness of the election that it works a patent and fundamental unfairness on the voters."[45]

Thus, this Court should find that the new voter-identification laws violate the right of Plaintiffs' members to substantive due process if it finds that (1) the election is conducted in a

---

[41] *Bennett v. Yoshina*, 140 F.3d 1218, 1226 (9th Cir. 1998).
[42] *Id.*
[43] *Bennett*, 140 F.3d at 1226-27.
[44] *Id.* at 1227 n.3.
[45] *Caruso v. Yamhill County*, 422 F.3d 848 (9th Cir. 2005).

manner that is fundamentally unfair, and (2) voters will likely rely upon a published or established election procedure that is changed and results in significant disenfranchisement, or if the Court finds that (3) the new laws so upset the evenhandedness of the election that they work a patent and fundamental unfairness on the voters.

All three tests are met here. First, it is fundamentally unfair to disenfranchise absentee voters, and possibly Election Day voters, by promulgating vague, confusing, and impossible-to-apply rules that are applied differently by different Boards of Elections, while also failing to provide any guidance about them (despite requests for such guidance) or ensure that they are uniformly applied.

Second, voters will reasonably rely on the notice that the Code required be mailed to each voter listing the acceptable identification requirements and containing the following text:

> Voters must bring identification to the polls in order to verify identity. Identification may include a current and valid photo identification, a military identification that shows the voter's name and current address, or a copy of a current utility bill, bank statement, government check, paycheck, or other government document, other than this reminder or a voter registration notification, that shows the voter's name and current address.[46]

Boards of Elections that change these procedures or apply different interpretations of them will cause significant disenfranchisement of voters. This is particularly true of absentee voters who will not be notified of the need to provide additional documentation, or given any opportunity to provide it, so that their absentee ballots may be counted.

Finally, given the confusion and disparate application of the new voter-identification laws to date, these laws have *already* so upset the evenhandedness of the election that they will work a

---

[46] Ohio Rev. Code § 3501.19.

12

patent and fundamental unfairness on the voters, and will immediately work such unfairness on absentee voters who vote prior to Election Day.

**B.** **The New Voter-Identification Laws Impose An Undue Burden On And Threaten To Deprive Voters Of Their Right To Vote—Including Absentee Voters Who Vote Prior To The Election**

"No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined."[47] While Supreme Court has observed that state voting regulations are "constitutionally suspect" if they are "reasonable and nondiscriminatory,"[48] the Court requires the following approach when determining whether a State's election laws unduly burden the right to vote in violation of the Fourteenth Amendment:

> a court ... must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.[49]

Here, the character and magnitude of the asserted injury from the State's botched effort to supposedly prevent fraud is palpable and severe. Voters who are confused by the vague voter-identification requirements or given incorrect information by their Board of Elections may provide the wrong form of identification. Absentee voters who provide the wrong identification when they return their absentee ballots will be deprived of the right to vote with no due process,

---

[47] *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964).
[48] *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983) (citations omitted).
[49] *Id.* at 780, 789 (citations omitted)

i.e., no notice or an opportunity for a hearing. Other voters who are confused by these vague laws may be deterred from exercising their right to vote after learning of the possible criminal penalties that will apply if they violate Ohio's election laws. The deprivation of these voters' right to vote constitutes a severe injury.

Defendant will likely argue that states have a compelling interest in preserving the integrity of its election process, including an interest in ensuring that the right to vote is not undermined by election fraud.[50] While this is true, it is not dispositive. "The Court thus has 'upheld generally applicable and evenhanded restrictions that protect the integrity and reliability of the electoral process itself.'"[51] But the voter-identification laws are not "generally applicable and evenhanded," nor do they protect the integrity and reliability of the electoral process. If anything, they are causing massive confusion that is *undermining* the integrity and reliability of the electoral process. They therefore cannot survive any scrutiny by this Court.

### C. The New Voter-Identification Laws Are Being Applied By Boards Of Elections In A Manner That Violates The Equal Protection Clause

The Supreme Court has held that "once the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment."[52] The lines drawn by the new voter-identifications are so confusing, vague, and impossible to apply that they inevitably violate the Equal Protection Clause because Boards of Elections cannot apply, and are not applying, them uniformly to voters across the State of Ohio.

