IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

THE NORTHEAST OHIO COALITION :
FOR THE HOMELESS and :
 :
SERVICE EMPLOYEES :
INTERNATIONAL UNION, LOCAL 1199 :
 :
  Plaintiffs, :
 : Case No.  C2-06-896
  v. :
 : JUDGE MARBLEY
JENNIFER BRUNNER, :
OHIO SECRETARY OF STATE :
 :
  Defendant. :
_____ :
 :
THE NORTHEAST OHIO COALITION :
FOR THE HOMELESS and :
 :
SERVICE EMPLOYEES :
INTERNATIONAL UNION, LOCAL 1199 :
 :
  Plaintiffs, :
 :
  v. :
 :
THE STATE OF OHIO :
 :
  Intervenor-Defendant. :
 :

**DEFENDANTS' 12(B)(1) MOTION TO DISMISS AND
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR FEES AND COSTS**

  Defendant Jennifer Brunner, in her official capacity as Secretary of State of Ohio, and

Intervenor-Defendant the State of Ohio (collectively "Defendants") respectfully move this Court,

under Rule 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss this case for lack of

subject-matter jurisdiction.  The attached memorandum in support details Defendants' arguments

for this Motion and incorporates Defendants' Memorandum in Opposition to Plaintiff's Motion for Attorneys' Fees and Costs.   In addition, Defendants respectfully request a hearing to determine the reasonableness of the attorney's fees requested.

Respectfully submitted,

MARC DANN (0039425)
Attorney General of Ohio

*/s Damian W. Sikora*
_____
Richard N. Coglianese (0066830)
E-Mail: rcoglianese@ag.state.oh.us
Damian W. Sikora (0075224)
Assistant Attorneys General
E-Mail: dsikora@ag.state.oh.us
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
614-466-2872
614-728-7592 (fax)

*Counsel for Defendant*
Secretary of State Jennifer Brunner

*/s Sharon A. Jennings*
_____
Sharon A. Jennings (0055501)
E-Mail: sjennings@ag.state.oh.us
Assistant Attorney General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
614-466-2872
614-728-7592 (fax)

*Counsel for Intervenor-Defendant*
State of Ohio

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION ...........................................................................................................1

ARGUMENT ...................................................................................................................2

    A.    Defendants' 12(b)(1) Motion to Dismiss .................................................2

        1.    Plaintiffs have failed to show injury in fact or redressability. ..............................3

        2.    The Sixth Circuit concluded that Plaintiffs had made only a "weak showing" of standing. .........................4

        3.    Since the Sixth Circuit reviewed Plaintiffs' case, nothing has changed, and the Consent Order does not confer standing. .........................5

    B.    Defendants' Memorandum Contra to Plaintiffs' Motion for Attorney's Fees. ............6

        1.    Because Plaintiffs fail Article III's standing requirements, this Court lacks jurisdiction to award attorney's fees. ..................7

        2.    Plaintiffs are not "prevailing parties" under 1988(b) and, therefore, may not recover attorney's fees. ..................9

            a.    Securing a TRO—that was almost entirely vacated—does not entitle plaintiffs to "prevailing party" status. ..................9

            b.    Plaintiffs lost at the Sixth Circuit, and, therefore, were not prevailing parties in that litigation. ..................11

            c.    The Consent Order and Agreed Enforcement Order did not "materially alter" the relationship between Plaintiffs and Defendants. ..................11

        3.    Even if Plaintiffs are marginally "prevailing parties," they are only entitled to attorney's fees commensurate with their "victory." ..................16

        4.    Attorney's fees must be reasonable; to determine reasonableness, Defendants respectfully request a hearing. ..................17

i

CONCLUSION.....................................................................................................................19

CERTIFICATE OF SERVICE ......................................................................................unnumbered

## TABLE OF AUTHORITIES

**Case**                                                                 **Page (s)**

*Coalition to Defend Affirmative Action v. Granholm,*
    473 F.3d 237 (6th Cir. 2006) ................................................................6

*Arbaugh v. Y & H Corp.*,
    546 U.S. 500 (2006) ...........................................................................2

*Bender v. Williamsport Area Sch. Dist.*,
    475 U.S. 534 (1986)............................................................................2

*Brown v Bullard Indep. Sch. Dist.*,
    640 F.2d 651 (5th Cir. 1981) ...............................................................6

*Buckhannon Bd. & Care Home, Inc. v. W.Va. Dept. of Health and Human Res.*,
    532 U.S. 598 (2001)..........................................................................12

*Crawford v. Marion County Board of Elections,*
    128 S. Ct. 33 (2007) .........................................................................10

*Daly v. Hill*,
    790 F.2d 1071 (4th Cir. 1986) .............................................................18

*Diamond v. Charles*,
    476 U.S. 54 (1986)..............................................................................8

*Farrar v. Hobby*,
    506 U.S. 103 (1992)...........................................................................17

*Friends of Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
    528 U.S. 167 (2000).........................................................................3, 4

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)..................................................................6, 16, 17

*Hewitt v. Helms*,
    482 U.S. 755 (1987)......................................................................9, 17

