**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| THE NORTHEAST OHIO COALITION FOR THE HOMELESS, et al., | : | Civil Action No. C2-06-896 |
| | : | Judge Algenon L. Marbley |
| Plaintiffs, | : | |
| | : | **COMBINED MOTION OF PLAINTIFF THE NORTHEAST OHIO COALITION** |
| vs. | : | **FOR THE HOMELESS TO ENJOIN THE OHIO SUPREME COURT'S ORDER IN** |
| JENNIFER BRUNNER, in her official capacity as Secretary of State of Ohio, et al., | : | *STATE ex rel. SKAGGS v. BRUNNER* **AND RENEWED MOTION TO ENFORCE THE** |
| Defendants. | : | **JUDGMENT; ORAL ARGUMENT REQUESTED** |
| | : | |

_____

Pursuant to Fed. R. Civ. P. 65, Plaintiff Northeast Ohio Coalition for the Homeless ("NEOCH") moves to enjoin the order issued on December 5, 2008 by the Ohio Supreme Court in the case captioned *State ex rel. Skaggs v. Brunner*, Case No. 08-2206 ("State Court Order"), to the extent that the State Court Order requires the Franklin County Board of Elections to reject provisional ballots that have a printed name but no signature. With regard to this single category of ballots, NEOCH further seeks an order directing Defendant Brunner to rescind Directive 2008-118, issued pursuant to the State Court Order, as it conflicts with this Court's orders issued on October 24 and 27, 2008 in the above-captioned case ("Federal Court Orders"). Finally, with regard to this single category of ballots, NEOCH renews its motion filed November 26, 2008 (Doc. No. 162) to enforce the Federal Court Orders.

As described in the attached memorandum, this Court should enjoin the State Court Order, which was based solely on state law, and order Defendant Brunner to rescind Directive 2008-118, because the State Court Order and Directive 2008-118 conflict with the Federal Court

Orders and the Equal Protection Clause. This Court has the authority and duty to enforce the

Federal Court Orders. Moreover, when state law conflicts with federal law, the Supremacy

Clause of the United States Constitution requires that the federal law shall prevail.

A proposed Order is attached as Exhibit A to the memorandum in support. Given the

complexity and importance of the issues raised in this Motion, oral argument is requested.

Respectfully submitted,


 /s/ Caroline H. Gentry
Caroline H. Gentry, Trial Attorney (0066138)
Paul G. Hallinan (0010462)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
One South Main Street, Suite 1600
Dayton, OH 45402
(937) 449-6748 / (937) 449-6820 Fax
Email: cgentry@porterwright.com

and

Subodh Chandra (0069233)
THE CHANDRA LAW FIRM, LLC
1265 W. 6th Street, Suite 400
Cleveland, OH 44113-1326
Tel: (216) 578-1700
Fax: (216) 578-1800
Email: Subodh.Chandra@StanfordAlumni.org

*Attorneys for Plaintiff*
*Northeast Ohio Coalition for the Homeless*

**MEMORANDUM IN SUPPORT OF COMBINED MOTION OF
PLAINTIFF THE NORTHEAST OHIO COALITION FOR THE HOMELESS
TO ENJOIN THE OHIO SUPREME COURT'S ORDER IN *STATE ex rel. SKAGGS v.
BRUNNER* AND RENEWED MOTION TO ENFORCE THE JUDGMENT**

NEOCH is a non-profit association that advocates on behalf of the homeless in the areas

of housing, shelter, civil rights and voting rights, among others.  NEOCH assists its homeless

members and non-members with registering to vote, early voting, and voting on Election Day.

Some of NEOCH's homeless members lack the identification required to vote by regular ballot

on Election Day, and so must cast provisional ballots.  In this litigation, NEOCH has sought to

ensure that provisional ballots cast in Ohio elections will be treated equally and will be counted.

This dispute concerns certain provisional ballots cast in Franklin County in the November

2008 election ("Disputed Ballots").  The voters who cast the Disputed Ballots either (1) did not

sign the affirmation statement, (2) did not print their name on the affirmation statement, or (3)

wrote their name and/or signature in the wrong place.  This Combined Motion relates solely to

the First Category.  NEOCH is not challenging the State Court Order or Directive 2008-118 to

the extent that they address ballots that fall in the Second or Third Categories.

