**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **NORTHEAST OHIO COALITION** | : | |
| **FOR THE HOMELESS**, *et al.*, | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JENNIFER BRUNNER, in her official** | : | |
| **capacity as Secretary of State of Ohio,** | : | |
| | : | |
| **Defendant.** | : | **Case No. C2-06-896** |
| _____ | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **NORTHEAST OHIO COALITION** | : | **Magistrate Judge Terence P. Kemp** |
| **FOR THE HOMELESS**, *et al.*, | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **THE STATE OF OHIO,** | : | |
| | : | |
| **Intervenor-Defendant.** | : | |

**OPINION & ORDER**

**I.  INTRODUCTION**

This matter is before the Court on Plaintiffs Northeast Ohio Coalition for the Homeless'
("NEOCH") and Service Employees International Union, Local 1199's ("SEIU") (collectively
"Plaintiffs") First and Second Motions for Attorney's Fees and Costs (Doc. Nos. 96, 176, 179).
Also before the Court are Defendants Jennifer Brunner's and Intervenor-Defendant the State of
Ohio's (collectively "Defendants") and Plaintiffs' cross-motions for reconsideration of the
September 30, 2008 Opinion and Order dismissing Counts One and Two of Plaintiffs'
Complaint.  (Doc. Nos. 183, 191.)  For the reasons set forth below Plaintiffs' and Defendants'

Motions for Reconsideration are **DENIED**.  This Court **GRANTS** Plaintiffs Motion for Attorney

Fees and Costs and **AWARDS** $401,905.50 in attorneys' fees and $29,468.55 in costs and

expenses, for a total of $431,374.05.

## II. FACTS

### A.  Background

This case has a long and eventful history before this Court, stretching back to the

November 2006 election season.  On January 31, 2006, the Ohio General Assembly amended

Ohio's Election Code to require that voters provide one of several types of identification in order

to cast a regular ballot in state and federal elections held in Ohio ("Voter ID Law").  On October

24, 2006, Plaintiffs filed a thirteen-count complaint under 42 U.S.C. § 1983 against then Ohio

Secretary of State J. Kenneth Blackwell challenging the constitutionality of several provisions of

the Voter ID Law.

*1.  Fall 2006 Election Season Litigation*

During the fall of 2006, the Plaintiffs sought a temporary restraining order[1] and a

preliminary injunction relating to Defendants' enforcement of certain provisions of the Voter ID

Law.  That litigation resulted in the Court's entry of a Consent Order negotiated by the parties

that applied to the 2006 election.  Following the 2006 election, Plaintiffs believed that Ohio

Boards of Elections ("BOEs") were improperly counting provisional ballots.  Consequently, the

parties negotiated an Agreed Enforcement Order, which the Court entered on November 15,

2007.

*2.  September 30, 2008 Opinion & Order*

---

[1] On October 26, 2006 Plaintiffs were granted a temporary restraining order ("TRO") by this
Court, the majority of which was stayed by an October 31, 2006 order of the the Sixth Circuit.

The Court granted Plaintiffs leave to request attorney's fees and costs expended during the litigation of the 2006 Consent Order and Agreed Enforcement Order (Collectively "2006 Orders"). Accordingly, Plaintiffs filed their First Motion for Attorneys fees on January 4, 2008. On February 27, 2008, Defendants responded with a Motion to Dismiss for lack of subject matter jurisdiction and in opposition to the fees motion. Defendants argued that Plaintiffs lacked standing to challenge the constitutionality of the Voter ID Law and that Plaintiffs were not prevailing parties and thus not entitled to attorneys fees with respect to the 2006 Orders. Following a thorough review of the briefs, the Court dismissed six of Plaintiffs thirteen claims for lack of standing, but granted Plaintiffs' request for attorneys' fees and costs by an Opinion and Order dated September 30, 2008. *Ne. Ohio Coal. for the Homeless v. Brunner*, No. 2-06-896, 2008 WL 4449514, at *5-8 (S.D. Ohio Sept. 30, 2008).

In the September 30, 2008 Opinion, the Court held that Plaintiffs' lacked standing to bring, *inter alia*, Counts One and Two of their Complaint. *Id*. at *6-7. The Court also held that Plaintiffs were prevailing parties with respect to the 2006 Orders and were, consequently, entitled to attorney's fees and costs. *Id*. at *9-10. The Court reserved for a subsequent hearing the issue of what constituted reasonable fees and costs given the degree of success obtained by the Plaintiffs. *Id*. at * 10. The Court requested supplemental briefing on the reasonableness of fees. The Plaintiffs did so on January 20, 2009 and Defendants did so on February 27, 2009.

Now both Plaintiffs and Defendants move for reconsideration of the September 30, 2008 Opinion. Those motions are now before the Court.

