IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NORTHEAST COALITION **FOR THE HOMELESS**, *et al.*, :<br>:<br>Plaintiffs,    :<br>:<br>v.          :<br>:<br>**JENNIFER BRUNNER, in her official** **capacity as Secretary of State**, *et al.*, :<br>:<br>:<br>:<br>Defendants.   : | Case No. 2:06-CV-896<br><br>JUDGE ALGENON L. MARBLEY |

**OPINION & ORDER**

**I. INTRODUCTION**

This matter is before the Court on Plaintiffs Northeast Ohio Coalition for the Homeless' ("NEOCH") and Service Employees International Union, Local 1199's ("SEIU") (collectively "Plaintiffs") Third Motion for Attorneys' Fees and Costs ("Third Motion") (Doc. 212). For the reasons set forth below the Plaintiffs' Third Motion for Attorney Fees is **GRANTED** in part and **DENIED** in part.

**II. FACTS**

**A. Background**

On January 31, 2006, the Ohio General Assembly amended Ohio's Election Code to require that voters provide one of several types of identification in order to cast a regular ballot in state and federal elections held in Ohio ("Voter ID Law"). On October 24, 2006, Plaintiffs

filed a thirteen-count complaint under 42 U.S.C. § 1983 against then Ohio Secretary of State J. Kenneth Blackwell challenging the constitutionality of several provisions of the Voter ID Law.

*1.) Fall 2006 Election Season Litigation*

During the Fall of 2006, the Plaintiffs sought a temporary restraining order[1] and a preliminary injunction relating to Defendants' enforcement of certain provisions of the Voter ID Law. That litigation resulted in this Court's entry of a Consent Order negotiated by the parties that applied to the 2006 election. Following the 2006 election, Plaintiffs believed that the Ohio Board of Elections ("Ohio BOE") was improperly counting provisional ballots. Consequently, the parties negotiated an Agreed Enforcement Order, which the Court entered on November 15, 2007.

*2.) First Motion for Attorney's Fees*

The Court granted the Plaintiffs leave to request attorneys' fees and costs expended during the litigation of the 2006 Consent Order and Agreed Enforcement Order (the "2006 Orders"). Accordingly, Plaintiffs filed their First Motion for Attorneys' Fees on January 4, 2008. On February 27, 2008, Defendants responded with a Motion to Dismiss based on the grounds that: (1) the Plaintiffs lacked standing to challenge the constitutionality of the Voter ID Law and; (2) the Plaintiffs were not prevailing parties, and thus not entitled to attorneys' fees with respect to the 2006 Orders. The Court dismissed six of the Plaintiffs thirteen claims for lack of standing, but granted Plaintiffs' request for attorneys' fees and costs in an Order dated September 30,

---

[1] [1] On October 26, 2006 Plaintiffs were granted a temporary restraining order ("TRO") by this Court, the majority of which was stayed by an October 31, 2006 order of the Sixth Circuit.

2008. *Ne. Ohio Coal. for the Homeless v. Brunner*, 2008 WL 4449514, at *5-8 (S.D. Ohio Sept. 30, 2008).

The Court held that the Plaintiffs lacked standing to bring, *inter alia*, Counts One and Two of their Complaint. *Id*. at *6-7. The Court also held that the Plaintiffs were prevailing parties with respect to the 2006 Orders and were, therefore, entitled to attorneys' fees and costs. *Id*. at *9-10. The Court reserved for a subsequent hearing the issue of what constituted reasonable fees and costs given the degree of success the Plaintiffs had obtained. *Id*. at *10. The Court requested supplemental briefing on the reasonableness of fees. Pursuant to the Court's order, the Plaintiffs filed a supplemental brief on January 20, 2009, and the Defendants filed their supplemental brief on February 27, 2009. Both the Plaintiffs and the Defendants moved for reconsideration of the September 30, 2008 Opinion.

