## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| THE NORTHEAST OHIO COALITION | : | |
| FOR THE HOMELESS, et al., | : | Case No. 2:06-cv-896 |
| | : | |
| Plaintiffs, | : | |
| | : | Judge Marbley |
| v. | : | |
| | : | Magistrate Judge Kemp |
| JON HUSTED, in his official capacity as | : | |
| Secretary of State of Ohio, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| THE STATE OF OHIO, | : | |
| | : | |
| Intervenor-Defendant. | : | |

## BRIEF OF INTERVENOR-DEFENDANT STATE OF OHIO
## ON THE VALIDITY OF THE CONSENT DECREE

MICHAEL DEWINE
Attorney General of Ohio

Peggy W. Corn* (0042197)
Assistant Attorney General
  *Trial Counsel
30 E. Broad Street, 16th Floor
Columbus, OH 43215
Phone: (614) 466-2864
Fax: (614) 644-7634
peggy.corn@ohioattorneygeneral.gov

David M. Lieberman (0086005)
Deputy Solicitor
30 E. Broad Street, 17th Floor
Columbus, OH 43215
Phone: (614) 466-8980
Fax: (614) 466-5087
david.lieberman@ohioattorneygeneral.gov

Counsel for Intervenor-Defendant State of Ohio

## INTRODUCTION

When Ohio amended its election code in 2006, the plaintiffs—a non-profit homeless coalition, a labor union, and the Ohio Democratic Party—challenged the newly enacted voter-identification and provisional-ballot rules.  Several years of litigation later, the plaintiffs, the Secretary of State, and the State of Ohio entered a consent decree.  The Secretary agreed to count certain defective ballots—namely, provisional ballots cast in the wrong precinct and provisional ballots with incomplete application information—if the defects were attributable to poll worker error.

Here is the problem:  The Ohio Supreme Court concluded shortly thereafter that Ohio "statutes do not authorize an exception based on poll-worker error."  *State ex rel. Painter v. Brunner*, 941 N.E.2d 782, 794 (Ohio 2011).  "[O]nly ballots cast in the correct precinct may be counted."  *Id.* (citation omitted).  Simply put, the consent decree and the state law are in direct conflict, and the Secretary of State is caught in the middle.

Had this Court declared Ohio's voter-identification and provisional-ballot laws unconstitutional, the Supremacy Clause would indisputably require the Secretary to ignore Ohio law and comply with the court-ordered remedy.  Once a federal court has "found that a particular remedy is required" "to vindicate constitutional guarantees . . . the State cannot hinder the process by preventing . . . that remedy."  *Missouri v. Jenkins*, 495 U.S. 33, 57-58 (1990).

But this Court never found a constitutional violation.  Unless and until the Court issues such a finding, the Secretary "can only agree to that which [he] ha[s] the power to do outside of litigation."  *Perkins v. City of Chicago*, 47 F.3d 212, 216 (7th Cir. 1995); *accord League of Residential Neighborhood Advocates v. City of Los Angeles*, 498 F.3d 1052, 1053 (9th Cir. 2007) ("A settlement agreement cannot override state law absent a specific determination that federal

law has been or will be violated.").  Because the 2010 consent decree directs the Secretary to "disregard[] applicable state law" without any judicial finding that such action "[i]s necessary to rectify a violation of federal law," it is "invalid as a matter of law."  *Cleveland County Ass'n for Gov't by the People v. Cleveland County Bd. of Comm'rs*, 142 F.3d 468, 478 (D.C. Cir. 1998).

The Court should vacate the consent decree and return the parties to litigation.  Plaintiffs can then file a motion for preliminary injunction with this Court, requesting whatever relief they deem appropriate for the upcoming election.

## STATEMENT OF THE CASE AND FACTS

Plaintiffs initiated this litigation in 2006 against Secretary of State Blackwell, challenging the constitutionality of Ohio's voter-identification and provisional-ballot statutes.  The State of Ohio intervened to defend the constitutionality of those statutes.

After extensive discovery and pretrial litigation, the plaintiffs, Secretary of State Brunner (Blackwell's successor), and the State of Ohio entered a consent decree regulating the casting and counting of provisional ballots.  *See* Consent Decree (Apr. 19, 2010) (Doc. 210).  The decree requires the Secretary to instruct the county boards of election to count (1) provisional ballots cast in the wrong precinct, but in the correct polling place, for reasons attributable to poll worker error; and (2) provisional ballots where the voter did not complete or sign the provisional ballot application for reasons attributable to poll worker error.  *Id*. at 3-5.  This Court approved the decree, which "in no way constitute[s] an adjudication or finding on the merits . . . nor . . . an admission by the Defendants of any wrongdoing or violation of any applicable federal or state law or regulation."  *Id*. at 2.

