```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION



THE NORTHEAST OHIO COALITION, .
FOR THE HOMELESS, et al.,      .
                               .
  PLAINTIFFS,                  .      CASE NO. 2:06-CV-896
                               .
     VS.                       .      COLUMBUS, OHIO
                               .      MAY 9, 2012
JON HUSTED, in his official    .
capacity as Secretary          .      4:00 P.M.
of the State of Ohio,          .
                               .
  DEFENDANT,                   .
                               .
and                            .
                               .
STATE OF OHIO,                 .
                               .
  INTERVENOR-DEFENDANT.        .
. . . . . . . . . . . . . . . .
```

**_TRANSCRIPT OF TELEPHONIC 65.1 CONFERENCE_**
BEFORE THE HONORABLE ALGENON L. MARBLEY
UNITED STATES DISTRICT JUDGE



APPEARANCES:

FOR THE PLAINTIFFS:            CAROLINE GENTRY, ESQ.
                              DANIEL B. MILLER, ESQ.
                              SUBODH CHANDRA, ESQ.
                              STACEY M. LEYTON, ESQ.
                              STEPHEN P. BERZON, ESQ.
                              MICHAEL J. HUNTER, ESQ.
                              CATHRINE J. HARSHMAN, ESQ.
                              DONALD J. MCTIGUE, ESQ.


FOR THE RELATORS:             W. STUART DORNETTE, ESQ.
                              JOHN B. NALBANDIAN, ESQ.

APPEARANCES CONTINUED:


FOR THE DEFENDANT JON HUSTED:      AARON D. EPSTEIN, ESQ.
                                   PAMELA VEST, ESQ.

FOR THE DEFENDANT STATE OF OHIO:   PEGGY W. CORN, ESQ.
                                   DAVID LEIBERMAN, ESQ.


                              _ _ _

```
 1                      WEDNESDAY AFTERNOON SESSION
 2                           MAY 9, 2012
 3                             -  -  -
 4            THE COURT:  Good afternoon.  Would counsel please
 5      identify themselves for the record beginning with counsel
 6      for the plaintiffs.
 7            MS. GENTRY:  Caroline Gentry for the plaintiffs
 8      NEOCH and SEIU.
 9            MR. MILLER:  This is Dan Miller for plaintiffs NEOCH
10      and SEIU.
11            MR. CHANDRA:  Subodh Chandra for the plaintiffs
12      NEOCH and SEIU, as well as, Your Honor, with your
13      permission, Ashley K. Sletvold from our office whose
14      admission to the Southern District of Ohio will be applied
15      for imminently.
16            MS. LEYTON:  This is Stacey Leyton, and I'm here
17      with Stephen Berzon representing SEIU 1199.
18            MR. HUNTER:  Your Honor, this is Mike Hunter with
19      Cathrine Harshman also representing SEIU 1199.
20            MR. MCTIGUE:  And this is Donald McTigue
21      representing the Ohio Democratic Party.
22            THE COURT:  All right.  Counsel for the relators.
23            MR. DORNETTE:  Stuart Dornette and John Nalbandian,
24      Your Honor.
25            THE COURT:  Mr. Dornette, are you out of Dayton?
```

```
 1            MR. DORNETTE:  Cincinnati.

 2            THE COURT:  With whom?

 3            MR. DORNETTE:  Taft Stettinius & Hollister.

 4            THE COURT:  Okay.

 5            MR. EPSTEIN:  Your Honor, this is Aaron Epstein and

 6     Pamela Vest for Secretary of State Husted.

 7            THE COURT:  All right.

 8            MS. CORN:  And this is Peggy Corn and Dave Leiberman

 9     who is going to be filing appearance pro hac vice soon for

10     the State of Ohio.

11            THE COURT:  Is that everyone?

12            For the record, this is on the record.  I have

13     Mrs. Evans, my court reporter here, and I also have my law

14     clerk Mr. Robert Haferd.

15            Ms. Gentry, you requested this by filing your urgent

16     motion -- your words, not mine -- to enjoin the state court

17     proceeding, and for an order to show cause why relators Tom

18     Niehaus and Louis Blessing Jr. should not be held in

19     contempt.  Do you want to first set the factual background

20     for your motion?

21            MS. GENTRY:  Yes, Your Honor.  I'll try to do so as

22     briefly as possible.

23            As the Court knows, we entered into a consent decree

24     two years ago.  "We" being the plaintiffs NEOCH, SEIU and

25     intervenor-plaintiff ODP; and also defendant Secretary of
```