The Supreme Court recently addressed a similar problem when it held that Florida committed a constitutional violation by failing to apply uniform standards to the counting of

---

[50] *Burson v. Freeman*, 504 U.S. 191, 199, 112 S. Ct. 1846 (1992).
[51] *Id.* (quoting *Anderson*, 460 U.S. at 788 n.9).
[52] *Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 665, 86 S. Ct. 1079 (1966)

14

votes in a Presidential election.[53] While the underlying principle applied by Florida courts—the command to consider the intent of the voter—was itself not objectionable, the Court found that "[t]he problem inheres in the absence of specific standards to ensure its equal application. The formulation of uniform rules … is practicable and, we conclude, necessary."[54] A constitutional violation arises when states "accord[] arbitrary and disparate treatment to voters in its different counties."[55] Boards of Elections that apply different and sometimes wholly contradictory interpretations of the voter-identification laws are in fact "accord[ing[ arbitrary and disparate treatment to voters in … different counties." The Supreme Court even noted with disapproval "standards for accepting or rejecting contested ballots" that "vary not only from county to county but indeed within a single county…."[56]

Similarly here, the Equal Protection Clause is violated by the absence of specific and uniform standards for Boards of Election to follow when applying the new voter-identification laws. The muddled statutory scheme and Defendant's failure to guidance on the issue have led to Boards of Elections applying different interpretations of the laws to absentee voters who are casting their votes before Election Day. Indeed, as shown in the Cuyahoga County examples, above, they have led to the same Board of Elections applying and stating different rules to different voters within the county.

For all of these reasons, the voter-identification laws violate the Equal Protection Clause.

---

[53] *Bush v. Gore*, 531 U.S. 98, 105-06, 121 S. Ct. 525 (2000)
[54] *Id.*
[55] *Id.* at 107 (citing *Gray v. Sanders*, 372 U.S. 368, 83 S. Ct. 801 (1963)).
[56] *Id.* at 106.

## III. THIS COURT CAN AND SHOULD GRANT THE REQUESTED TEMPORARY RESTRAINING ORDER

### A. The Applicable Four-Factor Test Weighs In Favor Of Granting The Temporary Restraining Order

Federal Rule of Civil Procedure 65 governs the issuance of temporary restraining orders and preliminary injunctions. When ruling on a motion for temporary restraining order or preliminary injunction, a Court must balance four factors: (1) whether the movant has a strong or substantial likelihood of success on the merits, (2) whether the movant will suffer irreparable harm without the relief requested, (3) whether granting the relief requested will cause substantial harm to others, and (4) whether the public interest will be served by granting the relief requested.[57] The Court should grant a temporary restraining order if "it clearly appears from specific facts shown by affidavit ... that immediate and irreparable injury, loss, or damage will result" to the applicant.[58]

The Sixth Circuit has also held that "[i]n general, the likelihood of success that need by shown ... will vary inversely with the degree of injury the plaintiff will suffer absent an injunction."[59]

### B. Plaintiffs Have Shown A Strong Or Substantial Likelihood Of Success On The Merits Of Their Claims

Plaintiffs have shown a strong or substantial likelihood of success on the merits of their claims. The new voter-identification laws are confusing, vague, or impossible to apply in at least six respects. Boards of Elections are in fact applying these aspects of the new laws differently to voters across the State of Ohio. Absentee voters who do not know what identification should be

---

[57] *Memphis Planned Parenthood, Inc. v Sundquist*, 175 F.3d 456, 460 (6th Cir. 1999).

[58] Fed. R. Civ. P. 65(b).

[59] *Friendship Materials, Inc. v Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982) (internal quotation and citation omitted).

provided, or what identification will be deemed acceptable by their Boards of Elections after the ambiguities are finally resolved, will be deprived of their right to vote if they provide the wrong identification, and may be chilled from exercising their right to vote due to the possible criminal penalties that may be imposed for violating the Ohio Election Code. As shown above, the election is being conducted in a manner that is fundamentally unfair, and Boards of Elections are applying the laws unequally.[60]

The Supreme Court recently held in *Purcell v. Gonzalez*[61] that, given "the plaintiffs' strong interest in exercising 'the fundamental political right to vote,'" "the possibility that qualified voters might be turned away from the polls would caution any district judge to give careful consideration to the plaintiffs' challenges." While Defendant may seek to mischaracterize *Purcell* to seek to avoid having to protect the right to vote here, the Court "underscore[d]" that its decision "express[ed] no opinion" on "the correct disposition" on the merits of voters' challenge to Arizona's voter-identification law. Rather, the *Purcell* Court's decision to vacate and remand a Ninth Circuit injunction of Arizona's voter-identification law was based on particular procedural matters (a court decision altering election procedures without a written opinion, oral argument, or a factual record), not any substantive disagreement with the Ninth Circuit's decision to enjoin enforcement of Arizona's voter-identification law.

Here, unlike the Ninth Circuit in *Purcell*, this Court already has and will have a factual record that shows that House Bill 3's voter-identification changes and Defendant's failure to provide guidance are an unmitigated disaster *right now*, with voting underway. As shown above, Boards of Elections are presently implementing the election code inconsistently across Ohio (and

---

[60] *See also Common Cause of Georgia v. Billups*, 439 F. Supp. 1350-60 (N.D. Ga. 2006) (injunction granted to stop enforcement of Georgia voter-identification law because of risk to fundamental right to vote).
[61] 590 U.S. ____ (2006).