*Idea Place Corp. v. Fried*,
    390 F. Supp.2d 903 (N.D. Cal. 2005) ......................................................8

*Kontrick v. Ryan*,
    540 U.S. 443 (2004) ...........................................................................2

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004) ........................................................................3, 5

*Levake v. Zawistowski*,
2004 U.S. Dist. Lexis 4916 .......................................................................................8

*Local Number 93, Int'l Ass'n of Firefighters v. City of Cleveland*,
478 U.S. 501 (1986).................................................................................................6

*M'Iver v. Wattles*,
22 U.S. 650 (1824)................................................................................................7, 8

*Maher v. Gagne*,
448 U.S. 122 (1980)...............................................................................................12

*NEOCH v. Blackwell*,
467 F.3d 999 (6th Cir. 2006) .........................................................................4, 9, 11

*Presutti v. Presutti*,
No. 2:02-cv-340, 2006 U.S. Dist. Lexis 29523 .......................................................8

*Signorile v. Quaker Oats Co.*,
499 F.2d 142 (7th Cir. 1974) ...................................................................................8

*Sole v. Wyner*,
127 S. Ct. 2188 (2007).........................................................................................9, 10

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)....................................................................................................8

*Texas State Teachers Assn. v. Garland Indep. Sch. Dist.*,
489 U.S. 782 (1989)....................................................................................12, 15, 16

*Tomazzoli v. Sheedy*,
804 F.2d 93 (7th Cir. 1986) ...................................................................................18

*U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*,
487 U.S. 72 (1988).................................................................................................. 7

*Warth v. Seldin*,
442 U.S. 490 (1975)...........................................................................................2, 4

## FEDERAL STATUTES

42 U.S.C. § 1988(b) ............................................................................ *passim*

28 U.S.C. § 1919.................................................................................................7, 8

28 U.S.C. § 1447(c) ..............................................................................................7

iv

42 U.S.C. § 1974 ................................................................................................................................11

**OHIO STATUTES**

Ohio Rev. Code § 3501.19 ...............................................................................................................13

Ohio Rev. Code Chapter 3505 ...................................................................................................14, 15

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 12(b)(1) ...............................................................................................................2

## MEMORANDUM IN SUPPORT

## INTRODUCTION

Plaintiffs The Northeast Coalition for the Homeless ("NEOCH") and Service Employees International Union, Local 1199 ("SEIU") (collectively "Plaintiffs") have asked this Court for attorney's fees for the November 1, 2006 Consent Order ("Consent Order") and the November 15, 2006 Agreed Enforcement Order ("Agreed Enforcement Order") (collectively "Orders"). However, Plaintiffs never had standing to bring their claims and are not "prevailing parties" under § 1988(b) as required for attorney's fee recovery. Finally, the requested fees are neither commensurate with any small "victory" they achieved nor are they reasonable.

Because Plaintiffs did not demonstrate, nor could they demonstrate, that their members suffered or were likely to suffer an injury in fact, they fail to meet Article III standing requirements. Without standing, this Court lacks subject-matter jurisdiction. Lack of jurisdiction may not be waived and may be raised, by a party or sua sponte by the court, at any time. Without jurisdiction, the court must grant Defendants' 12(b)(1) Motion and dismiss this case.

Alternatively, if this Court concludes that it may assert jurisdiction, which it should not, attorney's fees should be denied because Plaintiffs are not "prevailing parties." The history of this litigation shows that Plaintiffs "victory" with regard to the Orders is merely "de minimis or technical." The Orders did not "materially alter" the relationship between Plaintiffs and Defendants because these Orders simply track the language of Ohio's statutes and former Secretary of State Kenneth J. Blackwell's October 26, 2006 Directive ("Directive 2006-078"), attached as Exhibit A. Thus, Plaintiffs did not achieve the relief they sought nor did they achieve any relief of any substance.

Finally, even if this Court concludes that Plaintiffs, to some small degree, are "prevailing parties," the attorney's fees awarded must reflect their small "victory."  In awarding fees, the "relief obtained" dictates the fees awarded, and here Plaintiffs failed to achieve the declaratory judgment and preliminary injunction they sought.  Moreover, fees must be reasonable. Defendants' affidavit of Keith Yeazel shows the unreasonableness of the attorney's fees demanded by Plaintiffs.  Yeazel Affidavit, attached as Ex. B.  To resolve this important but complicated piece of the puzzle, Defendants request a hearing on the reasonableness of the requested fees.

## ARGUMENT

### A.    Defendants' 12(b)(1) Motion to Dismiss.

The rules of standing are "threshold determinants of the propriety of judicial intervention." *Warth v. Seldin*, 442 U.S. 490, 517 (1975).  Because federal courts are not courts of general jurisdiction and have power only authorized by Article III, subject-matter jurisdiction may be raised at any time, even after trial or entry of judgment, by a party or by a court on its own initiative.  See Fed. R. Civ. Proc. 12(b)(1); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (explaining that subject-matter jurisdiction may never be forfeited or waived and courts have authority to review subject-matter jurisdiction absent a challenge from any party).  Indeed, a federal court has a "special obligation" to satisfy itself of its own jurisdiction.  See *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (explaining that an appellate will and should accept jurisdiction to correct a lower court's error in entertaining a suit).  When it appears that a federal court lacks jurisdiction of the subject matter, "the court shall dismiss the action." See *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004).  Here, Plaintiffs have never satisfied—nor can they satisfy—Article III standing requirements. Therefore, the Court must grant Defendants' 12(b)(1) motion and dismiss this case.