Ruling in a separate case, as to which NEOCH was not a party, the Ohio Supreme Court

held that the First Category of Disputed Ballots should not be counted.  That ruling conflicts with

this Court's Orders issued in the above-captioned case on October 24, 2008 ("First Federal Court

Order") and October 27, 2008 ("Second Federal Court Order"), as well as with the Equal

Protection Clause of the Fourteenth Amendment to the United States Constitution.[1]

---

[1] NEOCH believes that the State Court Order and Directive 2008-118 also conflict with the Voting Rights Act, 42
U.S.C. § 1971 (prohibiting ballots from being discarded because of immaterial errors or omissions), as the omission
of the voter's signature in the affirmation cannot be "material" given the General Assembly's explicit statement that
ballots with omitted signatures can be counted so long as the voter's name is recorded in the affirmation.  See R.C.
3505.183(B)(1).  Because the State Court Order impermissibly conflicts with federal statutory law, it is preempted.
*Crosby v. National Foreign Trade Council*, 530 U.S. 363, 120 S. Ct. 2288 (2000).  However, NEOCH is barred

Even though the November 2008 election is effectively over, the conflicting Orders and Directives remain "on the books" for future elections. Given its interest in protecting the Federal Court Orders for future elections, NEOCH seeks an order that, with respect to the First Category of Disputed Ballots: (1) enjoins the State Court Order, (2) enforces the Federal Court Orders, and (3) directs Defendant Brunner to rescind Directive 2008-118.

I.      **STATEMENT OF FACTS.**

      A.      **After Defendant Brunner Took Office In January 2007, Settlement Efforts Were Unsuccessful And Defendants Moved To Dismiss This Case For Lack Of Standing; That Motion Was Resolved On September 30, 2008.**

After Defendant Brunner took office in January 2007, the Plaintiffs repeatedly attempted to settle this case. Those efforts were unsuccessful. Defendant Brunner's strong opposition to NEOCH's claims is demonstrated by her response (Doc. No. 94-2) to Plaintiffs' settlement letter (Doc. No. 94-3), in which she refused to provide any relief on the two issues that later became the subject of NEOCH's Motion for Preliminary Injunction:

> [*Unconstitutionality of voter ID statute*]:
>
> The Secretary rejects your request in Paragraph VII. No person is obligated to pay any tax or fee in order to cast a ballot in the State of Ohio. Therefore, your proposal is unnecessary and is rejected.
>
> [*Uniform treatment of provisional ballots*]:
>
> With respect to the request in Paragraph IX, the Secretary rejects your arguments. Ohio law is clear on the manner in which a provisional ballot should be treated. Directive 2007-06 further modifies Ohio law. As a result, the Secretary sees no reason whatsoever to address this issue.

---

from presenting this argument because of the Sixth Circuit's holding that Section 1971 is enforceable only by the Attorney General of the United States and does not provide a private right of action. *McKay v. Thompson*, 226 F.3d 752 (6th Cir. 2000). NEOCH includes the argument here solely to preserve it for appeal, in the event that the Sixth Circuit reconsiders *McKay* in an *en banc* proceeding in light of the Eleventh Circuit's well-reasoned and conflicting decision in *Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003).

Letter dated November 21, 2007 from R. Coglienese to C. Gentry (Doc. No. 94-2) (attached as Exhibit B).

Shortly after the parties attempted (again unsuccessfully) to mediate this case with the Court mediator, both Defendants moved to dismiss the Plaintiffs' claims for lack of standing (see Doc. No. 99). This Court granted NEOCH's motion for attorneys' fees on September 30, 2008, and simultaneously ruled that NEOCH had standing to prosecute some of its claims.

B. **In October 2008, NEOCH Sought A Preliminary Injunction Requiring Boards Of Elections To Apply Uniform Rules To Provisional Ballots; Defendants Vigorously Opposed That Motion.**

Following this Court's decision that it had standing, NEOCH promptly filed its Motion for Preliminary Injunction and sought to resolve its two central claims—the unconstitutionality of the voter ID statute and the uniform treatment of provisional ballots—before the November 2008 election (see Doc. No. 111).[2] NEOCH cited data from the November 2006 election that showed that Ohio's Boards of Elections applied different rules to provisional ballots, in violation of the Due Process and Equal Protection Clauses.

NEOCH requested and was granted expedited discovery in support of its Motion. The following week, NEOCH subpoenaed documents and conducted telephonic one-hour depositions of officials from twenty (20) Ohio Boards of Elections and a designated representative from Defendant Brunner's office (see Doc. Nos. 135, 139 and 141). This discovery established that Ohio's Boards of Elections planned to apply different and unequal standards when determining whether to count provisional ballots cast in the November 2008 Election:

- *No Poll Worker Signature.* Belmont County had previously rejected ballots if the poll worker had failed to sign the Provisional Ballot Envelope, but was unsure whether it would do so this year. Butler County planned to contact the poll worker to find out why he did not sign the form, i.e., whether he simply forgot or

---

[2] In exchange for the Defendants' agreement to the Federal Court Orders, NEOCH agreed to defer that portion of its motion relating to the unconstitutionality of the voter ID law until after the November 2008 election.

was challenging the voter. Greene County has tended to accept such ballots. Clermont, Coshocton and Logan Counties were not sure what they would do. Clark, Cuyahoga and Hamilton Counties planned to count these ballots.