### 3. Fall 2008 Election Season Litigation

This case erupted into activity again during the Fall 2008 Election season. In October 2008, Plaintiffs filed a motion for a preliminary injunction seeking to require the Ohio BOEs to

apply uniform procedures for counting provisional ballots. As a result of the parties negotiations regarding the preliminary injunction motion, the Court entered two orders (collectively "2008 Orders"). The October 24, 2008 Order set forth procedures that would be used in the counting and processing of provisional ballots. Similarly, an October 27, 2008 Order determined that provisional ballots cast by individuals who did not live in buildings would be counted and determined that provisional ballots could not be invalidated due to poll worker error.

On January 20, 2008, Plaintiffs filed their Second motion for Attorneys fees. In that motion, Plaintiffs claim that they are prevailing parties with respect to the 2008 Orders and are entitled to attorney's fees and costs. Defendants oppose. On July 22, 2009, this Court held a hearing on Plaintiffs first and second motions for attorneys fees. Those motions are also before the Court.

## III. LEGAL STANDARDS

### A. Motions to Reconsider

The Federal Rules do not expressly provide for "Motions to Reconsider." *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F.App'x 949, 959 (6th Cir. 2004). Nevertheless, "[d]istrict courts have authority both under common law and [Federal Rule of Civil Procedure] 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Id*. Motions for reconsideration serve a limited function. Generally, a motion for reconsideration is only warranted when there is: (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice. *Id*. Motions for reconsideration are not intended to re-litigate issues previously considered by the Court or to present evidence that could have been raised earlier. *See J.P. v. Taft*, No. C2-04-692, 2006 WL 689091, at *13 (S.D. Ohio Mar. 15, 2006).

## B. Motions for Attorneys Fees & Costs

The Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988(b), permits a court to award reasonable attorney's fees to the "prevailing party" in a civil rights action brought under 42 U.S.C. § 1983. A plaintiff is not entitled to any attorney's fees unless it is a "prevailing party." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989); *see also DiLaura v. Twp. of Ann Arbor*, 471 F.3d 666, 670 (6th Cir. 2006). Once it has established prevailing party status, the "degree of the plaintiff's overall success goes to the reasonableness . . . not to the availability of a fee award." *Garland*, 489 U.S. at 793.

## IV. ANALYSIS

### A. Defendants' Motion for Reconsideration

Defendants do not assert any change in controlling law or new evidence in support of their motion to reconsider the September 30, 2008 Order. Instead, Defendants argue that the Court's determination that Plaintiffs were prevailing parties with respect to the 2006 Orders was clear error. Defendants find no fault with the Court's definition of what constitutes a prevailing party with respect to a motion for attorney's fees. To recover attorneys' fees as a prevailing party a party must show that it has obtained relief on the merits of its claim, including relief in the form of a consent decree or settlement, that materially alters the legal relationship between the parties and directly benefits the plaintiff at the time of the judgement." *Farrar v. Hobby*, 506 U.S. 103, 111-13 (1992); *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001).

Defendants claim three errors in the Court's application of that standard to the facts of this case: the first and second challenge the Court's conclusion that the November 1, 2006 Consent Order changed the legal relationship between the parties, and the third asserts that the

Agreed Enforcement Order did not directly benefit the Plaintiffs. Plaintiffs respond that no errors of law were committed and that Defendants' merely re-hashes the arguments they presented in opposition to Plaintiffs' first motion for attorney's fees, which the Court considered and rejected.

Defendants argue that Plaintiffs are not entitled to prevailing party status based on the November 1, 2006 Consent Order because that Order did not change the legal relationship between the parties. According to Defendants, the content of the 2006 Consent Order merely restated the requirements of the Ohio Revised Code and, therefore, did not change the relationship between the parties. The Court notes that this is the exact argument that Defendants' raised in their opposition to Plaintiffs first motion for attorneys' fees (doc. No xx 13). Beyond restating their rejected arguments, Defendants do not produce any additional authority suggesting that the Court's resolution of this issue is precluded by the law. The Court has already considered and rejected defendants' argument, and the fact that Defendants continue to disagree with that ruling does not render the ruling legally erroneous.

Defendants also take issue with the Court's finding that the 2006 Consent Order changed the relationship between the parties because it prevented the Secretary from altering or rescinding Directive 2006-78. Defendants posit that because Directive 2006-78 "merely restated the Ohio Revised Code" Defendants power to rescind the Directive would have been a hollow gesture even without the 2006 Consent Order. (Defs.' Reply Br. 2.) That argument, however, misrepresents the content of Directive 2006-78 which not only restated the requirements of the Ohio Revised Code but also, as the Court pointed out in its September 30, 2008 Order, defined terms which were not defined by the Code. Those definitions could have freely been altered by subsequent pre-election directives absent the Consent Order. Consequently, the 2006 Consent

Order provided Plaintiffs with at least some of the clarity/uniformity they sought in filing suit. Moreover, as the 2006 Consent Order also defined some terms differently and more expansively than Directive 2006-78, it further changed the relationship between the parties and conferred a benefit on the plaintiffs. (See September 30, 2008 Order 19 n. 10.)