*3.) Attorneys' Fees Appeal and Settlement*

In October of 2008, the Plaintiffs filed a motion for a preliminary injunction seeking to require the Ohio BOE to apply uniform procedures for counting provisional ballots. As a result of the parties' negotiations regarding the preliminary injunction motion, the Court entered two orders (the "2008 Orders"). The Court's October 24, 2008 Order set forth procedures that would be used in the counting and processing of provisional ballots. Similarly, on October 27, 2008, the Court ordered: (1) that provisional ballots cast by individuals who did not live in buildings would be counted; and (2) that provisional ballots could not be invalidated due to poll worker error.

On January 20, 2009, the Plaintiffs filed their Second Motion for Attorneys' Fees (Doc. 179). The Plaintiffs claimed that they were prevailing parties with respect to the 2008 Orders and

were entitled to attorneys' fees and costs. The Defendants opposed this motion. On July 28, 2009, this Court granted the Plaintiffs' First and Second Motions for Attorney Fees and Costs. Though granting the Plaintiffs' motions for attorneys' fees, the Court concluded that a 20% reduction in fees was appropriate in light of the Plaintiffs' meaningful, but less than total, success (Doc. No. 203, p. 22). The Court, therefore, reduced the Plaintiffs' total lodestar fee request of $502,381.87 by 20%. This reduction resulted in a fee award of $401,905.50. The Court also awarded the Plaintiffs' costs and expenses in the amount of $29,468.55. Thus, the total award to the Plaintiffs was $431,374.05 (Doc. 203, p. 23).

Two days later, the Plaintiffs filed an unopposed Motion for Reconsideration of this attorneys' fees and costs award (Doc. 205). In that motion, the Plaintiffs requested an increased award to include fees and costs that Subodh Chandra ("Chandra"), attorney for the Plaintiffs, generated for his work during the 2006 election season. The Court granted that motion and revised its previous award to include Chandra's fees and costs, which resulted in a revised fees award of $474,418.50. The Court increased the costs award by $4,527.06 to account for Chandra's incurred costs, resulting in a revised total cost award of $29,995.61. Thus, the revised fees and costs award granted to the Plaintiffs totaled $504,414.11 (Doc. 205).

Subsequently, the Defendants appealed this fees and costs award to the Sixth Circuit (Doc. 207). While the appeal was pending, the parties began to negotiate a settlement to this litigation under the direction of the Sixth Circuit mediator. These negotiations eventually led this Court to sign a Consent Decree (the "Decree") on April 19, 2010 (Doc. 210). The Decree awarded Plaintiffs the total fees and costs amount of $504,414.11 (Doc. 210, p. 6).

On June 3, 2010, the Plaintiffs filed a Third Motion for Attorneys' Fees and Costs,

arguing that additional fees and costs should be granted for work their attorneys performed: (1) briefing and arguing their first two motions for attorneys' fees; (2) during the appeal of this Court's decision to grant those motions; and (3) negotiating the Decree that terminated the litigation (Doc. 212). On August 9, 2010, the Defendant filed a Response opposing the Plaintiffs' Third Motion because the Decree was "final and binding" and arguing that the Plaintiffs' requested fees were unreasonable (Doc. 219). This matter is currently before the Court.

### III. LEGAL STANDARDS

Under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988 (the "Fees Act"), a court can award reasonable attorneys' fees to the prevailing party in a civil rights action brought under 42 U.S.C. § 1983. *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989); *see also DiLaura v. Twp. of Ann Arbor*, 471 F.3d 666, 670 (6th Cir. 2006. After determining a party is entitled to an attorneys' fees award, the Court must then determine whether the hours claimed by the petitioner are reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). When making a reasonableness determination, the Court should first calculate the "lodestar" amount, a multiple of the number of hours reasonably expended in the litigation and the reasonable hourly rate. *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 551 (6th Cir. 2008) (citing *Hensley*, 461 U.S. at 433). The party seeking fees bears the burden of proving that the number of hours expended was reasonable. *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th. Cir. 1999). Once a party has established that the number of hours and the rate claimed are reasonable, the lodestar amount is presumed to be the reasonable fee to which counsel is entitled. *Id*. at 552 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546