Fast-forward two years.  Two members of the General Assembly—Senate President Niehaus and Representative Blessing—filed a mandamus complaint against Secretary of State

Husted (Brunner's successor) in the Ohio Supreme Court.  Relators argued that the Secretary's directives—which he issued under the 2010 consent decree—violate Ohio law.  They sought a writ of mandamus compelling the Secretary to rescind the directives.  (Doc. 246-1).

Upon motion of the plaintiffs (Doc. 246), this Court enjoined the state-court proceedings.  The Court concluded that the Relators were parties to, and therefore bound by, the consent decree.  Alternatively, this Court exercised its authority under the All Writs Act, 28 U.S.C. § 1651(a), to halt the proceedings.  *See* Opinion & Order (May 11, 2012) (Doc. 261).

After a status conference, the Court ordered the parties to address the validity of the consent decree.  It also scheduled oral argument on that question for June 27, 2012.

## ARGUMENT

State officials have the power to settle litigation, with one caveat:  "A federal consent decree or settlement agreement cannot be a means for state officials to evade state law."  *League of Residential Neighborhood Advocates*, 498 F.3d at 1055.  "[T]hey cannot agree to 'disregard valid state laws' and cannot consent to do something together that they lack the power to do individually."  *Perkins*, 47 F.3d at 216 (internal citation omitted).

The 2010 consent decree in this case does just that:  The Secretary must ensure that certain provisional ballots, which Ohio law would otherwise reject as invalid, are accepted and counted.   Because that command disregards state law, and because no independent federal violation has been found in this case, the consent decree is invalid and unenforceable.  The Court should vacate it, revive this litigation, and adjudicate plaintiffs' constitutional claims.

**A.    Ohio elections law requires the Secretary of State and election officials to reject provisional ballots cast in the wrong precinct or with an incomplete application.**

On Election Day, an Ohio voter who is unable to supply identification ("a current and valid photo identification," "military identification," "a copy of a current utility bill, a "bank

statement," a "government check," a "paycheck," or "other government document," *see* Ohio Rev. Code § 3505.18(A)) may cast a provisional ballot.  But the voter must cast his provisional ballot in the proper precinct.  A "provisional ballot cast by th[e] individual shall not be opened or counted" if the "individual is not properly registered in that jurisdiction."[1]  Ohio Rev. Code § 3505.181(C)(2)(a); *accord* Ohio Rev. Code § 3505.183(B)(4)(a)(ii) ("[T]he provisional ballot envelope shall not be opened, and the ballot shall not be counted" if "[t]he individual named on the affirmation is not eligible to cast a ballot in the precinct or for the election in which the individual cast the provisional ballot."); *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565, 568 (6th Cir. 2004) (per curiam) (Ohio "use[s] a precinct voting system"—"a voter's ballot will only be counted as a valid ballot if it is cast in the correct precinct.").

In addition, "[e]ach individual who casts a provisional ballot . . . shall execute a written affirmation" that the individual is "a registered voter in the jurisdiction" and is "eligible to vote." Ohio Rev. Code § 3505.182.  Such "information shall be included in the written affirmation in order for the provisional ballot to be eligible to be counted."  Ohio Rev. Code § 3505.183(B)(1); *accord* Ohio Rev. Code § 3505.183(B)(4)(a)(iii) ("[T]he provisional ballot envelope shall not be opened, and the ballot shall not be counted" if "[t]he individual did not provide all of the information required . . . in the affirmation that the individual executed at the time the individual cast the provisional ballot.").

The Ohio Supreme Court in *State ex rel. Painter v. Brunner*, 941 N.E.2d 782 (Ohio 2011), determined that these procedures "are mandatory and must be strictly complied with."  *Id.* at 794 (citation omitted).  The court then held that "[t]hese statutes do not authorize an exception

---

[1] The law defines "jurisdiction" as "the precinct in which a person is a legally qualified elector." Ohio Rev. Code § 3505.181(E)(1).

based on poll-worker error to the requirement that ballots be cast in the proper precinct in order to be counted."  *Id*.

*Painter*'s command is clear:  The Secretary of State and local elections officials must reject provisional ballots that do not comply with the statutory requirements.  Poll worker error "is no exception" to those rules.  *Id*.

## B.    The Secretary and the State cannot agree to disregard Ohio elections law.

The 2010 consent decree requires the Secretary to do the opposite:  He must ensure that faulty provisional ballots, if attributable to poll worker error, are accepted and tallied.

At bottom, this decree is grounded in *consent*.  It "is a contract founded on the agreement of the parties."  *Vogel v. City of Cincinnati*, 959 F.2d 594, 598 (6th Cir. 1992).