1    State and defendant State of Ohio.  That consent decree is

2    Docket No. 210.

3           We became aware that last month, I believe it was

4    April 16th, the relators, who are two Republican

5    legislative leaders Thomas Niehaus and Louis Blessing, had

6    filed an action in the Ohio Supreme Court to essentially

7    invalidate the consent decree.  They're seeking a Writ of

8    Mandamus that would order Secretary Husted not to issue the

9    directives that are required by the decree, and instead to

10   issue directives to the boards of election to follow Ohio

11   election law without regard to prior commitment by the

12   secretary of state, which we interpreted meaning not to

13   follow the consent decree.

14          We are before you today seeking an injunction under

15   the All Writs Act to stop the two relators from proceeding

16   with the Ohio Supreme Court action.  It is an urgent motion

17   because the answer -- Secretary Husted's answer is due

18   tomorrow, under our calculations, and the Ohio Supreme

19   Court could rule any time after that.  Under Ohio Supreme

20   Court Rule 10.5(C), they could either set a briefing

21   schedule or issue a peremptory writ on the merits

22   immediately, and that's why we believe it's imperative to

23   get a ruling on the injunction before the Ohio Supreme

24   Court acts, and that's why we've sought very quick action.

25          THE COURT:  All right.  My first question to you,

1     Ms. Gentry, is whether this is ripe for me at this time.

2     You've indicated that one of the bases for your motion is

3     that the relators are in violation of the consent decree by

4     going to the Ohio Supreme Court, filing the mandamus

5     action.  But nothing has happened -- well, let me rephrase

6     that.  What has happened that actually presents a case or

7     controversy before the Court?  What has happened that is in

8     derogation or in violation of my consent decree?

9          MS. GENTRY:  Your Honor, it's our belief that the

10    act of filing the lawsuit seeking a state court order that

11    would nullify the consent decree is itself an act that

12    triggers a case or controversy.  And, Your Honor, I think

13    if the Court were to wait until the Ohio Supreme Court

14    actually issued a decision, that could be very problematic.

15    If there are two conflicting decisions out there, then an

16    injunction is no longer possible, and then instead we have

17    to wrestle with how to reconcile the two conflicting

18    decisions and what that means for the Ohio election system.

19    The only time we could seek an injunction to prevent a

20    conflicting decision would be right now.

21          THE COURT:  Mr. Dornette, your response.

22          MR. DORNETTE:  Yes, Your Honor.  I think your

23    question I would answer in a different way and, that is,

24    number one, the order or the consent decree that has been

25    entered -- and it was entered two years ago -- does not

1    tell Mr. Niehaus, the president of the Ohio Senate, or

2    Mr. Blessing, Speaker Pro Tempore of the Ohio House of

3    Representatives, to do or not do anything.  So they are not

4    in violation of that order and haven't been in violation of

5    that order.

6         The issue which they have presented to the Ohio

7    Supreme Court is a simple question of the authority of an

8    elected constitutional officer in Ohio to enter into a

9    consent decree that has the effect of amending Ohio

10   statutes that were previously passed by the Ohio General

11   Assembly and signed by the governor.

12        THE COURT:  If that's the case, then any time that a

13   federal court acts, isn't that same argument available to

14   you?  Whether it's under HAVA or under the ADA or the ADEA

15   or any of the other federal statutes under which a state

16   citizen seeks redress, and if given redress, can't some

17   state legislator claim that that particular act or law is

18   not consistent with state law, and, therefore, go to court

19   and file a Writ of Mandamus depending on the particular

20   office of the state employee?