17

even inconsistently internally) in a manner fundamentally unfair to voters. Furthermore, Ohio's election code now has factually impossible and legally unenforceable language, e.g., requiring military identifications to have addresses when they do not. The *Purcell* Court bemoaned that it did not have underlying factual conclusions to evaluate. But this Court has such facts. And the Supreme Court in *Purcell* never suggested that we should wait to see democracy fail before fixing it.

For all of these reasons, Plaintiffs have shown a strong or substantial likelihood of success on the merits of their claims that the new voter-identification laws are vague, confusing, impossible to apply, and are being unequally applied, and therefore violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.

### C. Plaintiffs' Members Who Are Absentee Voters Will Suffer Immediate Irreparable Harm Without The Relief Requested

Absentee voters, who have already cast or will cast their votes between now and Election Day, are immediately and irreparably harmed by the confusion and disparate application of the voter-identification rules. Absentee voters who provide a copy of what they believe to be the proper identification will be deprived of their right to vote if their Board of Elections later determines that this identification is not acceptable. This deprivation cannot be remedied by any means because these absentee voters will not be given notice of the need to provide a different form of identification, or the opportunity to provide it. In fact, they cannot ever find out if their ballots were rejected and not counted. For these reasons, absentee voters, including Plaintiffs' members, will suffer immediate and irreparable harm unless the requested relief is granted.

### D. Granting The Relief Requested Will Not Substantially Harm Others

A temporary order that enjoins enforcement of the voter-identification laws will not harm others. While the State of Ohio does have an interest in ensuring that the election is conducted with integrity and without fraud, that interest can be vindicated through the criminal prosecution of individual voters who commit such fraud. If the Court later decides not to issue a preliminary injunction that continues enjoining the voter-identification laws, it can order the Defendant to count absentee ballots that were properly cast while and before the temporary restraining order was in effect even if they do not satisfy the voter-identification requirements. It will cause less chaos to grant the relief requested than to permit the existing chaos to continue to disenfranchise voters. Granting the requested relief will not cause substantial harm to others.

### E. The Public Interest Will Be Served By Granting The Requested Relief

"No right is more precious in a free country than that of having a voice in the election of those who make the laws .... Other rights, even the most basic, are illusory if the right to vote is undermined."[62] Because the voter-identification laws are being applied in manner that is depriving absentee voters of their right to vote as protected by the Fourteenth Amendment, the public interest will be well-served by granting the requested relief.

### F. Plaintiffs Notified Defendant And His Counsel Of This Motion

Plaintiffs' counsel made reasonable efforts to notify Defendant and his attorneys of this motion. An affidavit describing those efforts is attached as Exhibit B.

---

[62] *Wesberry v Sanders*, 376 U.S. 1, 17 (1964).

### G.   The Court Should Not Require Plaintiffs To Post A Bond

The Court has the discretion to issue the requested relief without requiring Plaintiffs to post a bond.[63]  Because there is no risk that Defendant will be monetarily damaged if the Court issues the requested temporary restraining order, this Court should not require Plaintiffs to post bond.

### IV.   CONCLUSION

Neither M.C. Escher nor Rube Goldberg could make head or tails of Ohio's disastrous voter-identification scheme.  For the reasons stated, this Court should grant this Motion and issue the proposed order attached as Exhibit A.

Respectfully submitted,

Caroline H. Gentry, Trial Attorney (0066138)
Andrew J. Gottman (0071600)
PORTER WRIGHT MORRIS & ARTHUR LLP
One South Main Street
Suite 1600
Dayton, OH  45402
Telephone: (937) 449-6748
Facsimile: (937) 449-6820
Email:  cgentry@porterwright.com

and

Subodh Chandra (0069233)
THE CHANDRA LAW FIRM, LLC
2275 Chestnut Hills Drive
Cleveland, OH  44106-4602
Telephone: (216) 965-6463
Facsimile: (216) 721-4008 (call first)
Email:  Subodh.Chandra@StanfordAlumni.org

and

---

[63] *Moltan Co. v Eagle-Picher Industries, Inc*, 55 F. 3d 1171 (6th Cir. 1995).

H. Ritchey Hollenbaugh (0001072)
CARLILE PATCHEN & MURPHY LLP
366 East Broad Street
Columbus, OH 43215
Telephone: (614) 228-6135
Facsimile: (614) 221-0216
Email: hrh@cpmlaw.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing was served by hand delivery or via email and facsimile transmission this 23rd day of October, 2006 to the following:

J. Kenneth Blackwell, *(via hand delivery)*
in his official capacity as Secretary of State of Ohio
Ohio Secretary of State
Borden Building
180 East Broad Street
Columbus, OH 43215

Sharon A. Jennings *(via email and facsimile)*
Richard N. Coglianese
Ohio Attorney General
Constitutional Offices Section
30 East Broad Street
Columbus, OH 432153428

H. Ritchey Hollenbaugh

22