### 1.    Plaintiffs have failed to show injury in fact or redressability.

Plaintiffs lack standing to pursue their claims.  Plaintiff associations have not shown that they have suffered any "injury in fact" that is "actual or imminent, not conjectural or hypothetical," *Friends of Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180 (2000), much less have they shown that any such injury was caused by the challenged law, or would be redressable by a federal court order.  Cf. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  These standing requirements apply in all cases, including cases where plaintiffs desire to challenge Voter ID laws.  In a recent case, the U.S. District Court for the Northern District of Georgia addressed a plaintiff's burden in establishing standing to challenge a Voter ID law.  See *Common Cause/Georgia v. Billups,* 504 F.Supp 2d 1333, 1372 (N.D. GA 2007). The court explained that the organizational plaintiffs were "required to come forth with evidence showing that they each had at least one member who otherwise would have standing to sue in his own right, or that the organizations had standing independent of their membership."  Because the plaintiffs did not make such a showing, the court determined that they lacked standing.  *Id.*

According to the Complaint, plaintiff SEIU is a local affiliate of a national employees' union, Compl. ¶ 7, and plaintiff NEOCH alleges that it is a "non-profit charitable organization operating in the City of Cleveland that provides services to" homeless people, *id*.  Those allegations fall far short of showing that the voting laws plaintiffs challenge cause injury in fact to the Plaintiffs, or indeed to any of their members. Cf. *Kowalski v. Tesmer*, 543 U.S. 125, 129, n.2 (2004) (assuming, without deciding, that attorneys who claimed to represent criminal defendants on appeal would have standing to challenge Michigan's rule on appointed counsel for indigents based on the allegation that the rule has reduced the number of cases in which the attorneys could be appointed).  Further, the Plaintiff associations are not asserting their own legal rights, and have failed to show that they have standing to bring the claims they raise on behalf of

unnamed others, including the associations' members. Cf. *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (explaining that judicial power exists only to redress or protect against injury to the complaining party).

> **2.    The Sixth Circuit concluded that Plaintiffs had made only a "weak showing" of standing.**

When reviewing this Court's grant of the October 26, 2006 Temporary Restraining Order ("TRO"), the Sixth Circuit evaluated Plaintiffs' likelihood of success on the merits. *NEOCH v. Blackwell*, 467 F.3d 999 (6th Cir. 2006). The Court began this analysis by addressing the issue of standing. The pertinent inquiry, according to the Court, was if Plaintiffs met the *Friends of the Earth* and *Lujan* tests. *Id*. at 1010. In inquiring whether Plaintiffs' members would have standing in their own right, the Court explained that Plaintiffs' "allegations fall far short" of meeting these standards: "The record on the standing issue consists of only the unverified complaint. . . . In fact, the complaint contains no reference at all to injury to the plaintiffs' members." *Id*. Further, the "scanty information" about the plaintiff organizations raises "substantial questions" as to whether the interests at stake are at all germane to the plaintiff organizations' purposes, "which clearly are not primarily related to election or voters' rights issues." *Id*. Thus, Plaintiffs' weak showing of standing led the Court to conclude that plaintiffs' "likelihood of success on the merits is not strong." *Id*.

In his concurrence, Judge McKeague agreed with the majority's standing analysis and expressed additional doubts regarding Plaintiffs' ability to meet Article III requirements. *Id*. at 1012 (McKeague, J., concurring). Because counsel for Plaintiffs admitted that Plaintiffs could not identify a single member (or other plaintiff organization) that was harmed by the challenged law, the injury that Article III requires was "purely speculative." *Id*. at 1013. Not requiring an organization to show that any of its members has been injured or threatened "represents a

disturbing expansion of associational standing principles." *Id*. at 1012. Further, to the extent NEOCH rests on interests of nonmembers to establish standing, plaintiffs are "operating outside the bounds of traditional associational standing." As Judge McKeague noted, this "representational or third-party standing" has no legal support and is simply an "innovation" of Plaintiffs. *Id*. (citing *Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004)).

In *Kowalski*, the Supreme Court explained that a third party may be granted standing only where it is "necessary." *Kowalski*, 543 U.S. at 129. Further, the party seeking third-party standing must make two additional showings: 1) The party must demonstrate that it has a "close" relationship with the person who possesses the right; and 2) There must be a "hindrance" to the possessor's ability to protect his own interests. *Id*. at 129-30. NEOCH has offered no evidence to support either prong of this test. Thus, to allow NEOCH to assert the rights of the homeless—without offering additional evidence—would be an unconstitutional exercise of subject-matter jurisdiction by this Court

### 3. Since the Sixth Circuit reviewed Plaintiffs' case, nothing has changed, and the Consent Order does not confer standing.