- ***No Date Of Birth.*** Clermont and Lorain Counties were improperly planning to reject any provisional ballot that did not contain the voter's date of birth, even though Ohio law does not require a date of birth. Greene County planned to reject such ballots but only after attempting to contact the voter to get a date of birth. Belmont County had previously rejected provisional ballots on this ground but was unsure if it would do so this year. Coshocton and Seneca Counties might have rejected the ballot unless the voter provided a date of birth within 10 days after the election. Butler, Hamilton, Logan and Madison Counties would consider counting the ballot if they could otherwise verify the voter's identify. Clark, Cuyahoga, Franklin and Summit Counties properly planned to count these ballots.

- ***No Form Of ID.*** Clark County was improperly planning to reject provisional ballots that contained the last four digits of a Social Security Number, but did not contain one of the listed forms of required identification. Miami County was unsure whether it would reject these ballots. Other Boards properly planned to count these ballots.

- ***No Street Address.*** Cuyahoga County was improperly planning to reject provisional ballots that did not list the address of a building, even though Ohio law allows homeless voters to vote using the location of the shelter "or other location" where they regularly reside. Coshocton and Logan Counties said that they might count the ballot if they could verify the address. Butler County planned to "do further research" into the voter on a case-by-case basis. Belmont, Miami and Summit Counties were unsure whether they would count these ballots or not. At least seven Boards properly planned to count these ballots.

- ***Contacting The Voter.*** At least seven Boards were planning to contact voters to ask for additional information or clarification that might help the Board to decide to count the provisional ballots. Five other Boards were not planning to contact the voter. Logan County planned to contact the voter only if there were something that "really throws them off" to the point where the Board could not decide one way or the other.

- ***Five versus Seven-Factor Test.*** Ohio Revised Code § 3505.183 sets forth a five-factor test <u>and</u> a seven-factor test to determine whether to count a provisional ballot. At least six counties planned to use both tests. However, Cuyahoga and Montgomery Counties planned to use only the five-factor test; Hamilton County said that it depends; Logan County did not know; and Clark County did not plan to use either one.

- ***Delegation of Authority.*** The Boards varied widely with regard to how much authority they delegated to staff members to determine which provisional ballots should be counted.

These are just some of the startling discrepancies that NEOCH's abbreviated discovery uncovered when it attempted to learn whether Ohio's Boards of Elections intended to apply uniform standards when processing provisional ballots cast in the November 2008 election.

Notably, Defendant Brunner and the State of Ohio vigorously opposed NEOCH's Motion for Expedited Discovery, Motion for Preliminary Injunction, and Motion for Leave to file a Supplemental Complaint (see Doc. Nos. 113, 122, 126 & 128).[3]

C. **This Court Resolved NEOCH's Motion By Entering, With The Consent Of The Parties, Two Orders Based On Federal Law That Required Boards Of Elections To Apply Uniform Rules To Provisional Ballots.**

. The parties discussed a potential settlement shortly before the October 23 hearing, but those discussions were unsuccessful. The parties could not reach an agreement without the assistance of the Court and the pressure of an imminent hearing, with the briefs and depositions filed and witnesses waiting in the wings. On and after the day of that hearing, the parties negotiated and the Court entered two Orders that addressed the issues identified by NEOCH and provided for the uniform treatment of provisional ballots. Both Orders were based on NEOCH's claims brought under Section 1983 and the Due Process and Equal Protection Clauses.

1. **The First Federal Court Order And Attached Directive.**

This Court entered the First Federal Court Order on October 24, 2008 (Doc. No. 142, attached as Exhibit C). It attached and incorporated Directive 2008-101, which Defendant-Appellee Brunner issued "as a means to settle" NEOCH's Motion. That Directive set forth uniform rules and procedures for processing and counting provisional ballots, and addressed several of the specific concerns that NEOCH identified in its discovery.

---

[3] Their opposition extended beyond these written filings. For example, they refused to allow NEOCH to rely on the deposition testimony at the hearing. That refusal required NEOCH to spend several thousand dollars to subpoena the deponents for the hearing (and proffer their witness fees). While that expense turned out to be unnecessary when the Defendants (at the urging of the Court) finally agreed to allow NEOCH to rely on the deposition testimony, almost of these witnesses proceeded to cash their checks anyway.