Next, Defendants claim the Court erred in finding that the 2006 Consent Order changed the relationship between the parties by effectively empowering Plaintiffs to monitor compliance with Directive 2006-78 and the Voter ID Law. Defendants' point out that the 2006 Consent Order says nothing about "observers or enforcement" and that Plaintiffs were already able to obtain judicial review of questionable ballot handling, presumably by filing a new complaint. (*Id*. at 2.) This argument misconstrues the Courts meaning. Clearly, the 2006 Consent Order did not make Plaintiffs official election "observers" as that term is defined under the Ohio Revised Code. Instead, the existence of an enforceable Consent Order gave the Plaintiffs an expedited route for challenging Defendants ballot handling practice. The ability to bind Defendants' to the definitions of statutory terms and procedures negotiated between the parties in securing the 2006 Consent Order through the means of an expedited enforcement procedure was a power over Defendants which Plaintiffs did not previously have.

Finally, Defendants argue that the Court erred by finding that the Agreed Enforcement Order altered the legal relationship between the parties. In the September 30, 2008 Opinion, the Court found that the Agreed Enforcement Order expanded the powers of election observers by permitting them to object to and gather information on any provisional ballots that the BOEs proposed to reject. Defendants admit that the Enforcement Order changed the law regarding observers powers but claim that this alteration in the law was insufficient to work a change in the relationship between the parties because Plaintiffs themselves were not "observers" under the

-7-

statute and therefore the expanded scope of observer powers did not directly benefit the

Plaintiffs. That argument misconstrues the nature of relief that Plaintiffs were seeking.

Plaintiffs main concern when seeking the Agreed Enforcement Order was to ensure that

provisional ballots were being counted or rejected uniformly. Consequently, the Agreed

Enforcement Order directly benefitted Plaintiffs by providing them with additional procedural

safeguards, in the form of third party observers with the ability thoroughly to review and object

to the rejection of ballots, to ensure that provisional ballots were properly counted.

All of Defendants' arguments in support of their motion to reconsider are arguments

which the Defendants unsuccessfully advanced in their motion to dismiss or otherwise fail to

demonstrate that the Court committed clear error in concluding that Plaintiffs were prevailing

parties based on the 2006 Orders. Upon review of its earlier Opinion, the Court concludes that

the correct legal principles were applied and again concludes that the factual circumstances

warrant a finding that Plaintiffs were prevailing parties with respect to the 2006 Orders.

Accordingly, the Court finds that Defendants' motion to reconsider is not well taken, and it is

**DENIED**.

### B. Plaintiffs' Motion for Reconsideration

Plaintiffs contend that the Court should reconsider its dismissal of Counts One and Two

of the complaint based on a recent Eleventh Circuit Opinion and "new evidence." In those

counts, Plaintiffs alleged that, due to the vagueness of Voter ID Law, Ohio BOEs were not

uniformly applying five specific ID requirements relating to the definition of several types of

identification and the type of identification required for absentee voters.[2] In its September 30,

---

[2] Specifically Plaintiffs alleged that the following ID requirements were defined differently by
different BOEs: (1) what constitutes a "current" government document or bill; (2) what

2008 Order, the Court dismissed those claims for lack of standing because plaintiffs had not alleged that any of their members "would be affected by the five areas of disparate interpretation of the Voter ID Law." *Ne. Ohio Coal. for the Homeless*, 2008 WL 4449514 at * 6. Specifically, Plaintiffs had not claimed that any of their members intended to vote via absentee ballot or intended to use any of the categories of identification that were alleged to be non-uniformly defined. *Id*. The Court further explained that, given the small number of member voters identified by Plaintiffs, the Court could not overlook Plaintiffs' failure to plead that any of its members intended to use a vaguely defined type of identification and merely assume standing based on a statistical likelihood that one of its members would inevitably use type of ID allegedly defined non-uniformly by the BOEs. *Id*. at *7.

Plaintiffs argue that a recent Eleventh Circuit opinion, *Common Cause/Georgia v. Billups*, 554 F.3d 1340 (11th Cir. 2009), establishes that they should not have been required to show that their members "were actually denied the right to vote, or that it was 'statistically inevitable' that such a denial would occur." (Pls.' Br. 6.) Instead, they argue "those members of NEOCH who voted either absentee or with one of the disputed forms of identification were subjected to a barrier to their right to vote . . . [a]ccordingly, if NEOCH can provide evidence that it had even one such member, then it had standing to bring Counts One and Two." (*Id*.) Plaintiffs argument is unpersuasive.