(1986)). The petitioning attorney has an obligation to weed out hours that are excessive, redundant, or otherwise unnecessary from his or her fee request. *Hensley*, 461 U.S. at 434. Fees incurred in "preparation of an original fee petition" are supplemental "fees for fees." Such supplemental hours should not exceed three percent of the award (the "Three Percent Rule") in the main case when the fees issue is decided without a trial or five percent of the award in the main case when there is a trial. *Coulter v. Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986); *Bank One v. Echo Acceptance Corp,* 2009 U.S. Dist. LEXIS 35633, at *5 (S.D. Ohio Apr. 10, 2009).

### IV. LAW & ANALYSIS

#### 1. Entitlement to a Fee Award

The Plaintiffs argue they are prevailing parties under the Fees Act and are entitled to fees for work performed from January 2009 until April 2010 with respect to: (1) the briefing and argument of their prior motions for fees and costs; (2) the settlement of the State of Ohio's appeal of this Court's award of fees; and (3) and the negotiation of the Decree. The Defendant contests that because the Decree was meant to be final, the Plaintiffs waived their right to collect further attorneys' fees after signing the Decree.

A party waives its right to collect further fees if the parties intended a settlement to be a final disposition of all claims. *Jennings v. Metro. Gov't. of Nashville*, 715 F.2d 1111, 1114 (6th Cir. 1983). Intent is normally an issue of fact unless the Court determines only one possible inference can be drawn from the record. *Id*. at 1114. A settlement in full does not require that parties reach a separate agreement on each aspect of the claim; thus, silence in an agreement regarding attorneys' fees is not controlling in making an award entitlement determination. *Id.*

In this case, both parties agree that the Decree does not expressly mention an award of attorneys' fees covering the time period Plaintiffs' attorneys worked between January 21, 2009 and April 19, 2010 to negotiate and finalize the Decree (Doc. 212, 219). The Decree, therefore, is silent as to the issue of attorneys fees requested in the Plaintiffs' Third Motion. Pursuant to *Jennings*, this silence is not controlling; rather, the question becomes whether the parties intended the Decree to be a final disposition of all claims, thus waiving the Plaintiffs' right to collect further fees.

The Defendants point to specific language in the Decree to prove the agreement's finality under the *Jennings* standard. First, the Defendants cite the Decree's preamble, which states that the parties entered into the Decree negotiations "desiring that this action be settled ...without a burden of protracted litigation" (Doc. 219, p. 2). The Defendants also argue language stating that the Decree was "final and binding" as to "the issues raised in the Plaintiffs' Complaint and Supplemental Complaint," which included attorneys' fees, is evidence of the Decree's finality. Further, the Defendants cite the Decree's introduction, which described the document as being "in resolution of this action," as evidence the Decree was meant to be a final settlement of all claims, thereby waiving the Plaintiffs' right to receive further fees (*Id.*).

The Defendant likens the foregoing portions of the Decree to language the Sixth Circuit has found to be "comprehensive" enough for the court to infer that the parties intended the settlement to be final. *See McCuiston v. Hoffa*, 202 Fed.Appx. 858, at 865 (6th Cir. 2006). The consent judgment in *McCuiston* stated, "[t]his is a final order of the court, disposing of all remaining claims in this action." The issue of attorneys' fees was neither discussed during the settlement proceedings nor included in the final judgment. *Id.* at 863. While recognizing this silence, the Sixth Circuit held that the above-cited language led to the single inference that the

parties intended for the agreement to be final, precluding an award of further attorneys' fees. *Id.* at 865.