Therein lies the problem.  State officials "could not agree to terms which would exceed their authority and supplant state law."  *Keith v. Volpe*, 118 F.3d 1386, 1393 (9th Cir. 1997).  "A consent decree is not a method by which state agencies may liberate themselves from the statutes enacted by the legislature that created them."  *Kasper v. Board of Election Comm'rs*, 814 F.2d 332, 341-42 (7th Cir. 1987); *see also St. Charles Tower, Inc. v. Kurtz*, 643 F.3d 264, 270 (8th Cir. 2011) ("State actors cannot enter into an agreement allowing them to act outside their legal authority, even if that agreement is styled as a 'consent judgment' and approved by a court."); *Cleveland County*, 142 F.3d at 478 ("The Cleveland County Board of Commissioners is, like any other party, free to choose settlement of a suit over the threat of prolonged litigation.  But like any other party, it may not do so in a manner that disregards applicable state law.").

The Ohio Supreme Court held in *Painter* that state law requires the Secretary of State to reject invalid provisional ballots.  That ruling trumps the Secretary and the State's earlier

acquiescence to contrary procedures in the 2010 consent decree.[2]  *See Kasper*, 814 F.2d at 342 ("An alteration of the [state's] statutory scheme may not be based on consent alone.").  Going forward, any elections official who ignores this ruling does so at his or her peril.  The Ohio Supreme Court is ready and willing to use its mandamus authority to enforce its decision.  *See Painter*, 941 N.E.2d at 798 ("[W]e grant relators a writ of mandamus to compel the secretary of state to rescind [her] Directives and to compel the board of elections to rescind its decisions.").

For these reasons, the Secretary must follow state law as articulated by the Ohio Supreme Court.  His predecessor's consent to use different procedures does not excuse him from that duty.

## C.  The Court may direct the Secretary of State to disobey Ohio law only if it finds that such action is necessary to rectify a federal law violation.

There still remains the question whether this Court could—under the Supremacy Clause—order the Secretary to disobey state law as articulated in *Painter*.

If a federal court finds "a violation of federal law," the answer is yes—"the state law must give way."  *Cleveland County*, 142 F.3d at 477.  "[U]pon properly supported findings that a remedy is *necessary* to rectify a *violation of federal law*, the district court can approve a consent decree which overrides state law provisions."  *Perkins*, 47 F.3d at 216 (emphasis in original).

But without "a specific determination that federal law has been or will be violated," the answer is no—a consent decree that "override[s] state law . . . is invalid and enforceable."  *League of Residential Neighborhood Advocates*, 498 F.3d at 1053; *see also Cleveland County*, 142 F.3d at 477 ("[I]f no such violation exists, principles of federalism dictate that state law

---

[2] To be clear, the Attorney General believes that his predecessors reached a consent decree that, in their judgment, was acceptable under Ohio elections law.  But neither the Secretary of State nor the State of Ohio (represented by the Attorney General) has final say on state-law disputes. The Ohio Supreme Court does.

governs."); *Perkins*, 47 F.3d at 216 ("Without such findings . . . parties can only agree to that which they have the power to do outside of litigation.").

In that vein, this Court would have authority—on motion by the plaintiffs—to declare Ohio's voter-identification and provisional-ballot procedures unconstitutional.  If the Court issued such a decision, it could enjoin the Secretary from enforcing Ohio law and the *Painter* decision.  The Court could also enter an injunction, directing the Secretary to follow whatever procedures the Court deemed necessary to remedy the constitutional violation.

But no such determination exists in this case.  The Consent Decree "in no way constitute[s] an adjudication or finding on the merits" of plaintiffs' constitutional claims.  Consent Decree at 2 (Doc. 150).  Absent such a determination, the Secretary, the State of Ohio, and local elections officials must follow Ohio law and the *Painter* decision.  Because the 2010 consent decree disregards that principle, it is invalid and unenforceable.

The D.C. Circuit faced the same predicament in *Cleveland County*.  The NAACP challenged a North Carolina county's election system under the Voting Rights Act.  142 F.3d at 470.  The parties reached—and the district court entered—a consent decree that expanded the county's Board of Commissioners and adopted new voting procedures.  *Id*. at 470-71.  A second group of voters filed suit, challenging the consent decree's validity.  The district court dismissed their arguments, concluding that "it was unnecessary to find a violation of section 2 of the Voting Rights Act before [the court] entered the decree."  *Id*. at 472.

The D.C. Circuit reversed.  The court observed that "North Carolina law reserves to the state, or to the voters of the county, authority over the structure and method of election of county boards."  *Id*. at 475.  "[T]hese provisions may be superseded in either of two ways:  (1) if such supersession is necessary to remedy a violation of federal law or (2) by a local act of the General

Assembly." *Id*. at 477.  Had the district court found a "violation of the Voting Rights Act, the D.C. Circuit noted, "the state statutory scheme . . . would not stand in the way of the [consent decree's] implementation." *Id*.