21        MR. DORNETTE:  Your Honor, if there was a conflict

22   between the federal law and the state law, the federal law

23   under the supremacy clause would control on that.  But here

24   we do not have any finding in the consent decree that the

25   Ohio statute has violated in any way federal constitution

1  or federal statutory law.  We just have an agreement

2  entered into by the secretary of state to amend the state

3  law.  That, I think, is very different from what you were

4  postulating.

5       MS. GENTRY:  Your Honor, may I respond to that?

6       THE COURT:  Yes, you may.

7       MS. GENTRY:  There are a number of cases that have

8  held -- and I'm looking for the cites now -- that consent

9  decrees typically do not contain findings of fact and

10  conclusions of law.  That's the point of having a

11  settlement.  The fact they don't have a finding of fact or

12  conclusion of law does not in any way make it have lesser

13  force than any other federal court order.  It has just as

14  much force of law as final judgment on the merits.

15       THE COURT:  Mr. Dornette, I have one other -- just a

16  practical question.  This consent degree was entered into

17  on April 19th, 2010, I believe.

18       MR. DORNETTE:  Yes, Your Honor.

19       THE COURT:  When was your suit filed?

20       MR. DORNETTE:  April 16th of 2012.

21       THE COURT:  Why did it take you -- I mean, nothing

22  has changed in state law that wasn't exigent at the time

23  this consent decree was entered into over two years ago.

24  Why are you just now coming to court with this issue?

25       MR. DORNETTE:  Your Honor, I think there has been

1    clarification in the interim as to the role of poll worker

2    error in the counting of ballots.  That was provided by a

3    Supreme Court decision of last year after the consent

4    decree was entered into.  That was the State ex rel Painter

5    versus Brunner case.  But the issue of the timing really

6    is -- certainly, we were not presented with this.  Mr.

7    Niehaus was not president of the Senate until a year and a

8    half ago, and this has become something that is important

9    to our clients, and it is something that -- I think there

10   is not any sort of estoppel argument that can be presented

11   on it.

12        THE COURT:  That's certainly one of the questions

13   that the Supreme Court may very well ask you --

14        MR. DORNETTE:  Yes, Your Honor.

15        THE COURT:  -- as opposed to me.  But that's one

16   matter about which I was curious.

17        Mr. Dornette, is it your position that there -- I

18   want to be clear, that there has not been a violation of

19   the consent decree?

20        MR. DORNETTE:  I do not believe there has been a

21   violation of the consent decree, no, Your Honor.

22        THE COURT:  Mr. Epstein, do you have any response to

23   either Ms. Gentry or Mr. Dornette?

24        MR. EPSTEIN:  Not really, Your Honor.  Secretary

25   Husted is somewhat caught between conflicting directives

1    from the consent decree and the Ohio Supreme Court.

2        THE COURT:  What directives does Secretary Husted

3    have from the Ohio Supreme Court that conflicts with the

4    consent decree?

5        MR. EPSTEIN:  The decision from the Ohio Supreme

6    Court in *Painter* that Mr. Dornette referenced held that

7    under Ohio law, provisional ballots that are defective,

8    that is, they don't meet the requirements of the law,

9    cannot be counted even if the error is attributable to poll

10   worker error.  There are specific requirements in the

11   consent decree that say that, in fact, those defective

12   provisional ballots will be counted if they are -- if the

13   error is attributable to poll worker error.

14       So there is a conflict between the terms of the

15   consent decree and Ohio law as set forth by the Ohio

16   Supreme Court.  That said, we are the defendant slash

17   respondent in all the litigation, and we don't choose the

18   time or the forum.  We're simply awaiting guidance and

19   clarification.