Nothing has changed since the Sixth Circuit reviewed Plaintiffs' ability to meet Article III standing requirements, and to this day, Plaintiffs have still not satisfied Article III. They have not provided Defendants or this Court sufficient information to satisfy Article III. Moreover, Defendants, as public servants, chose not to press the issue of standing on November 1, 2006, and, instead, entered into the Consent Order for the public good. Defendants had an obligation to the public to ensure a fair election with clearly defined rules and procedures. Only three days before the election, Defendants chose not to litigate the issue of standing and prolong public confusion. However, because subject-matter jurisdiction may be raised at any time, Defendants may now assert their right to challenge Plaintiff' standing.

Further, because subject-matter jurisdiction may not be waived, an agreement between parties, even an agreement that is court-approved, does not confer standing on a party. *Local Number 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525 (1986) ("a consent decree must spring from and serve to resolve a dispute within the court's subject-matter jurisdiction"). The Sixth Circuit recently addressed this issue in *Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237 (6th Cir. 2006). The Court made clear that even though all parties to the suit agreed to a stipulation concerning federal law, such a stipulation cannot create federal jurisdiction. *Id.* at 245-46. Similarly here, regardless of the parties' agreement, the Consent Order may not create jurisdiction where standing is lacking.

### B.    Defendants' Memorandum Contra to Plaintiffs' Motion for Attorney's Fees.

As an initial matter, Plaintiffs' lack of standing prohibits this Court from awarding attorney's fees to Plaintiffs. Second, a plaintiff requesting attorney's fees bears the burden of establishing entitlement to an award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, Plaintiffs cannot establish such an entitlement because they are not "prevailing parties." Third, Plaintiffs' fee request is not proportional to any small "victory" they may have achieved, and their requests are not "reasonable" as required by § 1988(b). Finally, if this Court does award attorney's fees, it must "provide a concise but clear explanation of its reasons for the fee award." *Id.*; see also *Brown v Bullard Indep. Sch. Dist.*, 640 F.2d 651 (5th Cir. 1981), cert. denied 454 U.S. 828 (1981) ("It is essential that trial court explain how it arrived at fee award under 42 USCS § 1988 and give reasons either in form of opinion or findings in order to provide for adequate evaluation on appeal.").

**1. Because Plaintiffs fail Article III's standing requirements, this Court lacks jurisdiction to award attorney's fees.**

At no point during this litigation have Plaintiffs satisfied Article III's standing requirements. Without satisfying Article III, a plaintiff may not recover attorney's fees. To hold otherwise would allow a court to impermissibly assert authority where it lacks subject-matter jurisdiction. See *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 80 (1988) (holding that where a district court lacks subject-matter jurisdiction in an underlying action, any subpoenas issued in relation to that action are void). Thus, because a court may only award attorney's fees where it has jurisdiction over the underlying action, this Court may not award attorney fees to Plaintiffs.

Early in our nation's history, the Supreme Court concluded that in all cases where a case is dismissed for lack of jurisdiction, no costs are allowed. *M'Iver v. Wattles*, 22 U.S. 650 (1824). Congress, through its power to expand the federal courts' jurisdiction, passed what is now Section 1919 of Title 28 of the United States Code and granted courts greater authority to award costs. Section 1919 allows a court to order the payment of "just costs" whenever any action or suit is dismissed for want of jurisdiction in any district court. 28 U.S.C. § 1919. However, § 1919's provision for "just costs" does not include the recovery of attorney's fees. Congress knows how to provide for the recovery of attorney's fees where a court lacks subject-matter jurisdiction but has not done so here. For example, if a party moves for removal without an objectively reasonable basis, a court may award attorney fees, despite its lack of jurisdiction: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal." 28 U.S.C. 1447(c).

7

Congress chose not to include such language in § 1919.  Moreover, the Southern District has concluded that § 1919 does not provide for the recovery of attorney fees.  *Presutti v. Presutti*, No. 2:02-cv-340, 2006 U.S. Dist. Lexis 29523, at *13 (S.D. Ohio May 8, 2006).  See also *Signorile v. Quaker Oats Co.*, 499 F.2d 142, 145 (7th Cir. 1974) (interpreting § 1919 as not providing for attorney's fee recovery); *Idea Place Corp. v. Fried*, 390 F. Supp.2d 903, 905 (N.D. Cal. 2005) (same); *Levake v. Zawistowski*, 2004 U.S. Dist. LEXIS 4916, No. 02-C-0657-C, 2004 WL 602649, at *3 (W.D. Wis. March 12, 2004) (same).  Therefore, where plaintiffs lack standing and Congress has not specifically granted jurisdiction to award attorney's fees, *M'Iver* controls and a court that otherwise lacks jurisdiction may not award attorney's fees.