### 2.      <u>The Second Federal Court Order And Resulting Directive.</u>

This Court entered the Second Federal Court Order on October 27, 2008 (Doc. No. 143, attached as Exhibit D). It resolved two issues unaddressed by Directive 2008-101 where Boards had also applied different rules, namely, whether to count provisional ballots cast by a voter who does not live in a building, and whether to count provisional ballots that are deficient because of poll worker error. This Order required both categories of ballots to be counted. The next day, Defendant Brunner issued Directive 2008-103 (attached as Exhibit D) to implement the Second Federal Court Order.

Notably, the "poll worker error exemption" set forth in the Second Federal Court Order is based solely on federal law, not on state law. There is no provision in the Ohio Election Code that contains such an exemption. Instead, it is based on NEOCH's discovery that some Boards planned to discard provisional ballots deficient because of poll worker error, while other Boards planned to count such ballots. Under the Equal Protection Clause, this Court imposed a uniform rule requiring all Boards to count these ballots.

### D.      <u>After Two Republican Voters Sued In The Ohio Supreme Court To Disqualify The Ballots, Defendant Brunner Removed The Action And This Court Ruled That The Disputed Ballots Should Be Counted.</u>

The facts and procedural history in *State ex rel. Skaggs v. Brunner* are well-known to this Court and will not be repeated here. Briefly, supporters of Republican candidate Stivers sued in the Ohio Supreme Court to prevent the Disputed Ballots from being counted. This Court ruled that removal was proper and that the Disputed Ballots should be counted. *State ex rel. Skaggs v. Brunner*, Case No. 2:08-cv-1077, 2008 U.S. Dist. LEXIS 94645 (S.D. Ohio Nov. 20, 2008).

E. **The Sixth Circuit Reversed And Remanded On The Grounds That Removal Was Improper; That Court Did Not Reach The Merits.**

The Sixth Circuit reversed and remanded. *State ex rel. Skaggs v. Brunner*, Case No. 08-4585, 2008 U.S. App. LEXIS 24159 (6th Cir. Nov. 25, 2008) (per curiam). The Sixth Circuit held that removal was improper and did not reach the merits.

F. **The Ohio Supreme Court Ruled Solely On The Basis Of State Law And Did Not Consider Either Federal Law Or The Federal Court Orders.**

Given this Court's familiarity with the case, the background in *State ex rel. Skaggs v. Brunner*, 2008-Ohio-6333, 2008 Ohio LEXIS 3470 (Dec. 5, 2008) will not be repeated here. Instead, this section describes the Court's rationale as to the First Category of Disputed Ballots.

The Court began its analysis by quoting the text of R.C. 3505.183(B)(1), which provides:

> To determine whether a provisional ballot is valid and entitled to be counted, the board shall examine its records and determine whether the individual who cast the provisional ballot is registered and eligible to vote in the applicable election. The board shall examine the information contained in the written affirmation executed by the individual who cast the provisional ballot under division (B)(2) of Section 3505.181 of the Revised Code. ***If the individual declines to execute such an affirmation, the individual's name, written by either the individual or the election official at the direction of the individual, shall be included in a written affirmation <u>in order for the provisional ballot to be eligible to be counted</u>; <u>OTHERWISE,</u>*** the following information shall be included in the written affirmation in order for the provisional ballot to be eligible to be counted:
>
> (a) The individual's name and signature;
>
> ***

R.C. 3505.183(B)(1) (emphasis added).

The Ohio Supreme Court summarized this provision as follows: "Under this statute, the affirmation must include the individual's name and signature to be eligible to be counted, unless

the individual declines to execute the affirmation.  In the latter case the individual's name must appear in 'a' written affirmation to be eligible to be counted."  *Skaggs*, 2008-Ohio-6333 at ¶41.  Here, all ballots in the First Category satisfy this definition.  The affirmations were not executed but do include the voter's printed name.  The Court's analysis could have stopped there.

But it did not.  The Court described the newly-minted contention in Defendant Brunner's tie-breaking decision (attached as Exhibit F) that Ohio law requires poll workers to *record the voter's declination*, rather than merely the voter's name, on the Provisional Ballot Application.  Id. at ¶43.  Based on that novel (and seemingly erroneous) construction of Ohio law,[4] Defendant Brunner concluded that if there was no such written recordation, the poll worker could have erroneously failed to record it.  She therefore broke the tie in favor of counting these ballots.