First, and most tellingly, Plaintiffs argument misrepresents the Court's ruling. Contrary to Plaintiffs' assertion, the Court did not hold that plaintiffs were required to prove or to plead

---

constitutes an "other government document;" (3) which number on an Ohio driver's license may be used by absentee voters; (4) whether military identification cards without a current address are acceptable; and (5) whether early in-person absentee voters must produce identification.

that their members were *actually denied the right to vote* based on the BOEs misinterpretation or that they were required to show that such a *denial* would be statistically inevitable. Instead, the Court held (and Plaintiffs now concede) that, to demonstrate standing they had to plead or otherwise to establish that at least one of their members *fell within the category of voters who were potentially affected by the alleged lack of uniformity*, i.e., that they either intended to vote by absentee ballot or by using one of the disputed forms of identification. *Ne. Ohio Coal. for the Homeless*, 2008 WL 4449514 at *6. The Court explained that Plaintiffs had not "identified any of their members who would be affected by the five areas of disparate identification of the Voter ID Law" because they had because they had not claimed "that any of their members would have attempted to use any of the categories of identification that were alleged to be defined confusingly" and had "not claimed that any of their members were absentee voters." *Id*. at *6-7. Accordingly, the Court held that Plaintiffs lacked standing. *Id*. Plaintiffs do not deny that they utterly failed to allege or show that any of their members fell within the category of voters who were potentially affected by the alleged lack of uniformity. Consequently, the Court's dismissal for lack of standing was proper. *United States v. Hays*, 515 U.S. 737, 745 (1995) (voters alleging equal protection violations must produce evidence demonstrating that they have personally been subjected to the challenged action).

Furthermore, the Eleventh Circuit's ruling in *Billups* does not alter this result. First, *Billups* would not suggest standing for Plaintiffs in this case. In *Billups*, plaintiffs argued that a Georgia statute that required them to produce photo identification imposed an undue burden on their right to vote in violation of the Fourteenth Amendment. 554 F.3d at 1374. The court held that they had standing to pursue that particular claim even though they could easily obtain a photo identification because they had demonstrated injury sufficient to confer standing based on

having been subjected to the burden of producing an identification. *Id*. at 1352. The court explained that "[f]or purposes of standing, a denial of equal treatment is an actual injury even when the complainant is able to overcome the challenged barrier." *Id*. at 1351. The *Billups* court's finding of standing was logical because every voter was subjected to the challenged barrier, i.e., the requirement that they produce photo identification.

Unlike in *Billups*, Counts One and Two of Plaintiffs Complaint did not claim that the imposition of an identification requirement itself imposed an undue burden challenge to the Voter ID Law.[3] Instead, those Counts claimed that BOEs were failing uniformly to accept certain types of identification and apply uniform procedures to absentee voters and that the lack of uniformity violated the Due Process and Equal Protection Clauses. Thus, only voters who attempted to use one of the disputed forms of identification or to vote absentee were subjected to barrier to their right to vote complained of in Counts One and Two. Accordingly, even considering *Billups*, Plaintiffs lacked standing unless they fell within the subset of voters who intended to use a disputed form of identification or to vote absentee. As Plaintiffs failed to allege or demonstrate that a single member voter fell within either of those subsets the Court properly found that they lacked standing to assert the claims in Counts One and Two. Second, *Billups* is not controlling precedent upon this Court and, therefore, is not a proper basis for a motion to reconsider. *See Rodriguez*, 89 F.App'x at 959.

Finally, Plaintiffs claim that they have "new evidence" in the form of a declaration from one of their members stating that she voted absentee in the 2006 election. To constitute "newly discovered evidence" for purposes of a motion for reconsideration, however, evidence must have

---

[3] Plaintiffs did raise undue burden claims based on the identification requirements in Counts Three and Four, which survived Defendants' motion to dismiss.

been previously unavailable. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999); *Divine Tower Int'l Corp. v. Kegler, Brown, Hill, & Ritter Co.*, Nos. 2:04-CV-494, 2:04-CV-584, at *4 (S.D. Ohio Sept. 24, 2008). Plaintiffs could have (and should have) secured their member's declaration at the time they filed their complaint or, at least, by the time they opposed Defendants motion to dismiss for lack of standing. Therefore, the declaration Plaintiffs now attempt to put before the Court was in no sense "previously unavailable" and cannot constitute new evidence sufficient to support a motion to reconsider.

For all of these reasons, Plaintiffs motion for reconsideration is **DENIED**.

### C. Plaintiffs' Motions for Attorney's Fees and Costs

Plaintiffs have moved this Court for an award of attorneys' fees and costs against Defendants for their work relating to the procurement of the 2006 Orders and the 2008 Orders. Defendants contend that Plaintiffs should not be entitled to recover attorney fees and costs incurred in the litigation; however, Defendants contend that if Plaintiffs are granted such fees and costs a reasonable fee award is $0 given the degree of Plaintiffs' overall success.