The Court finds language in the Decree at issue here, however, does not lead to a similar inference of finality. The Decree in this case, unlike the consent judgment in *McCuiston* that resolved "all remaining claims in this action," expressly restricts its scope to the issues raised in the Plaintiffs' Complaint and Supplemental Complaint. *McCuiston*, 202 Fed.Appx. at 861; Doc. 210, p. 2. The Decree's language is not as expansive as that in the *McCuiston* consent judgment, an indication that the parties to the present action did not intend the Decree to be final. Additionally, in the Decree herein the parties agreed to allow for modification and extension of the agreement for good cause (Doc. 210, p.6). By contrast, the consent judgment in *McCuiston* did not allow the parties to seek to modify or to extend the terms of the agreement and contained no qualifiers as to the scope of the consent judgment's terms. Thus, *McCuiston* is distinguishable from the case sub judice and the record here leads to the single inference that the parties did *not* intend the Decree to be a final settlement of all claims. The Plaintiffs, therefore, did not waive their right to further attorneys' fees and are entitled to collect an additional fee award.

### *2. The Fee Award*

The Plaintiffs seek an award to cover fees related to: (1) the briefing and argument of Plaintiffs' prior motions for fees and costs; (2) opposition to and settlement of the State of Ohio's appeal of this Court's award of fees; and (3) the negotiation of the Consent Decree. The Defendants challenge the Plaintiffs' requested fees award on two grounds. First, they argue that the fees requested are unreasonable. In the alternative, Defendants claim that even if the

Plaintiffs' fee request is reasonable, this Court should cap *all* three categories of fees the Plaintiffs have requested pursuant to the Three Percent Rule (Doc. 219, p. 13). Thus, the Court has two issues to decide regarding the Plaintiffs' fee award: (1) whether the requested fee award is reasonable; and (2) which of the requested fees are "fees for fees" and thus subject to the Three Percent Rule cap.

### a. Hours Reasonably Expended

A court determines reasonableness by performing a lodestar analysis. A lodestar amount refers to the multiple of the number of hours reasonably expended in the litigation and the reasonable hourly rate. *Imwalle v. Reliance Med. Prods.*, 515 F.3d at 551. If reductions to the requested number of hours are appropriate, a court has the discretion to utilize a simple across-the-board reduction by a certain percentage as an alternative to line-by-line reductions. *Project Vote v. Blackwell,* 2009 U.S. Dist. LEXIS 34571, at *6 (N.D. Ohio Mar. 31, 2009) (citing *Alliance Int'l, Inc. v. United States Customs Serv.*, 155 Fed. Appx. 226, 228 (6th Cir. 2005).

Three of Plaintiffs' attorneys are claiming fees in the present action: (1) Chandra of The Chandra Law Firm, LLC ("Chandra Law Firm"); (2) Caroline Gentry ("Gentry") of Porter, Wright, Morris, & Arthur LLP ("Porter Wright"); and (3) H. Ritchey Hollenbaugh ("Hollenbaugh") of Carlile Patchen & Murphy LLP ("Carlile Patchen"). The Chandra Law Firm submits they incurred $29,750 worth of fees in briefing the original fees request, defending against the State's appeal of this Court's fee award, and in settling the Consent Decree. Porter Wright submits they incurred $27,732.50 in fees for these three phases. Carlile Patchen claims their fees totaled $28,441.05. The Defendants challenge the reasonableness of these fees on several grounds and ask for a reduction in the Plaintiffs' requested fees. First, they claim the