But the district court did not enter such a finding in *Cleveland County*.  Rather, "the consent decree in th[e] case specifically provide[d] that no violation of the Voting Rights Act is to be inferred." *Id*.  "By disclaiming any such violation," the D.C. Circuit held, "the Board . . . confined its settling authority to the boundaries of North Carolina law." *Id*. at 478.  Because the consent decree's reforms "disregard[ed] applicable state law" on county governance structure, it was "invalid as a matter of law." *Id*.  The D.C. Circuit directed the district court "to vacate the consent decree in its entirety." [3] *Id*. at 479.

The reasoning in *Cleveland County* applies with equal force here.  Ohio elections law mandates certain procedures for the counting of provisional ballots, and the 2010 consent decree specifies different procedures.  Because this Court never declared the Ohio law unconstitutional, "principles of federalism dictate that state law governs." 142 F.3d at 477.  The Secretary and the State of Ohio's prior consent cannot supersede it.

---

[3] The Seventh Circuit reached the same conclusion in *Perkins*.  The parties settled a Voting Rights Act claim, but defendants did not admit a violation. 47 F.3d at 215.  The parties instead entered a consent decree that altered the city council's voting maps and the City's form of government.  *Id*.  On appeal, the Seventh Circuit vacated the decree.  Illinois law, the court observed, required voter approval for changes to a municipal government's form.  *Id*. at 217.  Because the consent decree and the district court's accompanying orders "d[id] not constitute sufficient findings of a violation of federal law," the Seventh Circuit held that they "c[ould] not adequately form the basis for the modifications of the Illinois statutory forms of government." *Id*.  "[A]bsent particularized findings, the decree could not direct changes normally requiring voter approval." *Id*.

**D.**     **Because no such finding occurred in this case, the Court should vacate the consent decree and restart the litigation.**

Vacating the consent decree would immediately restart the litigation.  The parties would complete any remaining discovery, file dispositive motions and, if necessary, proceed to trial. Plaintiffs would also be free to challenge Ohio's elections code in a preliminary injunction motion.  If this Court were to "find[] that the statutory provisions would violate federal law," it could enjoin enforcement of the Ohio law for the November 2012 election and direct the Secretary to take whatever steps "necessary to ensure compliance with federal law."  *Perkins*, 47 F.3d at 217.

Before examining the consent decree's legal validity, plaintiffs urge an evidentiary hearing under *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992).  This invocation is misplaced.  In *Rufo*, the Supreme Court acknowledged that a party may obtain a modification of a consent decree under Fed. R. Civ. P. 60(b)(5) when "a significant change in circumstances warrants revision of the decree."  *Id*. at 383.  And a Rule 60(b)(5) request for modification generally requires an evidentiary hearing:  "Whether prospective enforcement is no longer equitable . . . is a fact-intensive inquiry within the broad equitable powers of a district court." *Brown v. Tenn. Dep't of Fin. & Admin.*, 561 F.3d 542, 545 (6th Cir. 2009).

But *Rufo* implicates the circumstance where one party to the consent decree asserts that "it is no longer *equitable* that the judgment . . . have prospective application."  502 U.S. at 383 (emphasis added).  The dispute in this case turns on whether the consent decree is invalid *as a matter of law*.  Because resolution does not turn on matters of equity and discretion, *Rufo* does not require an evidentiary hearing.

The case law bears this out.  The Seventh Circuit in *Perkins*, the Eighth Circuit in *St. Charles*, the Ninth Circuit in *League of Residential Neighborhood Advocates*, and the D.C.

Circuit in *Cleveland County* each concluded that a federal consent decree impermissibly overrode state law. No mention of *Rufo*. No remand for an evidentiary hearing. No discussion of the equities. Rather, each court treated the dispute as a pure question of law, vacated the consent decree, and ordered the parties back to litigation.

The State urges the same path here.

## CONCLUSION

Ohio law, as articulated in *Painter*, prevails unless and until this Court finds a constitutional defect. Because the 2010 consent decree made no such finding, it is invalid. This Court should vacate the decree, resume this case, and resolve the unanswered constitutional questions pressed by the plaintiffs.

Respectfully submitted,

MICHAEL DEWINE
Attorney General of Ohio

/s/ Peggy W. Corn
Peggy W. Corn* (0042197)
Assistant Attorney General
  *Trial Counsel
30 E. Broad Street, 16th Floor
Columbus, OH 43215
Phone: (614) 466-2864
Fax: (614) 644-7634
peggy.corn@ohioattorneygeneral.gov

David M. Lieberman (0086005)
Deputy Solicitor
30 E. Broad Street, 17th Floor
Columbus, OH 43215
Phone: (614) 466-8980
Fax: (614) 466-5087
david.lieberman@ohioattorneygeneral.gov

Counsel for Intervenor-Defendant State of Ohio

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of May, 2012, this Brief of Intervenor-Defendant State of Ohio was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.

<u>/s/ Peggy W. Corn</u>