20       THE COURT:  Do you doubt that you are bound by the

21   terms of the consent decree notwithstanding the fact that

22   it was your predecessor and not Secretary Husted who

23   entered into the consent decree?

24       MR. EPSTEIN:  Your Honor, we believe that until you,

25   or the Sixth Circuit, or some other authority amends or

1    discontinues the consent decree, the office of the

2    secretary of state is bound by it.

3         THE COURT:  All right.

4         Ms. Corn, do you have anything?

5         MS. CORN:  No.  We have nothing to say, Your Honor.

6         THE COURT:  Back to you, Ms. Gentry.  My issue

7    still, as I see it, is whether there's anything for me to

8    decide.  Because, on the one hand, it appears to me that

9    you're asking me to enjoin the Ohio Supreme Court from

10   making a decision in this case.

11        MS. GENTRY:  Yes, Your Honor.  That's exactly what

12   we're asking because we believe once the Supreme Court

13   rules, that case will be over, there's nothing left to

14   enjoin.  Instead, we'll have a mess trying to figure out

15   how to reconcile if it can even be done with the two

16   different decisions, assuming they conflict.  And if they

17   can't be reconciled, then there's going to be a huge

18   dispute as to which one controls.

19        We think the Court is well within its rights to

20   protect its jurisdiction by enjoining relators from

21   pursuing the state court case.  Your Honor, if you'd like

22   us to brief the ripeness issue, we can do that.

23        THE COURT:  Well, I think that would be helpful, but

24   that doesn't address your immediate concerns that would --

25   I'm just trying to determine on what authority I can enjoin

1     the Supreme Court from discharging its lawful duties in

2     deciding cases that are filed before it.  It's like I'm

3     reaching over into the state system and saying because I

4     have ruled on this issue in a case over which I'm

5     presiding, you're prohibited from considering that issue.

6          MS. GENTRY:  Your Honor, I understand there are

7     sensitive federalism concerns here, and we're certainly

8     sensitive to that ourselves.  That's why we've asked you

9     not to enjoin the court, but rather to enjoin the relators

10    from proceeding with their action.

11         THE COURT:  How do I have jurisdiction over the

12    relators?

13         MS. GENTRY:  Because they are officials of the state

14    of Ohio, which is a party to the case.

15         MS. LEYTON:  This is Stacey Leyton.  If I may add to

16    that.  Ms. Gentry is correct that we have taken the

17    position and explained in our brief why the relators are

18    parties to this case.  But the All Writs Act expressly

19    provides authority to issue injunctions that are necessary

20    in order to protect the jurisdiction of this court.  We've

21    briefed a number of cases in which federal courts have

22    enjoined state court proceedings, or have enjoined parties

23    from proceeding in state court proceedings in order to

24    protect its jurisdiction or prevent the re-litigation of

25    issues that were resolved in the federal court.  And the

1     All Writs Act does permit injunctions to issue against

2     nonparties, if there is any doubt as to whether the

3     relators are parties.

4          MR. MCTIGUE:  This is Don McTigue.  May I add

5     something to that?

6          THE COURT:  Certainly you may.

7          MR. MCTIGUE:  You asked the question initially about

8     whether or not there's been a violation by the relators of

9     the consent decree.  And I believe Ms. Gentry answered that

10    she believes going to court in and of itself to seek an

11    order to essentially undue the consent decree can be

12    considered a violation, and I agree with that.  But, even

13    short of that, the purpose of, of course, injunctive relief

14    is to prevent harm before it happens.  There has to be a

15    threat of immediate harm, and that's when preliminary and

16    temporary injunctive relief can be granted, before the harm

17    actually occurs.

18          Now, we don't know how the Supreme Court, the Ohio

19    Supreme Court, will decide that case.  On the other hand,

20    we know that a party to the NEOCH consent decree, the State

21    of Ohio and the general assembly which was also represented

22    in the consent decree, have gone to another court seeking

23    to get essentially out from under the consent decree.  And

24    that has at least created, at a minimum, a threat of

25    immediate harm to the plaintiffs in the NEOCH case because

1    it's an attack on the consent decree.