Finally, a request for attorney's fees cannot by itself confer standing on a party.  An interest that is merely a byproduct of the suit itself cannot give rise to a cognizable injury for Article III purposes.  See *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("[A] plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit.  The litigation must give the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation itself.").  In *Diamond v. Charles*, 476 U.S. 54, 69-71 (1986), the Supreme Court rejected a petitioner's attempt to bring suit based, in part, on the lower court's assessment of attorney's fees against petitioner.  Rejecting petitioner's argument that he had the requisite standing to litigate the case, the Court explained that the fee award was wholly unrelated to the subject-matter of the litigation and bears no relation to the statute whose constitutionality was at issue.  Here, like in *Diamond*, the issue of attorney's fees does not satisfy the requirements of Article III.  Thus, this court may neither exercise jurisdiction nor award attorney's fees.

**2. Plaintiffs are not "prevailing parties" under 1988(b) and, therefore, may not recover attorney's fees.**

The Civil Rights Attorneys' Fee Award Act of 1976 authorizes federal district courts, in their discretion, to "allow the prevailing party . . . reasonable attorney's fee as part of the costs." 42 U.S.C. 1988(b).  The fee applicant bears the burden of establishing both the entitlement to fees and the amount of fees owed.  Because neither the TRO issued by this Court nor the Consent Order and Agreed Enforcement Order confer "prevailing party" status on Plaintiffs, their request for attorney's fees must be denied.

**a. Securing a TRO—that was almost entirely vacated—does not entitle plaintiffs to "prevailing party" status.**

On October 26, 2006, this Court granted a temporary restraining order ("TRO") enjoining the enforcement of certain provisions of Ohio's election laws.  Three days later, on October 29, the Sixth Circuit vacated the district court's issuance of the TRO except for the TRO's requirement that the Boards of Elections preserve all absentee ballots.  *NEOCH v. Blackwell*, 467 F. 3d 999, 1012 (6th Cir. 2006).  Here, the TRO issued by this Court does not entitle Plaintiffs to "prevailing party" status for two reasons.  One, the Sixth Circuit vacated all but a small portion of this Court's TRO.  As discussed below, the trip to the Sixth Circuit was almost entirely unsuccessful for Plaintiffs.  Therefore, Plaintiffs may not hang their hats on their three-day TRO and proclaim victory.

Second, and more important to this inquiry, a TRO victory is not "relief on the merits" of a plaintiff's claim as required by § 1988(b) for fee recovery.  *Hewitt v. Helms*, 482 U.S. 755, 760 (1987).  The U.S. Supreme Court recently addressed whether a plaintiff, who achieves success at the preliminary injunction stage but ultimately loses on the merits, may recover attorney's fees.  *Sole v. Wyner*, 127 S. Ct. 2188 (2007).  In *Sole*, the Court held: "Prevailing party status . . . does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise

undone by the final decision in the same case."  *Id.* at 2195.  At the TRO or preliminary injunction stage, a court is called upon to assess only the *probability* of a plaintiff's ultimate success on the merits.

Recognizing the limitation of these types of hearings, Justice Ginsburg said:  "In some cases, the proceedings prior to a grant of temporary relief are searching; in others, little time and resources are spent on the threshold contest."  *Id.*  In this case, only two days separated the filing of the motion for a TRO and the granting of the motion.  Such is the nature of a temporary retraining order.  Here, Plaintiffs filed their TRO Motion on October 24, 2006.  Recognizing the urgency of the issue, this Court held a TRO hearing two days later on October 26, 2006 and granted the TRO.  This two-day turnaround means, of course, that not as much time was spent on the issues as would have been the case had the issues been litigated on the merits.

In *Sole*, the Court recognized that subsequent proceedings matter.  While the plaintiff in *Sole* won preliminary injunctive relief, the Florida statute at issue "remained intact" after subsequent proceedings.  *Sole*, 127 S. Ct. at 2196.  Similarly, during the course of this litigation, the challenged Ohio statutes did not change.  Therefore, Plaintiff's "initial victory" in achieving a TRO "was ephemeral," and such a fleeting victory does not confer "prevailing party" status for purposes of  § 1988(b).  See *id*.  Therefore, a TRO may not in and of itself confer "prevailing party" status on a party.[1]

---

[1] Although this Court had previously suggested that Plaintiffs file an interim application for attorney's fees, it may be best for the Court to defer ruling on that request.  *Crawford v. Marion County Board of Elections*, 128 S. Ct. 33 (2007) (granting cert), is currently pending in the United States Supreme Court, and a decision is expected in that case before the end of June.  Since the Plaintiffs may still want to litigate the merits of Ohio's Voter ID law, a decision from the Court in Crawford may allow this Court and the parties to better focus on the issues of standing and the constitutional merits of the claim.  Such a delay will not prejudice the Plaintiffs as this case has been pending since October 2006 and waiting three more months is not a burden.

      **b.**  **Plaintiffs lost at the Sixth Circuit, and, therefore, were not prevailing parties in that litigation.**

In part, Plaintiffs attempt to recover fees for litigation relating to the proceedings before the Sixth Circuit.  See Exhibits attached to Pls.' Mot. for Attorneys' Fees.  For example, all three affidavits documenting attorney's fees include fees regarding the Sixth Circuit appeal.  See *id*.  However, Plaintiffs lost at the appellate level and were not "prevailing parties."