The Court accepted Defendant Brunner's interpretation of Ohio law and held that poll workers are required to record the individual's declination somewhere on the Provisional Ballot Application.  It concluded, however, that it could not assume that ***this type*** of poll worker error had occurred, and therefore rejected Defendant Brunner's position.  Id. at ¶46, 52-54.  Notably, the Court did not consider whether ***other types*** of poll worker error either could or must require

---

[4] NEOCH observes that this construction of Ohio law appears to be erroneously based on an unfortunate conflation of ***two different*** affirmation requirements:  (1) the PBA affirmation discussed previously in this brief, and (2) the "identification affirmation" which must be signed by voters who lack any form of required identification <u>and also</u> lack a Social Security number.  (R.C. 3505.18(A)(4) and R.C. 3505.181(A)(4)).  This conflation is understandable in light of the irreconcilable nature of the last sentence of R.C. 3505.182—which requires that if an individual does not execute the ***PBA affirmation*** the election official must comply with R.C. 3505.183(B)(6)—with the text of R.C. 3505.183(B)(6), which only requires the election official to record a voter's declination to sign the ***identification affirmation***.  That section imposes no such requirement for the ***PBA affirmation***, but instead requires only that the poll worker record the voter's name.  The statute unfortunately uses the term "such affirmation" to describe both of these affirmations.  However, the requirement of providing a declination in one, and the voter's name in the other, is described elsewhere in this statute and is the only construction that is consistent with and gives effect to all of its provisions.  There is no statutory requirement that imposes a duty on poll workers to record a voter's declination to sign the PBA affirmation (as opposed to the identification affirmation).  Indeed, the Franklin County Provisional Ballot Affirmation Form (attached as Exhibit G) does not reflect the presence of any such requirement, nor does it provide any space for the poll worker to make such a record.  Nevertheless, for purposes of this Motion only, NEOCH presumes that Ohio law now imposes such a duty.

that these ballots be counted. Nor did it consider the effect of the Federal Court Orders or the Equal Protection Clause with respect to this First Category of Disputed Ballots.

G.     **Defendant Brunner Subsequently Issued Directive 2008-118 To Implement The Ohio Supreme Court's Order, And In So Doing, Issued An Order That <u>Directly Conflicts With The Federal Court Orders.</u>**

As she was required to do by the Ohio Supreme Court's decision in *Skaggs*, Defendant Brunner promptly issued Directive 2008-118 (attached as Exhibit H). That Directive instructs the Franklin County Board of Elections—but not any other Board of Elections—to "reject any provisional ballots as not eligible to be counted if they do not include the name and signature of the voter on the affirmation required by R.C. 3505.183(B)(1)(a)." Id.

This instruction is directly contrary to Directive 2008-101, which Defendant Brunner issued as part of the First Federal Court Order to <u>all</u> Boards of Elections <u>before</u> the November 2008 election. That Directive required Boards to count ballots *where the individual declined to sign the affirmation* so long as the voter's name was recorded in the written affirmation.

Directive 2008-118 is also directly contrary to the Second Court Order and Directive 2008-103, which was also issued to <u>all</u> Boards of Elections <u>before</u> the November 2008 election. That Directive required Boards to count ballots deficient because of poll worker error, including two types of poll worker error that *were not addressed* by the Ohio Supreme Court.

II.    **FOR THE FIRST CATEGORY OF DISPUTED BALLOTS, THE STATE COURT ORDER AND DIRECTIVE 2008-118 IMPERMISSIBLY CONFLICT WITH THE FEDERAL COURT ORDERS AND THE EQUAL PROTECTION CLAUSE.**

A.    **The First Federal Court Order Provides, In Accordance With The Text Of R.C. 3505.183(B)(1), That If The Voter "Declines" To Sign The Affirmation Statement, The Provisional Ballot Shall Still Be Counted If The Voter's Name Is Recorded (i.e., Printed) In The Affirmation; At A Minimum, It Must Be Counted If The Voter *Intentionally* Did Not Sign The Affirmation.**

The First Federal Court Order attaches and incorporates Directive 2008-101, which was

issued as a means to settle NEOCH's Motion.  It sets forth the following pertinent rules:

B.    **Step 2—Preliminary Analysis on Provisional Ballot Eligibility**

\*\*\*

3.    Registered, Eligible, but No Provisional Ballot Affirmation

If the person **is** properly registered to vote and is eligible to vote in the particular election in question, **but** he or she **did not** complete the affirmation statement on the envelope, the board staff responsible for processing provisional ballots must proceed, pursuant to R.C. 3505.183(B)(1), to determine whether the voter, or an election official at the direction of the voter, recorded the voter's name in a written affirmation.  If neither the voter nor an election official, at the voter's direction, did so, then the provisional ballot cannot count, and the board staff responsible for processing provisional ballot[s] shall proceed to step 5.

First Federal Court Order, attaching Directive 2008-101, at 6 (Exhibit C) (emphasis in original).

Although the Ohio Supreme Court did not address the issue directly, its reasoning

presumes that a voter must intentionally "decline" to sign the affirmation.  That is debatable.