#### 1. Entitlement to a Fee Award

The Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988(b), permits a court to award reasonable attorney's fees to the "prevailing party" in a civil rights action brought under 42 U.S.C. § 1983. A plaintiff is not entitled to any attorney's fees unless it is a "prevailing party." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989); *see also DiLaura v. Twp. of Ann Arbor*, 471 F.3d 666, 670 (6th Cir. 2006). A party qualifies as a "prevailing party" if it has obtained actual relief, such as an enforceable judgment or a consent decree, that materially alters the legal relationship between the parties, and directly benefits the

plaintiff at the time of the judgment. *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992);

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605

(2001); see also *Maher v. Gagne*, 448 U.S. 122, 129-130 (1980). Once it has established

prevailing party status, the "degree of the plaintiff's overall success goes to the reasonableness . .

. not to the availability of a fee award." *Garland*, 489 U.S. at 793. Unless "special

circumstances" exist, a district court *must* award attorney's fees to a prevailing party. *See, e.g.,*

*Berger v. City of Mayfield Heights*, 265 F.3d 399, 406 (6th Cir. 2001).

### a. Entitlement to Fees & Costs Based on 2006 Orders

The Court has already determined in its September 30, 2008 Order that Plaintiffs are

prevailing parties with respect to their work securing the 2006 Orders. The Court has also

denied, *supra*, Defendants' motion to reconsider that ruling. Consequently, Plaintiffs are entitled

to attorneys fees relating to the procurement of the 2006 Orders and the only question that

remains with respect to that claim is the reasonableness of the amount of Plaintiffs fee request.

### b. Entitlement to Fees & Costs Based on 2008 Orders

In their Second Motion for Attorneys Fees, Plaintiffs argue that they are also prevailing

parties and entitled to attorney's fees and costs for their work in procuring the 2008 Orders.

They requests fees and costs for periods of work which they claim are "reasonably related" to the

2008 Orders including: (1) fees and costs incurred in litigating the October 14, 2008 Preliminary

Injunction Motion and procuring the 2008 Orders; (2) fees and costs incurred in attempting,

unsuccessfully, to settle the case between December 2006 and the October 14, 2008 filing of the

preliminary injunction motion; (3) fees and costs incurred in opposing Defendants Motion to

Dismiss the claims related to the 2008 Orders; and (4) fees and costs incurred as a result of

Plaintiffs efforts to protect the 2008 Orders in a subsequent lawsuit, *State of Ohio ex rel. Skaggs*

*v. Brunner*, 549 F.3d 468 (6th Cir. 2008).  Defendants argue that Plaintiffs cannot be deemed prevailing parties with respect to the 2008 Orders because those orders largely restated the existing Ohio election law respecting provisional ballots or made such insignificant changes to the established law that any success is too nominal to entitle Plaintiffs to a fee award.

The Court finds that Plaintiffs are a prevailing party in relation to their work procuring the 2008 Orders.  In both their supplemental complaint and their October 2008 Motion for Preliminary injunction Plaintiffs challenged the alleged failure of the Ohio BOEs to apply uniform standards to the counting of provisional ballots.  Plaintiffs alleged that there were several verifiable discrepancies in the standards that various BOEs intended to apply when counting provisional ballots that would result in a non-uniform treatment of provisional ballots jeopardizing the constitutional right of provisional voters, including Plaintiffs members.

Accordingly, the October 2008 Preliminary Injunction Motion sought, *inter alia*, an order identifying the standards that the BOEs were to apply.  (Doc. No. 111 at 3.)  The October 2008 Orders accomplished much of this goal, i.e., they provided the BOEs with a clear set of uniform procedures to guide their execution of their duties under the law.  The 2008 Orders also clarified areas of ambiguity in the Ohio voting law and created new requirements designed to ensure the accurate counting of provisional ballots.  Obtaining the 2008 Consent Orders altered the legal relationship between the parties.

Despite Defendants' claims, the overlap between the contents of the 2008 Orders and the pre-existing requirements of the Ohio Code does not preclude a finding that Plaintiffs were prevailing parties based on the 2008 Orders.  In fact, the overlap is to be expected as Plaintiffs sought in their Preliminary Injunction Motion to have the Defendant Secretary of State provide

clear guidance to the BOEs about how the existing law was to be implemented. The Court has no doubt that the 2008 Orders provided such guidance by providing simple step-by-step instructions on how provisional ballots were to be counted as well as clarifying ambiguities in the law and fleshing out vague requirements. Moreover, the 2008 Orders reversed Defendant Secretary of State's prior position that each BOE was responsible for creating their own regulations for determining how and whether to count provisional ballots. The 2008 Orders largely addressed Plaintiffs concerns that provisional ballots would not be counted uniformly across Ohio's 88 Counties and, thereby, conferred a direct benefit on Plaintiffs' members, who are largely homeless individuals who are constrained to vote via provisional ballot given their lack of proper identification to cast a regular ballot. Consequently, Plaintiffs are entitled to attorneys' fees for their work in securing the 2008 Orders.