Plaintiffs "overlawyered" the issues argued in the Third Motion, resulting in "excessive, redundant, or otherwise unnecessary" fees that reflected no "billing judgment" (Doc. 219, p. 15). Specifically, the Defendants question the need for three different law firms to work on this matter (*Id*. at p.16). Use of one or more lawyers, however, is a common practice that can often result in a more efficient distribution of work. *Gautreax v. Chicago Hous. Auth.*, 491 F.3d 649, 661 (7th Cir. 2007) (citing *Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir. 1988)). Though there is no "hard-and-fast" rule as to how many lawyers can be at a meeting or spend time discussing a project at one time, attorneys must make a good faith effort to exclude hours that are "excessive, redundant, or otherwise unnecessary." *Id*. After reviewing the evidence the Plaintiffs have submitted in support of their Third Motion, this Court finds that the Plaintiffs did make such an effort to apply "billing judgment" principles to their request for fees (Docs. 213-15). Though more than one attorney might have worked on projects related to the Third Motion and the settlement proceedings, the fees all three firms have listed reflect work that is reasonably related to their pursuit of fees. Hence, the Defendants' argument that the Plaintiffs' attorneys' work was redundant because they were doing the same work fails and this objection does not warrant a reduction to the requested fee award.

      Similarly, the Defendants argue that the motions for attorneys' fees, the appeals process, and the settlement negotiations did not involve issues that were complex enough to warrant the work of three separate law firms and thus the court should find the fees requested to be redundant. Though courts are "alert to needless duplication of efforts by multiple law firms," a court will review the evidence provided to determine whether such duplication actually took place. *Thirty Eight St .v. Chatur Corp.*, 2010 U.S. Dist. LEXIS 75247 (N.D. Ohio July 27, 2010).

The record in the present case shows no such duplication. Though attorneys from more than one firm collaborated on the same project, the evidence the parties have presented demonstrates an attempt at cost-efficient allocation of work among the three attorneys. Courts have previously found such efficient allocation to be reasonable. *Gautreax v. Chicago Hous. Auth.*, 491 F.3d 649, 661 (7th Cir. 2007) (citing *Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir. 1988)). Additionally, though the Defendants argue that this is a "relatively straightforward §1988 attorneys' fee issues," the Plaintiffs' request for attorneys' fees has had three distinct phases: (1) the briefing and argument of Plaintiffs' prior motions for fees and costs; (2) opposition to and settlement of the State of Ohio's appeal of this Court's award of fees; and (3) the negotiation of the Consent Decree. Preparing for these three distinct proceedings makes this attorneys' fee request less straightforward than the Defendants suggest and justifies the work of multiple law firms. Accordingly, the Court finds these objections do not warrant a reduction to the fee award.

Additionally, the Defendants challenge the Plaintiffs' inclusion in their requested fee award of "non-compensable tasks" that did not "contribute in any meaningful way to the litigation" (Doc. 219, p.17). Specifically, the Defendants challenge the Plaintiffs' request for fees related to their efforts to "track down" and "locate" their client and "working with the investigator" (*Id.*). Though non-compensable tasks are generally not reasonable fees, fees the Plaintiffs incurred to locate their clients do not fall within the "non-compensable" category. Settling the Decree required determining whether the homeless clients who were plaintiffs authorized a settlement that would end the appellate process. Thus, the fact that two of the attorneys requested fees for their investigation efforts to locate these plaintiffs is not

unreasonable, and the Defendant's argument warrants no reduction to the Plaintiffs' requested fee award.

Next, the Defendant argues the Court should reduce the Plaintiffs' award because they failed to obtain "significant relief." This argument, however, is misplaced. This Court has already found that the Plaintiffs were entitled to an attorneys' fees award based on their level of success in the original case (Doc. 203). Thus, the degree of the Plaintiffs' success with regard to the Voter ID Law is not at issue; rather, at issue is the reasonableness of the award requested for fees incurred in preparation of its earlier motion for fees incurred during their work obtaining relief for their clients and in defending that original fee award. The Plaintiffs' level of success in the original litigation, therefore, is not an appropriate ground on which to reduce the current fees request, and the Court will make no reductions based on this objection. Because none of the Defendants' reasonableness objections was persuasive, the Court finds the three law firms' total requested hours to be reasonable.