2          THE COURT:  Mr. Dornette, one additional question

3    that I have along those lines.  Paragraph 11 of the consent

4    decree provides that any of the parties may -- quote, any

5    of the parties may file a motion with the Court to modify,

6    extend, or terminate this decree for good cause shown.

7          Now, instead of coming to me to have it terminated

8    because it conflicts with state law, or modified because it

9    conflicts with state law, you're going to a different

10   forum.  You're going to the Ohio Supreme Court.  Why is

11   that not just kind of your basic forum shopping 101?

12         MR. DORNETTE:  Your Honor, as I read paragraph 11,

13   it refers to parties.  And I do not agree with -- and we

14   obviously can and will brief the subject, but I do not

15   agree with the statements that have been made that

16   Mr. Niehaus and Mr. Blessing, because they are state

17   legislators in Ohio, are parties by virtue of the fact that

18   the State of Ohio moved to intervene.  The State of Ohio

19   includes the Ohio Supreme Court.  I don't know that anyone

20   would make the argument that individual justices of the

21   Ohio Supreme Court are parties to that consent decree.

22         THE COURT:  Okay.  Let's assume for a moment,

23   without me deciding that argument is ripe, why didn't you

24   seek to intervene?

25         MR. DORNETTE:  Well, Your Honor, this is a

1    fundamental question of Ohio Constitutional law that

2    should, I believe, in the first instance, be decided by the

3    Ohio Supreme Court.

4         THE COURT:  Well, why is this not a question of

5    federal law since it involves the right to vote?  I don't

6    know that there's anything more central to the federal

7    scheme than the right to participate in the electorial

8    process.  And you have acknowledged yourself that the

9    supremacy clause makes federal law supreme.  This is going

10   to certainly bear on a federal election.  It's not like

11   this is a local election with no implications for the

12   federal system.

13        MR. DORNETTE:  Your Honor, the question we have

14   asked of the Ohio Supreme Court is the procedural question

15   of what is the authority of an elected member of the

16   executive department of the Ohio government to modify laws

17   that have been passed by the state legislature.  It doesn't

18   have to do with federal voting rights.

19        THE COURT:  Wait a minute.  This case is about

20   voting rights, Mr. Dornette.  It's not about state

21   transportation systems.  It's not about something that's

22   uniquely state.  It's about elections.  The consent decree

23   dealt with, among other things, provisional ballots.  It

24   dealt with voting.

25        In your case, you've relied on the *Painter* case and

1    you said that the Ohio Supreme Court's decision was in

2    conflict with the consent decree on the issue of voting.

3    So this is about voting, Mr. Dornette.  Let's be clear

4    here.  This is about voting.  That's what this case arises

5    out of.  It arises on an issue relating to voting.

6            MR. DORNETTE:  The case before Your Honor arises

7    under that.  The issue that we've presented to the Ohio

8    Supreme Court is a narrow issue that is related

9    specifically to the authority of elected members of the

10   executive department of the State of Ohio to modify, by

11   entering into consent decrees, state law.  In that respect,

12   that issue, that precise issue, is a procedural issue under

13   the Ohio Constitution rather than something that impacts

14   itself to voting rights.

15           MS. GENTRY:  Your Honor, may I respond?

16           THE COURT:  Certainly.

17           MS. GENTRY:  Your Honor, there are two problems, at

18   least two problems with what Mr. Dornette just said.  The

19   first is that although he's casting this as a narrow

20   procedural question for the Supreme Court, the relief he is

21   seeking is to essentially nullify the decree by ordering

22   Secretary Husted, who is a party to the decree, not to

23   comply with it and instead to issue directives that are

24   directly in conflict with it.  Although he is trying to

25   cast this as a narrow procedural issue, it is actually a

1   direct collateral attack on the consent decree.