First, the Sixth Circuit found that the "district court abused its discretion by granting the TRO," and the TRO "needlessly creates disorder in electoral processes, without any concomitant benefit to the pubic."  *NEOCH*, 467 F.3d at 1012.  Therefore, the Sixth Circuit vacated the issuance of this Court's TRO except for its requirement that the Boards of Elections preserve all absentee ballots.  This portion of the TRO, however, was not needed to preserve the ballots.  Federal law requires preservation of all federal ballots for 22 months, see 42 U.S.C. 1974 ("Every officer of election shall retain and preserve, for a period of twenty-two months . . . , all records and papers relating to any [election]"), making this portion of the TRO unnecessary.  Second, the Court granted the State's motion to intervene at the appellate level and reversed the district court's denial of the State's motion to intervene.  *NEOCH*, 467 F.3d at 1012.  Plaintiffs had opposed the State's intervention at both levels.  Not only were Plaintiffs not the prevailing party at the Sixth Circuit, Plaintiffs were the losing party on several accounts.

      **c.**  **The Consent Order and Agreed Enforcement Order did not "materially alter" the relationship between Plaintiffs and Defendants.**

Because neither the TRO nor the Sixth Circuit opinion confers "prevailing party" status on Plaintiffs, the only potential avenue for attorney fee recovery is via the Consent Order and the Agreed Enforcement Order.  A consent order may, under certain circumstances, confer "prevailing party" status on a party and result in an award of attorney's fees.

In *Maher v. Gagne*, 448 U.S. 122 (1980), the Supreme Court awarded attorney's fees to a plaintiff who alleged that Connecticut's Aid to Families with Dependent Children (AFDC) program violated the Social Securities Act as well as Due Process and Equal Protection because the program denied her credit for portions of her work-related expenses, thus reducing her overall benefit level. *Id*. at 124. The District Court entered a consent decree that, among other things, provided for a "*substantial* increase in the standard allowances and gave AFDC recipients the right to prove that their actual work-related expenses were in excess of the standard." *Id*. at 126 (emphasis added). The district court also awarded the plaintiff attorney's fees under § 1988 because she had won "substantially all the relief originally sought in her complaint in the consent decree." *Id*. at 127 (internal quotations omitted). The court of appeals and the Supreme Court affirmed. *Id*. at 133. Therefore, a consent decree may entitle a party to attorney fees, but the consent decree must first establish a plaintiff as a "prevailing party" before she is entitled to recovery.

The "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." *Texas State Teachers Assn. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989) (emphasis added). Put another way, attorney's fees may only be awarded where there is an "alternation of actual circumstances." *Buckhannon Bd. & Care Home, Inc. v. W.Va. Dept. of Health and Human Res.*, 532 U.S. 598, 606 (2001) (internal quotation marks omitted). Thus, for a consent decree to satisfy the "prevailing party" definition, there must be a "change [in] the relationship between [the plaintiff] and the defendant." *Id.* at 604 (brackets in original). Here, the Consent Order and the Agreed Enforcement Order did not materially alter the relationship of the parties. To the contrary, the language of the Consent Order provided no relief or additional rights to Plaintiffs.

12

First, Plaintiffs incorrectly assert that "under the language of the statute, the right to vote on Election Day, by regular or provisional ballot, is wholly denied to voters who have a Social Security number but do not have the identification required by the challenged voter identification law." Pls.' Mot. for Attorneys' Fees at 5 (last row). To the contrary, however, these individuals are permitted to vote under Ohio law, and their votes are counted regardless of their ability to provide any of the forms of identification other than their social security number. First, Ohio Revised Code § 3505.181(A)(2) directs that these voters should be allowed to vote. Second, numerous other provisions in the code indicate that such voters will be able to vote, and their vote will be counted, so long as they are willing to comply with the provisions of the law designed to ensure the reliability of their vote. See, e.g., Ohio Rev. Code § 3501.19(A)(3) ("Voters who do not provide one of these documents will still be able to vote by providing the last four digits of the voter's social security number and by casting a provisional ballot. Voters who do not have any of the above forms of identification, including a social security number, will still be able to vote by signing an affirmation swearing to the voter's identity under penalty of elections falsification and by casting a provisional ballot."). Thus, despite Plaintiffs' arguments to the contrary, paragraph 5 of the consent order did no more than restate the existing statutes.

Second, Plaintiffs are incorrect that the minor differences that do exist between the Consent Order and the statutes are a material alteration in the relationship between the parties. Before the Consent Order, the Secretary defined "current" as a "document that is dated not more than six months from the date it is presented to the election official." Directive 2006-078, attached as Ex. A. The change from six months to one year is not material. Nor is the inclusion of a definition of "government document," which is no more than a common sense definition of

a term that did not necessarily require definition, as government obviously includes all different forms of local government.