"Decline" means "to refuse," (Webster's II New Riverside Dictionary (Rev. Ed. 1996)), and

refusals can be intentional or unintentional.  But even accepting this presumption, at a minimum,

all ballots cast by voters who <u>intentionally declined</u> to sign the affirmation must be counted.

The State Court Order conflicts with this conclusion by holding that all ballots that lack a

signed affirmation but have a printed name ***must be rejected***.  This conclusion flies in the face of

the unambiguous text of Directive 2008-101, which was issued because of and incorporated by

the First Federal Court Order, and which provides that all ballots that lack a signed affirmation

but have a printed name ***must be counted***.[5]

      B.      **The Second Federal Court Order Provides That Ballots Shall Not Be Discarded Because Of Deficiencies Attributable To Poll Worker Error; Such An Error Occurred Here Because Poll Workers Have A Duty To Verify That The Voter Signed The Affirmation; Therefore, Ballots Cast By Voters Who *Unintentionall*y Did Not Sign The Affirmation Statement Must Be Counted.**

Assuming that Ohio law requires voters to "intentionally decline" to sign the affirmation

for their provisional ballot to eligible to be counted, the next question is what should happen if

the voter unintentionally fails to sign the affirmation. Although the Ohio Supreme Court rejected

Defendant Brunner's argument that ***one type*** of poll worker requires these ballots to be counted,

it did not consider the effect of ***two other types*** of poll worker error. As shown below, these

other types of poll worker error require these unintentionally unsigned ballots to be counted.

The Second Federal Court Order considered the inconsistent treatment given by Boards

to provisional ballots where the poll worker failed to sign the verification statement. It remedied

this uneven treatment by holding that all Boards must count such ballots. More broadly, it held

that no ballot should be rejected because of poll worker error:

> In addition, no provisional ballot cast by an eligible elector should
> be rejected because of a poll worker's failure to comply with duties
> mandated by R.C. 3505.181, which governs the procedure for
> casting a provisional ballot.

Exhibit D at 2.

This Order applies squarely here. Assume that a voter printed his name above the

affirmation statement but overlooked the need to sign the bottom of the form. Certainly, some

---

[5] Notably, although this requirement is based on a construction of state law, it is a construction adopted by the Ohio Supreme Court. *Skaggs*, 2008-Ohio-6333, at ¶41 ("Under this statute, the affirmation must include the individual's name and signature to be eligible to be counted, unless the individual declines to execute the affirmation. In the latter case the individual's name must appear in 'a' written affirmation to be eligible to be counted.").

fault rests on the voter for this oversight.  But the oversight should have been caught by the poll worker, because state law requires her to verify that the voter signed the application <u>before</u> (1) signing her own verification statement, and (2) handing the voter a provisional ballot.  Without those two errors, the voter's oversight would have been caught and corrected.  Accordingly, if the voter unintentionally failed to sign the affirmation form, the missing signature is attributable to poll worker error, and the ballot must be counted.

This state law duty appears in two sections of the Ohio Election Code.  R.C. 3505.182 requires the poll worker to sign a statement verifying that the voter "subscribed and affirmed" the affirmation statement before her.  For example:

**STEP 3:**

**POLL WORKER STATEMENT**

To be completed by a Poll Worker

The preceding Provisional Ballot Application ***was subscribed*** and affirmed before me….

X _____
POLL WORKER'S SIGNATURE

Franklin County Board of Elections Provisional Ballot Application (attached as Exhibit H).

The word "subscribe" means "to sign."  (Webster's II New Riverside Dictionary (Rev. Ed. 1996)).  Here, the poll worker must verify that the voter signed the affirmation.  If the voter unintentionally did not sign the affirmation, and the poll worker signed this verification statement anyway, then the poll worker committed an error.  If an unsigned affirmation renders a ballot legally deficient, it was poll worker error that allowed this deficiency.  If the poll worker had not committed this error, there would have been no deficiency.

This poll worker duty also appears in the state law requirement that prospective voters cannot cast a provisional ballot until they have executed the affirmation:

> The individual **shall be permitted to cast a provisional ballot** at
> that polling place **upon the execution of a written affirmation by
> the individual** before an election official at the polling place
> stating that the individual is both of the following:
>
> (a)      A registered voter in the jurisdiction in which the
> individual desires to vote;
>
> (b)      Eligible to vote in that election.

R.C. 3505.181(B)(2) (emphasis added).