## 2. Reasonable Fee Amount

"The starting point for determining the amount of a reasonable attorney fee is the 'lodestar' amount which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "Where, the party seeking the attorney fees has established that the number of hours and the rate claimed are reasonable, the lodestar is presumed to be the reasonable fee to which counsel is entitled." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986). In

their First and Second Motions for Attorneys fees, Plaintiffs have requested a combined loadstar

amount of $538,298.87 in attorneys' fees and costs in the amount of $39,792.48.[4]

*a. Hours Reasonably Expended*

A court may not "order a defendant to pay fees for time spent on matters unrelated to the

issues on which plaintiff prevailed." *Gautreaux v. Chicago Housing Auth.*, 491 F.3d 649, 661

(7th Cir. 2007). Only "efforts on matters related to the plaintiffs' success are compensable." *Id.*

Plaintiffs submit that 2,122.05 hours were reasonably expended on this case in connection with

the 2006 and 2008 Orders. Defendants make several challenges to Plaintiffs' hours calculation.

First, Defendants argue that Plaintiffs cannot reasonably recover for hours spent on a

November 2006 show cause hearing involving Mr. Chandra. At oral argument, Plaintiffs

conceded this to be the case, but argued that they did not include hours expended on the show

cause hearing in their request. Having reviewed Plaintiffs billing records, the Court finds that

15.5 hours, at a total cost of $4,582.50, included in Mr. Hollenbaugh's Declaration in Support of

Plaintiffs' Second Motion for Attorneys' Fees represent time expended related to the show cause

hearing.[5] Accordingly, that time will be deducted from Plaintiffs' attorneys' fee award.[6]

---

[4] For the 2006 Orders they seek $262,764.25 in fees and costs in the amount of
$19,211.98. In relation to the 2008 Orders, Plaintiffs request attorneys' fees in the amount of
$275,534.62 and costs in the amount of $20,580.50.

[5] Those hours are found on the first page of Exhibit A to Hollenbaugh's second
declaration (Doc. No. 182) for the billing entries dated: 11/17/2006 for timekeepers DJC and
HRH and 11/20/2006-11/22/2006 for timekeeper HRH.

[6] Furthermore, from the Court's review it appears that certain time entries for the same
11.3 hours of work were inadvertently included in both the first and second fee request for
certain work performed by Mr. Hollenbaugh's firm between January 14, 2008 and October 20,
2008. Those hours appear both on tenth page of Exhibit A to Hollebaugh's second declaration

Second, Defendants' quibble with Plaintiffs' inclusion of hours spent obtaining depositions in preparation for the November 2008 preliminary injunction hearing that they believe were "ultimately meaningless to the outcome of the case"(presumably because the preliminary injunction hearing was converted into a settlement conference and the depositions were, consequently, not used as exhibits). The depositions were taken as part of the process that resulted in Plaintiffs' securing the October 2008 Orders. In fact, Plaintiffs' ability to present to the Court evidence, in the form of deposition testimony from the various BOEs, indicating that the Voter ID Law requirements were being non-uniformly applied may easily have pressured Defendants to agree to settlement. The fact that Defendants consented to the 2008 Orders rather than combat Plaintiffs' evidence, including the depositions, in Court does not render the depositions unrelated to Plaintiffs' success. The Court declines to deduct hours spent obtaining the depositions from Plaintiffs' fee award.

Third, Defendants object to Plaintiffs' attempt to recover for hours spent negotiating settlement of the case between December 2006 and their filing of a Supplemental Complaint and Motion for Preliminary Injunction on October 14, 2008. They argue that Plaintiffs cannot reasonably be deemed prevailing parties in relation to those settlement efforts because they failed to settle the case. The Court agrees that the 2008 Orders came about as a direct result of Plaintiffs filing of the October 14, 2008 Preliminary injunction motion and Supplemental Complaint and the parties joint efforts to settle the preliminary injunction motion. Efforts to

---

(Doc. No. 182) and on the ninth page of Exhibit A to Hollenbaugh's first declaration (Doc. No. 178). Plaintiffs' cannot recover twice for the same hours, therefore, the $1,890.00 representing the double counting of those hours will be deducted. Defendants do not lodge any other objections to the hours expended by Plaintiffs in connection with the 2006 Orders and the Court finds those hours reasonable.