                              **b. Reasonable Hourly Rates**

Next in the lodestar analysis, the Court must determine if each attorney's provided rate is reasonable. "To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). In determining the reasonable rate, the Court has the discretionary authority to consider a party's submissions, awards in analogous cases, and its own knowledge and experience from handling similar requests for fees. *Project Vote*, 2009 U.S. Dist. LEXIS 34571,

at *5 (citing *Johnson v. Connecticut Gen. Life Ins. Co.* 2008 LEXIS 24026, at *14 (N.D. Ohio Mar. 13, 2008)). Defendants challenge the rates of two attorneys: (1) Chandra's rate of $400/hour; and (2) Hollenbaugh's rate of $325/hour (Doc. 219, p. 19). They argue these fees should be reduced because the legal matters involved in the Third Motion were not complicated. Previously, however, this Court decided that both Chandra and Hollenbaugh's hourly rates were reasonable given their substantial experience in litigating election law cases (Doc. 203, p.19). In the present motion, Hollenbaugh again seeks the rate of $325/hour. The Court earlier found this rate to be reasonable and does not choose to revise that finding. Chandra seeks an increased rate of $400/hour from the $395/hour rate sought based on his work in 2006. The Court finds that an increase of $5/hour is reasonable given this litigation has spanned over a four-year period. Thus, Chandra's requested rate of $400/hour is also reasonable. The Defendants do not object to Gentry's requested rate, and this Court finds her requested rates of $280/hour and $290/hour to be reasonable. The Court, therefore, finds all three requested rates to be reasonable.

### c. Application of the Three Percent Rule

In a supplemental petition such as this, which seeks fees for the preparation of an original petition, a practical rule of thumb has developed that the supplemental award should be limited to three percent of the award for the main case when it is decided on the papers without a trial, and five percent of the award for the main case when trial is necessary.[2] In *Coulter v. Tennessee,* the Court explained:

> The cases from this and other circuits uniformly hold that a lawyer should receive a fee for preparing and successfully litigating the attorney fee case after the original case is over . . . In the absence of unusual circumstances, the hours allowed for preparing and litigating the attorney fee case should not

---

[2] Language taken from this Court's decision in: *Bank One, N.A. v. Echo Acceptance Corp.*, *et al.*, 595 F. Supp 2d 798 (S.D. Ohio 2009)

-13-

>exceed 3% of the hours in the main case when the issue is submitted on the papers without a trial and should not exceed 5% of the hours in the main case when a trial is necessary. Such guidelines and limitations are necessary to insure that the compensation from the attorney fee case will not be out of proportion to the main case and encourage protracted litigation.

*Coulter v. Tennesee*, 805 F.2d 146, 151 (6th Cir. 1986) *accord Gonter v. Hunt Valve Company, Inc*, 510 F.3d 610, 621 (6th Cir. 2007) ("[b]ecause *Coulter* controls this situation, we apply the three-percent rule to the district court's lodestar award"). Because this case has involved no trial, any supplemental fees reduction will be capped at three percent of the original award.

Both parties agree that time the Plaintiffs spent on "the briefing and argument of Plaintiffs' prior motions for fees and costs" was a supplemental fees request and is subject to the Three Percent Rule. The parties disagree, however, about whether hours spent in "opposition to and settlement of the State of Ohio's appeal of this Court's award of fees" and for "the negotiation of the Consent Decree" should also qualify as supplemental "fees for fees" and be subject to the Three Percent Rule. The Plaintiffs argue the hours spent on the appeal and in negotiating the Decree were separate from the time spent preparing and litigating the attorneys' fees case and, therefore, fees incurred during the latter two phases of these proceedings should not be subject to the Three Percent Rule. This Court disagrees and finds that the hours spent at all three stages of this attorneys' fees case constituted preparation for and litigation of the attorneys' fees case and are subject to Three Percent Rule. Even though the appeals and Decree negotiation were unique proceedings after the Plaintiffs' filing of the original fees motion, all steps taken in both of those stages were done in pursuit of obtaining fees in the absence of

"unusual circumstances" that would justify a departure from the Three Percent Rule. Thus, this Court will apply the three percent cap to all the Plaintiffs' requested fees.