2       The second problem is that even if you take him at

3   his word that it's just a narrow procedural issue, it's

4   based on a misstatement of facts.  The question that

5   they've raised to the Ohio Supreme Court is whether the

6   secretary of state has the authority to enter into a

7   consent decree.  While that's true that happened here, the

8   State of Ohio also entered into the consent decree, which

9   is something they haven't told the Ohio Supreme Court.  So

10  the fact that the State of Ohio has entered into the

11  consent decree, I think, changes the situation completely,

12  and they have not addressed that.

13      THE COURT:  How does it change the situation

14  completely?

15      MS. GENTRY:  Your Honor, their legal theory in the

16  Ohio Supreme Court is that the Ohio Constitution provides

17  that only the general assembly can suspend laws.  They're

18  arguing that the secretary of state does not have the power

19  to suspend laws.  However, the State Of Ohio intervened in

20  this action to protect the interests of the general

21  assembly.  That's in the Sixth Circuit opinion allowing

22  them to intervene.  So in this case, the general assembly,

23  through the State of Ohio, actually agreed to the consent

24  decree.

25      MR. DORNETTE:  Your Honor, may I respond?

1       THE COURT:  Certainly you may.

2       MR. DORNETTE:  If one goes and looks at the

3    transcript of the presentation to Your Honor of the consent

4    decree, there was counsel there for the plaintiffs, and

5    there was counsel there for the secretary of state, and

6    there was not counsel there for any other party.  So the

7    notion somehow that the general assembly agreed to the

8    consent decree just is not factual.  Again, we can get into

9    that, or could get into that in briefing on this.

10      THE COURT:  Well, in Roman Numeral II, paragraph 2,

11    it says that the parties bound by the decree -- the order

12    shall be binding upon the defendants and their employees,

13    agents and representatives.  The secretary of state will

14    issue directives to the boards of election to follow this

15    decree, and will use her best efforts to enforce the decree

16    and all related directives if put on notice of any alleged

17    violations.

18      It's not clear, from this document alone, that

19    either of you is correct.

20      MS. GENTRY:  Your Honor, we did cite an affidavit

21    from the State of Ohio's counsel who -- it was about a fee

22    dispute, but she said she approved the consent decree on

23    behalf of the State of Ohio, and she was the client contact

24    for the State of Ohio.

25      THE COURT:  I know that.  I understand that.  And

1    you're right about the Sixth Circuit opinion.  I'm simply

2    saying that the consent decree doesn't make either of you

3    clearly right, as people like to say in the law.

4         I want to take this matter under advisement.  I

5    think that there is merit to the argument.  My concern,

6    however -- I have a number of concerns.  One of my concerns

7    is the whole notion that this is not about voting.  This is

8    about voting.  That's all this is about.  I don't know that

9    as a -- just as a matter of policy, as a *ratio decidendi*, a

10   matter of legal policy, you would want to have a

11   circumstance where one secretary of state enters into a

12   consent decree and, then, when the parties change or when

13   there is a new secretary of state from a different party,

14   for that matter it could be from the same party, doesn't

15   like that consent decree, then we'll have this type of

16   lawsuit.  It was a binding consent decree.

17        I'm also concerned by the fact that you go,

18   Mr. Dornette, to the Supreme Court without seeking to

19   intervene here.  I understand your rationale for doing so,

20   but I just, in some fundamental ways, disagree with it

21   because I think this is about voting.

22        On the other hand, I'm not sure, Ms. Gentry and

23   Ms. Leyton, that I can enjoin the Supreme Court from acting

24   under the circumstances of this case.  I need to study more

25   closely the question of whether I can enjoin the relators

 1    from pursuing their writ in the Ohio Supreme Court.  That's

 2    the matter that I will, over the next 24 hours or so,

 3    probably devote most of my time to looking at.

 4         So, unless someone else has additional arguments,

 5    I'm going to adjourn this conference, which I will, for the

 6    record, style as a 65.1 conference, and give this some

 7    consideration.  I will provide an answer by close of

 8    business tomorrow.