Finally, paragraph 2 of the Consent Order was not needed because of any ambiguities or constitutional defects in the challenged statutes, but was needed simply to mitigate the effect that Plaintiffs' litigation had on the process of casting absentee ballots, which continued throughout the time period before, during, and after the TRO, the Sixth Circuit's decision, and the Consent Order.  This paragraph of the Consent Order did no more and no less than recognize that the uncertainty created by the litigation may have affected the casting of absentee ballots and ensured that all absentee ballots be treated the same regardless of whether they were cast before or during the litigation.  Further, in paragraph one, Plaintiffs agreed that the Voter ID provisions applied to those who completed applications to cast absentee ballots after November 1, 2006, so Plaintiffs have also misstated the extent of the change created by paragraph 2 of the Order.  In the end, because paragraph 2 of the Consent Order expressly applied only to the November 2006 election and because it would never have been needed had Plaintiffs not instituted this action, this provision is not a material alteration of the relationship between Plaintiffs and Defendants.

Indeed, a comparison of the Consent Order to statutory and Directive 2006-078 language shows that the Consent Order simply mirrors *the law*.  The following chart compares the language of the Consent Order provisions that Plaintiffs believe entitle them to "prevailing party" status to the language of Ohio Revised Code provisions:

| Statutory Provision | Agreed Consent Order |
|---|---|
| R.C. 3509.03(E) prescribes the identification required as part of an application for an absentee ballot. | Paragraph 1 of the Consent Order sets forth the same requirements as R.C. 3509.03(E) for purposes of setting forth the identification required to complete an application for an absentee ballot. |
| R.C. 3505.18(A)(1) prescribes the identification required when an elector appears at a polling place to vote. | Paragraph 3 of the Consent Order sets forth the same requirements as R.C. 3505.18(A)(1) for purposes of setting forth the identification required at the polling places. |
| R.C. 3505.01(AA) defines the term "photo identification" as it is used in Title 35. | Paragraph 4 of the Consent Order defines "photo identification" for purposes of the consent order using identical language to R.C. 3501.01(AA). |
| R.C. 3505.18(A)(2) provides that an elector who has but is unable to provide any of the forms of identification required under the statute may provide the last four digits of the elector's social security number and vote a provisional ballot. | Paragraph 5 of the Consent Order provides that an elector who has but is unable to provide any of the forms of identification required under the statute may vote provisionally, under the exact same conditions set forth in R.C. 3505.18(A)(2). |
| R.C. 3505.18(A)(4) provides that an elector who does not have any of the required forms of identification and cannot provide the last four digits of the elector's social security number may execute an affirmation and cast a provisional ballot. | Paragraph 6 of the Consent Order provides that an elector who does not have any of the required forms of identification and cannot provide the last four digits of the elector's social security number may execute an affirmation and cast a provisional ballot. |
| R.C. 3505.18(A)(2) provides that an elector who has but is unable to provide any of the forms of identification required under the statute may provide the last four digits of the elector's social security number and vote a provisional ballot. | Paragraph 7 of the Consent Order provides that an elector with military identification that does not meet the requirements of the statute may cast a provisional ballot by providing the last four digits of the elector's social security number. (The elector could also vote a regular ballot by using any one of the other forms of acceptable identification). |
| R.C. 3505.183(B)(3) provides the circumstances under which a Board of Elections is required to count a provisional ballot, and R.C. 3505.183(B)(4) provides the circumstances under which the provisional ballot shall not be counted. | Paragraph 8 of the Consent Order requires that ballots be counted (or not counted) under the exact same circumstances set forth in R.C. 3505.183(B). |

15

For the Court's convenience, Defendants have also attached as Exhibit C a comprehensive chart comparing the Consent Order to Ohio Revised Code provisions and Directive 2006-078.

While the parties agreed to the Consent Order, this "purely technical or de minimis" success does not transform Plaintiffs into "prevailing parties."  See *Garland*, 489 U.S. at 792.  In *Garland*, the Court gave an illustrative example of an insignificant, technical victory:  [T]he District Court found that the requirement that nonschool hour meetings be conducted only with prior approval from the local school principal was unconstitutionally vague. . . [T]here was no evidence that the plaintiffs were ever refused permission to use school premises during non-school hours.  If this had been petitioners' only success in the litigation, we think it clear that this alone would not have rendered them prevailing parties."  *Id*. at 792 (internal quotation marks and citations omitted).  Similarly, Plaintiffs' "victory" here is de minimis because the Consent Order simply tracks the statutory language and does not change the legal relationship between Plaintiffs and Defendants.  A change in the definition of "current" from 6 months to 12 months, for example, is akin to the insignificant, technical victory the Court identified in *Garland*. Moreover, the Agreed Enforcement Order only enabled Plaintiffs to enforce an order that did not materially alter the relationship between the parties.

Indeed, this is not the relief that Plaintiffs requested in their complaint—they wanted this Court to issue a declaratory judgment declaring the statutes unconstitutional and permanent injunctive relief enjoining Defendants from enforcing Ohio's election laws.  Compl. at 50-51. But no portion of Ohio's statute was declared unconstitutional nor did Plaintiffs receive a permanent injunction.  Their complaint certainly did not request a Consent Order reiterating the statute, which is the only success they achieved.