While this language does not expressly impose a duty on poll workers, it is the only reasonable interpretation. The phrase "shall be permitted" requires the poll worker to grant the permission. That permission can only be granted after the voter "executes" the affirmation "before an election official at the polling place." "Execute" means "to make valid, as by signing." (Webster's II New Riverside Dictionary (Rev. Ed. 1996)). Therefore, the poll worker must not permit the voter to cast a provisional ballot until he has executed the affirmation before the poll worker. If the poll worker failed to fulfill that duty—and allowed a voter to vote even though he did not sign the affirmation—then she erred, and that error created the deficiency.

In sum, if the voter unintentionally did not sign the affirmation form but voted anyway, then the poll worker erred by (1) verifying that the voter had signed the affirmation, even though he had not, and (2) permitting the voter to cast a provisional ballot even though he had not signed the affirmation. If the poll worker had not committed these errors, then the deficiency would not exist because the voter's oversight would have been corrected. Accordingly, ballots cast by voters who <u>unintentionally</u> did not sign the affirmation must be counted under the Second Federal Court Order. The State Court Order and Directive 2008-118 conflict with this Order.

**C.**   **The State Court Order And Directive 2008-118 Violate The Equal Protection Clause By Imposing Rules On Franklin County That Differ From The Rules Imposed On All 88 Ohio Counties By The First Federal Court Order.**

In December 2000, the United States Supreme Court held that even if a state's highest court has the prerogative to construe that state's election law, the Equal Protection Clause forbids it from doing so in a manner that results in inconsistent rules being applied to voters in that state. *Bush v. Gore*, 531 U.S. 98, 105, 121 S. Ct. 525, 530 (2000).

*Bush v. Gore* applies squarely here. Although the Ohio Supreme Court has the authority to construe the Ohio Election Code, it cannot do so in a manner that results in unequal standards being applied to voters in different Ohio counties. But that is exactly what it did. The Ohio Supreme Court relied on state law to announce a rule that required the rejection of provisional ballots without a signed affirmation statement *in Franklin County only*. It did not require that this rule be applied statewide. Instead, Ohio's other 87 counties have been and remain required to follow the conflicting rule set forth in Directive 2008-101 (issued because of and adopted by the First Federal Court Order).

Accordingly, because the Ohio Supreme Court imposed a rule on Franklin County voters that is directly contrary to the rule that applies to voters in every other Ohio county, the State Court Order and Directive 2008-118 violate the Equal Protection Clause.

III.   **PLAINTIFFS HAVE SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR MOTION TO ENJOIN THE STATE COURT PROCEEDINGS.**

A.   **The Court Should Enjoin The State Court Proceedings And Enforce Its Prior Court Orders.**

For those provisional ballots that contain a printed name but no signature, the State Court Order and Directive 2008-118 are in direct conflict with the Federal Court Orders, Directives 2008-101 and 2008-103, and the Equal Protection Clause of the Fourteenth Amendment. Under the law described below, this Court should resolve this conflict by enforcing its Federal Court Orders and enjoining the State Court Order (and Directive 2008-118) to the extent of the conflict.

1.   **This Court has an obligation to enforce its orders.**

This Court has the authority and duty to enforce the Federal Court Orders. Consent decrees "are settlement agreements 'subject to continued judicial policing.'" *Grand Traverse Band v. Director, Michigan Dept. of Nat. Resources*, 141 F.3d 635, 641 (6th Cir. 1998) (citations omitted). "[T]he prospective provisions" of a consent decree "operate as an injunction" which requires this Court to retain jurisdiction and protect the integrity of the Orders with its contempt powers. *Waste Mgmt. of Ohio v. City of Dayton*, 132 F.3d 1142, 1145-46 (6th Cir. 1997) (citations omitted). "Courts, therefore, have a duty to enforce, interpret, modify, and terminate their consent decrees as required by circumstance." Id. at 1146.

2.   **To the extent that the State Court Order conflicts with the Federal Court Orders or the Equal Protection Clause, those Orders and the United States Constitution must prevail under the Supremacy Clause.**

The Supremacy Clause of the United States Constitution provides that where state and federal laws conflict, the federal law shall prevail. *Gonzales v. Raich*, 545 U.S. 1, 29, 125 S. Ct. 2195, 2212 (2005) ("The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail."). As shown above, the State Court Order and Directive 2008-118 conflict with the Federal Court Orders and the Equal Protection

15

Clause.  To the extent that there is such a conflict, the Supremacy Clause provides that the

Federal Court Orders and the Equal Protection Clause will prevail.  *Gonzales*, 545 U.S. at 29.