settle the suit as it existed before the filing of the Supplemental Complaint and 2008 Preliminary Injunction Motion, however, were factually related to procurement of the 2008 Orders. Specifically, the settlement negotiations involved the lack of uniformity claims upon which the Plaintiffs ultimately received relief, and drove Plaintiffs' decision to file the Supplemental Complaint and 2008 Preliminary Injunction Motion. Moreover, it is impossible for the Court to ferret out to what degree arguments made or evidence presented in the course of settlement negotiations influenced Defendants' willingness to agree to the 2008 Orders. The Court concludes that Plaintiffs' settlement attempts were related to their ultimate success in securing the 2008 Orders and are compensable. *Gautreaux*, 491 F.3d at 661 ("[E]fforts on matters related to the plaintiff's success are compensable.").

Fourth, Defendants object to Plaintiffs' inclusion of hours spent working on the *Skaggs* case in their request for fees relating to the 2008 Order. The Court agrees that Plaintiffs are not entitled to a fee award for their work on the *Skaggs* case after they had secured the 2008 Orders. In the *Skaggs* case, Plaintiffs' position was aligned with Defendants; therefore, there would be no basis for making Defendants liable to Plaintiffs for attorneys fees. Furthermore, Plaintiff is not entitled to recover fees for work performed on matters tangentially related to this lawsuit. *Cook v. City of Norwood*, No. C-1-02-073, 2005 WL 2373877, at *8 (S.D. Ohio Sept. 27, 2005) (reducing fee award by hours expended in another lawsuit even thought the other suit involved the same parties and was tangentially related to the case in which fees were sought). Finally, the position advocated by Plaintiffs in *Skaggs* was rejected both by the Sixth Circuit and the Ohio Supreme Court. Thus, Plaintiffs received no relief with respect to their work on the *Skaggs* and cannot be considered prevailing parties with respect to that work. Therefore, Plaintiffs fee award

will be reduced to the extent it includes Plaintiffs' work on the *Skaggs* case. The reduction is $29,444.50 in attorneys fees by the Court's calculation.[7]

The resulting combined loadstar amount, accounting for all deductions listed above, is $502,381.87.

## B. Reasonable Hourly Rates

"To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). Defendants argue that the hourly rates requested by certain of Plaintiffs' counsel are unreasonably high and suggest that the hourly rates for all attorneys' should be capped at $300 per hour. The Court notes that only three attorneys for Plaintiffs requested hourly rates above the $300 figure as follows: Mr. Hollenbaugh seeks $325 per hour; Mr. Concilla seeks $375 per hour; and Mr. Chandra seeks $395 per hour. Each of those attorneys has substantial expertise in litigating not only civil rights cases, but more specifically election law civil rights actions. Furthermore, Plaintiffs fee request are supported by declarations of the lawyers involved Having carefully reviewed Plaintiffs' Counsel's detailed billing records and in light of the complexity of this case and substantial civil rights litigation experience of Plaintiffs' lead counsel, the Court finds that the billing rates for each of the attorneys (from $280 to $395 per hour) is reasonable and comparable to the rates of other attorneys of similar skill and experience

--------------------------------

[7]That reduction represents: (1) $24,050.00 reduction in fees from Porter, Wright, Morris & Arthur, LLP's fee request for hours spent on the *Skaggs* matter between 11/14/2008 and 12/12/2008; and (2) $5,394.50 reduction in fees from Carlile Patchen & Murshy LLP's fee request for hours spent on the *Skaggs* matter between 11/4/2008 and 12/31/2008.

in Columbus, Ohio. *See Ray v. Franklin Cty. Bd. of Elections*, No. 2:08-CV-1086, 2009 WL 1542737, (S.D. Ohio June 2, 2009) (approving $350 hourly rate for lead counsel in election law case); *Project Vote v. Blackwell*, No. 1:06-CV-1628, 2009 WL 917737, at *14 (N.D. Ohio Mar. 31, 2009) (awarding from $310-$450 per hour to partners in complex election law case).

### C. Reduction to Loadstar Based on Overall Degree of Success

If a plaintiff has achieved only partial success compared to the scope of the litigation as a whole, the fee request may be reduced below the lodestar figure. *Hensley*, 461 U.S. at 435-36. There is "no precise rule or formula" for making this determination. *Id*. at 436. When a court determines that a fee request must be reduced, it may try to identify specific hours to be eliminated or may reduce the overall award to account for the limited degree of success. *Id*. at 435-37. A court may not, however, reduce attorney's fees based on "a simple ratio of successful claims to claims raised." *DiLaura*, 471 F.3d at 672 (quoting *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County, Tenn*., 421 F.3d 417, 423 (6th Cir. 2005)) (internal quotation marks omitted). Where, as here, a party's successful and unsuccessful claims are based on a "common core of facts," such that they cannot easily be segregated the court should focus on the overall degree of success obtained to determine whether the lodestar amount should be reduced. *Hensley*, 461 U.S. at 434-35; *Lee v. Javitch, Block & Rathbone, LLP*, 568 F.Supp. 2d 870, 878 (S.D. Ohio 2008).