In reaching this finding, the Court rejects the Plaintiffs' argument that their hours should be exempt from the Three Percent Rule because the Sixth Circuit in *Coulter* intended the cap to prevent prevailing parties from prolonging litigation and here the Defendants, not the Plaintiffs, initiated the appeals process. This Court finds this argument to be a misinterpretation of the Sixth Circuit's intent. In *Coulter,* the Sixth Circuit reasoned that the Three Percent Rule was "necessary to insure that the compensation from the attorney fee case will not be out of proportion to the main case." *Id.* Nothing in this statement suggests that the *Coulter* court's proportionality concerns turned on which  party's actions served to extend the litigation; rather, the Sixth Circuit was concerned with the *overall* fees outcome in supplemental fees cases. Thus, this Court will cap all the Plaintiffs' requested fees, which the Court has determined to be supplemental "fees for fees,"  at three percent of the awards in the main case pursuant to *Coulter*.

The awards in the main case were as follows: (1) $321,942.15.51 to Porter Wright; (2) $99,722.58 to Carlile Patchen;  and (3) $82,749.38 to the Chandra Law Firm. Thus, the cap for each firm's receipt of supplemental fees awards based on the Three Percent Rule will be: (1) $9,658.3 to Porter Wright; (2) $2,991.70 to Carlile Patchen; and (3) $2,482.5 to the Chandra Law Firm.  Because each firm's requested fees award exceeds the three percent cap, their respective fees award will be equal to the calculated cap figures listed above.

### d. Costs and Expenses

The Plaintiffs moves the Court for an award of costs and expenses incurred: in (1) the briefing and argument of Plaintiffs' prior motions for fees and costs; (2) opposition to and settlement of the State of Ohio's appeal of this Court's award of fees; and (3) the negotiation of the Consent Decree. Specifically, the Chandra Law Firm requests $2,702.39 in costs, and Porter Wright requests $1,108.24 in costs. The Defendant argues Chandra's requested costs are improper for two reasons: (1) because his travel costs are duplicative; and (2) because Chandra submitted costs related to his client's travel expenses. This Court does not find either of these arguments persuasive. First, the Plaintiffs properly distinguish between the reimbursement for Chandra's time spent traveling to various proceedings related to this matter that can be billed at his hourly rate and the actual incidental costs inherent with travel such as gas and mileage. Because these two costs are distinct, this Court finds no duplication in awarding Chandra's costs that were incidental to travel and including his compensable time as part of the prior lodestar analysis of reasonable hours for the fee award. Similarly, the Court finds it reasonable to award the Chandra Law Firm's costs incurred to insure their client was present for proceedings. Thus, this Court awards the Chandra Law Firm its entire requested award of $2,702.39. The Defendants do not object to Porter Wright's requested cost award of $1,108.24. The Court, therefore, will also award Porter Wright their entire requested cost amount.

### V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part the Plaintiffs' Third Motion for Attorneys Fees (Doc. 212). Pursuant to this finding, the Court **AWARDS**

$15,132.5 in total supplemental attorneys' fees. Of this total fees award, Porter Wright shall receive $9,658.30, Carlile Patchen shall receive $2,991.70, and the Chandra Law Firm shall receive $2,482.50. Additionally, the Court **AWARDS** total costs and expenses in the amount of $3,810.63. Of this total costs and expenses award, the Chandra Law Firm shall receive $2,702.39 and Porter Wright shall receive $1,108.24.

    **IT IS SO ORDERED.**

                                                                        s/Algenon L. Marbley
                                                                       **ALGENON L. MARBLEY**
                                                                       **UNITED STATES DISTRICT COURT**

**Dated: November 30, 2010**