 9         MR. DORNETTE:  Thank you, Your Honor.

10         MS. GENTRY:  Thank you, Your Honor.

11         THE COURT:  Thank you, everyone.

12         MR. DORNETTE:  Your Honor, would you care to have a

13    brief from us?

14         THE COURT:  You haven't submitted any briefs yet,

15    have you?

16         MR. DORNETTE:  We have not, Your Honor.

17         THE COURT:  Okay.

18         MR. DORNETTE:  I don't know that I can get it in by

19    noon tomorrow, but...

20         THE COURT:  I'm sure that there's more than a

21    handful of bright, young associates there at Taft who would

22    like nothing better than to spend the rest of this evening

23    researching and writing something for your approval and

24    editing.  So, yes, submit a brief just on the

25    jurisdictional issue.  The plaintiffs have given me

1   sufficient information that they can stand on, as far as

2   jurisdiction is concerned and my power to enjoin both the

3   Ohio Supreme Court and the relators.  So why don't you

4   respond to that jurisdictional issue by noon tomorrow.

5           MR. DORNETTE:  Thank you, Your Honor.

6           THE COURT:  All right.

7           MR. CHANDRA:  Your Honor, Subodh Chandra.  May I add

8   one other thing?

9           THE COURT:  Certainly.

10          MR. CHANDRA:  Back to the point you were closing

11  with when you were listing the issues of your concern, I

12  wanted to just address one point that may have gotten lost

13  in the conversation, or maybe you did hear it.  These

14  legislative leaders, when they filed before the Ohio

15  Supreme Court, were clearly stating that they were doing so

16  in their official capacity; not just random individuals off

17  the street, but in their official capacity.  As you know

18  from your handling of countless civil rights cases,

19  whenever an official is named in their official capacity,

20  they're simply standing in for whatever governmental entity

21  it is they represent.

22          You may recall, and in the Sixth Circuit decisions

23  Ms. Gentry pointed out, that the whole reason the State of

24  Ohio intervened when plaintiffs originally sued then

25  Secretary of State Blackwell, which is when we started in

1    this case, the whole reason they intervened very quickly

2    was they were asserting that the general assembly, which

3    had adopted the laws in question, had an independent

4    interest in vindicating them.

5          So those dots all have to be connected because the

6    State of Ohio intervened, they intervened successfully,

7    they are named in the consent decree; you have the Jennings

8    affidavit where she affirms their interest in this.  They

9    certainly never objected to any of the stuff at the time.

10   And now you have these legislative leaders saying based on

11   their official capacity that's why they're going to the

12   Ohio Supreme Court.  In their official capacity, they're

13   going as representatives of the general assembly, i.e., the

14   State of Ohio.  That's why we believe -- that sort of

15   crystalizes why we believe you do have jurisdiction over

16   them, you do have the ability to speak to them, and they

17   are acting in defiance of the consent decree.

18          THE COURT:  Thank you, Mr. Chandra.

19          MR. CHANDRA:  Thank you, Your Honor.

20          THE COURT:  Thank you very much, everyone.

21          Mr. Dornette, I'll look forward to your brief at

22   noon tomorrow.

23          MR. DORNETTE:  Thank you, Your Honor.

24          THE COURT:  Take care, everyone.  Thank you.

25     (Proceedings concluded at 4:38 p.m)

1                                    C E R T I F I C A T E

2

3          I, Shawna J. Evans, do hereby certify that the

4     foregoing is a true and correct transcript of the

5     proceedings before the Honorable Algenon L. Marbley, Judge,

6     in the United States District Court, Southern District of

7     Ohio, Eastern Division, on the date indicated, reported by

8     me in shorthand and transcribed by me or under my

9     supervision.

10

11

12                                   s/Shawna J. Evans
                                     Shawna J. Evans, RMR
13                                   Official Federal Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25