    **3.**  **Even if Plaintiffs are marginally "prevailing parties," they are entitled *only* to attorney's fees commensurate with their "victory."**

Even if the Court comes to the wrong conclusion and decides that in some small way Plaintiffs are "prevailing parties" under section 1988, the Court must consider the "significance of the overall relief obtained" in relation to the "hours reasonably expended on the litigation" when assessing the attorney's fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Put simply, "[t]he result is what matters." *Id*. As demonstrated above, Plaintiffs fell far short of achieving the relief they sought and, thus, may recover only attorney's fees related to their success, and "no fee may be awarded for services on an unsuccessful claim." *Id*.

The Supreme Court has recognized that the "range of possible success" within civil rights litigation "is vast." *Id*. at 436. In *Hensley*, the court explained that if the plaintiffs-respondents had prevailed on only one of six of their general claims, "a fee award based on the claimed hours *clearly* would have been excessive." *Id*. at 437 (emphasis added). Here, Plaintiffs request fees as if they won every claim at every level. To the contrary, they lost most claims at the appellate level and achieved only a consent order that tracks statutory and Directive 2006-078 language.

Additionally, a plaintiff may be a "prevailing party" under § 1988(b) but may still not recover *any* attorney's fees. "In some circumstances, even a plaintiff who formally 'prevails' under § 1988(b) should receive no attorney fees at all." *Farrar v. Hobby*, 506 U.S. 103, 115 (1992). In *Farrar*, the jury had found for the plaintiff and, on appeal, the Fifth Circuit awarded the plaintiff $1 in nominal damages. *Id*. at 108 n.1. Armed with this "victory," plaintiffs then sought and won $300,000 in fees. *Id*. at 107. The Supreme Court, however, affirmed the appellate court's reversal of the fee award because the $1 recovery compared to the $17 million sought showed the small degree of success obtained, *id*. at 114, and the "litigation accomplished little beyond giving petitioners 'the moral satisfaction of knowing that a federal court concluded

17

that [their] rights had been violated . . . .'" *Id.* (citing *Hewitt v. Helms*, 482 U.S. 755, 762 (1987)). Likewise, the Court must consider Plaintiffs' small degree of success and reduce any attorney's fee award to reflect that lack of success.

> **4. Attorney's fees must be reasonable; to determine reasonableness, Defendants respectfully request a hearing.**

A fee applicant must document the appropriate hours expended and hourly rates on civil rights litigation. *Hensley*, 461 U.S. at 437. Further, an applicant must exercise "billing judgment." *Id.* Here, Plaintiffs failed to exercise this required judgment by over-billing and overstaffing. In *Tomazzoli v. Sheedy*, 804 F.2d 93 (7th Cir. 1986), the Seventh Circuit concluded that the District Court did not err in setting attorney's hourly rate at $ 75 as compared to $100 per hour requested and in determining that 80 hours was a reasonable number of hours for services although attorney billed 117.25 hours. *Id.* at 97. The court found that some research time billed was "particularly vague" and "considerably more" than required for prosecution of case considering attorney's expertise in civil rights litigation, and evidence before court showed $ 55 to $ 75 an hour range for civil rights matters, although attorney charged as much as $ 100 per hour for other litigation matters. *Id.* at 97-99; see also *Daly v. Hill*, 790 F.2d 1071, 1080 (4th Cir. 1986) (allowing reduction of attorney's allowable hours expended to 25 from 47 where efforts of two attorneys were duplicative).

Defendants' expert Keith Yeazel's affidavit demonstrates that there are serious questions as to the reasonableness of what Plaintiffs demand. See Yeazel Affidavit, attached as Ex. B. To sort out these issues, Plaintiffs respectfully request a hearing on the reasonableness of attorney's fees. A hearing would enable the Court to determine if Plaintiffs rates are reasonable, if work was duplicative, and what fees actually went toward any small "victory" Plaintiffs may have achieved.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' 12(b)(1) Motion to Dismiss, or alternatively, deny Plaintiffs' Motion for attorney's fees and costs.

Respectfully submitted,

MARC DANN (0039425)
Attorney General of Ohio

*/s Damian W. Sikora*
_____

Richard N. Coglianese (0066830)
E-Mail: rcoglianese@ag.state.oh.us
Damian W. Sikora (0075224)
E-Mail: dsikora@ag.state.oh.us
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
614-466-2872
614-728-7592 (fax)

*Counsel for Defendant*
Secretary of State Jennifer Brunner


*/s Sharon A. Jennings*
_____

Sharon A. Jennings (0055501)
E-Mail: sjennings@ag.state.oh.us
Assistant Attorney General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
614-466-2872
614-728-7592 (fax)

*Counsel for Intervenor-Defendant*
State of Ohio

19

**CERTIFICATE OF SERVICE**

  I certify that a copy of the foregoing Memorandum in Support of Defendants' 12(B)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Opposition to Plaintiffs' Motion for Fees and Costs was electronically filed the 27th day of February, 2008 with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the counsel of record in this case.

         */s Sharon A. Jennings*

         _____

         Sharon A. Jennings (0055501)