Notably, the fact that the Ohio Supreme Court issued its conflicting order based solely on

state law, and did not consider or give effect to the Federal Court Orders or the Equal Protection

Clause, does not protect that order from the requirements imposed by federal law.  The Ohio

Supreme Court is bound by federal law and must render its decisions consistent with that law:

> Federal law is enforceable in state courts … because the
> Constitution and laws passed pursuant to it are as much laws in the
> States as laws passed by the state legislature.  The Supremacy
> Clause makes those laws "the supreme Law of the Land," and
> charges state courts with a coordinate responsibility to enforce that
> law according to their regular modes of procedure.

*Howlett v. Rose*, 496 U.S. 356, 367, 110 S. Ct. 2430, 2438 (1990).

B.       **The Anti-Injunction Act Does Not Bar The Requested Relief.**

Federal courts are often barred from enjoining state court orders or proceedings by the

Anti-Injunction Act.  It provides that "[a] court of the United States may not grant an injunction

to stay proceedings in a State court except as expressly authorized by Act of Congress, or where

necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.

As held by this Court, however, the Act does not apply to actions brought under Section

1983 because Congress has expressly authorized federal injunctions of state court proceedings in

such cases.  *Women's Med. Prof. Corp. v. Baird*, Case No. 2:03cv162, 2003 U.S. Dist. LEXIS

15873, at *3-4 (S.D. Ohio June 12, 2003) (Marbley, J.) (citing *Mitchum v. Foster*, 407 U.S. 225,

92 S. Ct. 2151 (1972)).  The instant action was brought by NEOCH under Section 1983 and the

Due Process and Equal Protection Clauses of the Fourteenth Amendment. Accordingly, the

Anti-Injunction Act does not bar the requested injunction of the State Court Order.[6]

IV.    **THE REMAINING FACTORS WEIGH IN FAVOR OF GRANTING THE REQUESTED RELIEF.**

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions.

When ruling on such a motion, this Court must balance four factors: (1) whether the movant has

a strong or substantial likelihood of success on the merits, (2) whether the movant will suffer

irreparable harm without the relief requested, (3) whether granting the relief requested will cause

substantial harm to others, and (4) whether the public interest will be served by granting the

relief requested.[7] "In general, the likelihood of success that need be shown … will vary

inversely with the degree of injury the plaintiff will suffer absent an injunction."[8]

For all of the reasons stated above, Plaintiffs have established a strong likelihood of

success on the merits of the claims at issue in this Motion. The remaining factors also weigh in

favor of granting the Motion. First, NEOCH will suffer irreparable harm absent the requested

relief, because the Federal Court Orders will be effectively nullified and the voting rights of its

homeless members will thereby be imperiled. Second, granting the requested relief will not

cause substantial harm to others, particularly since the *Skaggs* relators' interest is considerably

lessened by Ms. Kilroy's victory over Mr. Stivers in the Ohio 15th District Congressional race.

Third, the public interest will be served by granting the requested relief, as the public benefits

---

[6] It is also NEOCH's position that no abstention doctrines apply here. For example, the abstention doctrine described in *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746 (1971), does not apply because the state court proceedings were filed long after this case was filed, and because NEOCH was not a party to those proceedings. Rather than brief every abstention doctrine (or any other judicially-created doctrine), however, NEOCH reserves the right to do so if and when any such doctrine is raised by another party or by the Court.

[7] *Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456, 460 (6th Cir. 1999).

[8] *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982) (internal quotations and citation omitted).

from the statewide application of uniform rules to provisional ballots, and the relief sought will resolve the conflict between the State and Federal Court Orders.

V.     **CONCLUSION.**

For the reasons stated, Plaintiff NEOCH's Combined Motion should be granted.

Respectfully submitted,


  /s/ Caroline H. Gentry
Caroline H. Gentry, Trial Attorney (0066138)
Paul G. Hallinan (0010462)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
One South Main Street, Suite 1600
Dayton, OH  45402
(937) 449-6748 / (937) 449-6820 Fax
Email:  cgentry@porterwright.com

and

Subodh Chandra (0069233)
THE CHANDRA LAW FIRM, LLC
1265 W. 6th Street, Suite 400
Cleveland, OH  44113-1326
Tel:  (216) 578-1700
Fax:  (216) 578-1800
Email:  Subodh.Chandra@StanfordAlumni.org

*Attorneys for Plaintiff*
*Northeast Ohio Coalition for the Homeless*

## CERTIFICATE OF SERVICE

I hereby certify that on December 12th, 2008, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send notification of such filing to the

counsel of record in this case.

　/s Caroline H. Gentry　　　　　　　　　　
Caroline H. Gentry (0066138)
Attorney for Plaintiffs
PORTER, WRIGHT, MORRIS & ARTHUR LLP
One South Main Street, Suite 1600
Dayton, Ohio 45402
(937) 449-6748 / (937) 449-6820 Fax
cgentry@porterwright.com

DAYTON/623847 v.01