Plaintiffs contend that they have achieved such excellent results for their clients that they should be entitled to recover the full loadstar amount. Defendants counter that their partial success in securing the 2006 and 2008 Orders was de minimis and so technical a victory that a reasonable fee award would be no fee at all. The Court disagrees with both positions.

In filing their Original and Supplemental Complaints Plaintiffs sought to: (1) have the Voter ID Law declared unconstitutional; (2) enjoin its enforcement; and (3) obtain a declaratory order establishing uniform procedures for counting provisional ballots. It is clear from the record in this case that Plaintiffs' counsel spent a significant time pursuing claims on which they did not prevail, yet they have, to date, achieved considerable success on their claims. As things stand, Plaintiffs' success in securing the 2006 and 2008 Orders substantially clarified the procedures for counting provisional ballots, helped to clarify the ID requirements, and lessened the burden of those requirements by expanding the definitions of acceptable forms of ID. The Court finds that this was more than a technical victory and that Plaintiffs' counsel are entitled to more than a nominal fee award for their efforts.

If Plaintiffs had achieved all they set out to do, however, the Voter ID Law would have been declared unconstitutional and Plaintiffs would no longer be burdened by its identification requirements. None of the Court's rulings or consent orders to date has declared any portion of the Voter ID Law unconstitutional nor has the Court enjoined the enforcement of the Law. Thus, Plaintiffs have not achieved recovery related to all of their goals in this case. Given that a number of Plaintiffs' claims have been dismissed for lack of subject matter jurisdiction, comparing the relief Plaintiffs obtained with the overall relief sought, the Court concludes that the full loadstar amount would be an excessive fee in this case. Plaintiffs have achieved substantial results to date, but the results are not so "excellent" that they are entitled to full recovery. *See Hensley*, 461 U.S. at 435 (reasoning that a plaintiff could fully recover fees despite not recovering on every claim, where the overall results obtained were "excellent").

Although the Court has been able to segregate certain hours for which attorneys' fees may not be recovered, *supra* Section IV.C.2.A, the claims are generally so intertwined that the

Court cannot ascertain what number of hours was spent on the unsuccessful claims. In addition, the time entries are not so detailed that the Court can identify which claim each time entry pertains to. Consequently, the Court believes that a percentage reduction is proper so that the fee accurately reflects the degree of overall relief obtained by the plaintiff in relation to the relief sought. *See Hensley*, 461 U.S. at 435; *Kentucky Restaurant Concepts, Inc. v. City of Louisville*, 117 F.App'x 415, (6th Cir. 2004) (affirming 35% fee reduction based on partial success); *Allen v. Allied Plant Maintenance Co. of TN., Inc.*, 881 F.2d 291 (6th Cir. 1989) (same). The Court concludes that a 20% reduction is appropriate in this case in light of Plaintiffs' meaningful, but less than total, success. This results in a total fee award of $401,905.50 ($502,381.87. x 20% = $100,476.37; $502,381.87 - $100,476.37 = $401,905.50).

### 3. Costs & Expenses

Plaintiffs move the Court for a total award of costs and expenses in the amount of $39,792.48. Defendants object to Plaintiffs' inclusion of costs relating to hotel accommodation and food for certain Porter, Wright, Morris & Arthur, LLP attorneys from the firm's Dayton office. Defendants argue that it is unreasonable to for Porter Wright to recover those costs when the firm has a Columbus Office. Defendants are unable to offer any authority in support of this position and the Court is unaware of any such rule. The Court finds that Plaintiffs' inclusion of costs related to travel are reasonable and declines to reduce the cost award on that basis.

Consistent with its reduction of attorneys fees for Plaintiffs work on the *Skaggs* matter, however, the Court finds that Plaintiffs costs should be reduced by the amount of costs incurred in those endeavors ($10,323.93). The resulting combined costs and expenses award is $29,468.55.

## IV.  CONCLUSION

For the foregoing reasons Defendants' Motion for Reconsideration (doc. no. xx) and Plaintiffs' Motion for Reconsideration (Doc. Nos. 183, 191) are both **DENIED**.  The Court **GRANTS** Plaintiffs' First and Second Motions for Attorney's Fees and Costs (Doc. Nos.96, 176, 179) and **AWARDS** $401,905.50 in attorneys' fees and $29,468.55 in costs and expenses, for a total of $431,374.05.

**IT IS SO ORDERED.**

          **s/Algenon L. Marbley**
**ALGENON L. MARBLEY**
**United States District Court Judge**

**DATED: July 28, 2009**