UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


THE NORTHEAST OHIO COALITION, .
FOR THE HOMELESS, et al.,       .
                                .
  PLAINTIFFS,                   .    CASE NO. 2:06-CV-896
                                .
    VS.                         .    COLUMBUS, OHIO
                                .    MAY 10, 2012
JON HUSTED, in his official     .
capacity as Secretary           .    4:00 P.M.
of the State of Ohio,           .
                                .
  DEFENDANT,                    .
                                .
and                             .
                                .
STATE OF OHIO,                  .
                                .
  INTERVENOR-DEFENDANT.         .
. . . . . . . . . . . . . . . . .


**_TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE_**
BEFORE THE HONORABLE ALGENON L. MARBLEY
UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFFS:          CAROLINE GENTRY, ESQ.
                             DANIEL B. MILLER, ESQ.
                             SUBODH CHANDRA, ESQ.
                             STACEY M. LEYTON, ESQ.
                             STEPHEN P. BERZON, ESQ.
                             MICHAEL J. HUNTER, ESQ.
                             CATHRINE J. HARSHMAN, ESQ.
                             DONALD J. MCTIGUE, ESQ.


FOR THE RELATORS:            W. STUART DORNETTE, ESQ.
                             JOHN B. NALBANDIAN, ESQ.

```
APPEARANCES CONTINUED:


FOR THE DEFENDANT JON HUSTED:       AARON D. EPSTEIN, ESQ.
                                    PAMELA VEST, ESQ.

FOR THE DEFENDANT STATE OF OHIO:    PEGGY W. CORN, ESQ.
                                    DAVID LEIBERMAN, ESQ.



                              _  _  _
```

```
 1                              THURSDAY AFTERNOON SESSION
 2                              MAY 10, 2012
 3                                  - - -
 4          THE COURT:  Good afternoon.  Would counsel please
 5     identify themselves for the record beginning with counsel
 6     for the plaintiffs.
 7          MS. GENTRY:  Caroline Gentry for plaintiffs NEOCH
 8     and SEIU.
 9          MR. MILLER:  Dan Miller for plaintiffs NEOCH and
10     SEIU.
11          MS. LEYTON:  Stacey Leyton with Steve Berzon for
12     plaintiffs SEIU.
13          MR. HUNTER:  And Mike Hunter with Cathrine Harshman
14     for plaintiffs SEIU.
15          MR. CHANDRA:  Subodh Chandra for plaintiffs NEOCH
16     and SEIU, along, with the Court's permission, Ashley
17     Sletvold, S-L-E-T-V-O-L-D, who will be applying shortly to
18     the Seventh Circuit.
19          MR. MCTIGUE:  Donald McTigue on behalf of plaintiff
20     Ohio Democratic Party.
21          THE COURT:  And counsel for the relators.
22          MR. DORNETTE:  Stuart Dornette and John Nalbandian
23     for Mr. Neihaus and Mr. Blessing.
24          MR. EPSTEIN:  Aaron Epstein with Pamela Vest for
25     Ohio Secretary of State Husted.
```

1          MS. CORN:  Peggy Corn and David Leiberman for

2     defendant State of Ohio.

3          THE COURT:  What I'm going to do now -- and I

4     appreciate everyone's patience -- is announce my decision.

5     As you can appreciate, I received probably about thirty

6     minutes ago a reply memorandum, and I received at noon

7     today the relators' memoranda.  I have a draft opinion.

8     Given the importance of this case, I have a draft opinion

9     that is going to have to be massaged to be put in final

10    form, but I have the structure of my opinion set forth in

11    this draft, and so I'm going to give you my answer.  I'm

12    going to read some of it.  So, when you get the written

13    opinion tomorrow, you'll recall some of the things I said,

14    and it will be enhanced somewhat.

15          But this matter, of course, is before the Court on

16    what is styled an urgent motion to enjoin state court

17    proceedings and for an order to show cause why relators

18    Thomas Neihaus and Louis Blessing Jr. should not be held in

19    contempt.  The Court treated this yesterday as -- our

20    conference yesterday as a 65.1 conference under the local

21    rules, as the plaintiffs are seeking an injunction.  In

22    fact, the plaintiffs' motion seeks immediate injunctive

23    relief in the form of an order from this Court enjoining

24    Mr. Neihaus and Mr. Blessing and their counsel from further

25    prosecuting the state court proceedings in State ex rel

1    <u>Neihaus versus Husted</u>, the mandamus action.

2         The relators in this case contend that the

3    plaintiffs' request for injunctive relief should be

4    rejected for three reasons, essentially, that the relators

5    are not a party to the lawsuit and, therefore, this Court

6    lacks jurisdiction to enjoin them from pursuing their state

7    law claims; second, that there is and has been no violation

8    of this Court's order as to make the plaintiffs' claim

9    ripe; and, three, principles of federalism provide that the

10   Ohio Supreme Court is the final authority on issues of

11   state law.

12        The first issue that I must address is whether I

13   have jurisdiction, and here that means determining whether

14   I have the authority to enjoin the relators from

15   prosecuting their currently pending mandamus action.

16        Second, the ripeness issue is addressed -- I will

17   address that; and finally, whether the relief requested by

18   the plaintiffs is appropriate or warranted.

19        On the record before the Court, I don't see that the

20   jurisdiction and the authority of this Court over the

21   relators can be reasonably questioned.  The relators are

22   acting as officials and agents of the State of Ohio which

23   is a named party to the consent decree.  Additionally, even

24   if the relators were collaterally attacking the consent

25   decree's terms -- let me rephrase that.  I think the same

1    would be true even if the relators were not treated as

2    representatives of the State of Ohio and were not -- were

3    nonparties to this action, I would have authority under the

4    All Writs Act to enjoin them from, quote, frustration of

5    the consent.  And that's the *City of Detroit* case that I'll

6    refer to later, which was a 2003 en banc decision from the

7    Sixth Circuit in which the Sixth Circuit held that the All

8    Writs Act provides district courts with the authority to

9    bind nonparties in order to prevent the frustration of

10   consent decrees that determine the parties' obligations

11   under the law.

12        In their briefing, the relators do not dispute that

13   the State of Ohio is a party to this action; however, they

14   argue that the Ohio General Assembly and its members are

15   not and never have been parties to the action or to the

16   consent decree.

17        The mandamus action that Messrs. Neihaus and

18   Blessing have filed has been brought by the State of Ohio

19   *ex relatione*, which is the Latin for, quote, on behalf of,

20   or upon the request of, the relators.  The mandamus action

21   was filed by the attorney general for the State of Ohio,

22   whose office has represented the State of Ohio in this

23   action including the consent decree proceedings.

24        The relators are prosecuting the mandamus action in

25   their official capacities as elected state officials.  As

1    such, an order from this Court enjoining the relators is,

2    as far as the law is concerned, an order enjoining the

3    State of Ohio, a named party to this action and subject to

4    the binding terms of the consent decree.

5         The relators argue that they are, quote, no more

6    agents of the State of Ohio for purposes of this case and

7    the decree than the governor, the auditor of the state, the

8    treasurer of the state, or the individual justices of the

9    Ohio Supreme Court.  However, they quixotically cite Ohio

10   Revised Code 109.36(B) for support in this proposition.

11   That statute states that, quote, State means State of Ohio,

12   including but not limited to the general assembly, the

13   Supreme Court, courts of appeals, the offices of the

14   elected state officers, and all departments, boards,

15   offices, commissioners, agencies and other

16   instrumentalities of the State of Ohio.

17        As there is no dispute that the State of Ohio is a

18   party to this action, there can, accordingly, be no dispute

19   that relators, who sue on behalf of the State of Ohio in

20   their capacities as elected state officers and members of

21   the general assembly, are bound by the terms of the consent

22   decree when acting in the capacity in which they brought

23   suit.

24        Even if the relators were not treated as

25   representatives of the state, as I said, and were

1    nonparties, the *City of Detroit* case would compel the

2    conclusion that under the All Writs Act this district court

3    can enjoin them from frustrating the terms of the consent

4    decree.  What they want to do is invalidate the consent

5    decree, and so there is no more clear case of frustration

6    of a consent decree than invalidating it.

7        The U.S. Supreme Court in United States versus New

8    York Telephone Company 434 U.S. 159, 1977, also affirms

9    this Court's power to enjoin nonparties under the All Writs

10   Act.  I wanted you to be aware of that bit of authority.

11       The relators state that the State of Ohio was not

12   represented at the April 19th, 2010, hearing regarding the

13   consent decree's terms and, thus, the State of Ohio did not

14   agree to the consent decree.  I don't know whether this

15   argument is disingenuous, or whether it was just made for

16   expediency.  But, as two years have passed since the

17   decree's issuance and the State of Ohio is clearly, as a

18   designated party, bound by the terms of the consent decree,

19   I don't really see how that argument is meritorious.

20   Paragraph 11 of the consent decree provides that at any

21   time any of the parties may file a motion with the court to

22   modify, extend, or terminate this decree for good cause

23   shown.  That they now complain of having not been duly

24   represented in the proceedings is untimely, and, in any

25   case, is a motion that should be made to this Court and not

1    to the Supreme Court of Ohio.  It almost seems that the

2    relators in this case are doing forum shopping.

3         If you look at Ms. Ashbrook's affidavit, it does

4    indicate that she was representing the State of Ohio.  It

5    says in paragraph three of her affidavit:  Since the

6    settlement negotiations began in this case, I acted as the

7    client contact for the State of Ohio, comma, a party in

8    this case.

9         So, if your lawyer says that she represented you and

10   you were a party to this case, that is at least some

11   compelling evidence that the State was a party to the case.

12        I'm going to address just for a moment also the

13   argument that this case is not ripe.  The relators make the

14   argument that the case is not ripe.  The precedent that

15   will be gleaned from my written order, basically beginning

16   with the *Lorillard Tobacco Company* case, which was decided

17   by the Sixth Circuit, an affirmative decision of Judge

18   Sargus on this court, makes clear that state court actions

19   can be enjoined from further prosecution before a decision

20   has been made in that case.  Under essentially the All

21   Writs Act, that's what – *Lorillard* – the Court relied on

22   when the case was before the Sixth Circuit, and that's what

23   Judge Sargus relied on when the case was at the trial court

24   level.

25        The All Writs Act provides that the Supreme Court

1    and all courts established by an act of Congress may issue

2    all writs necessary or appropriate in aid of their

3    respective jurisdictions and agreeable to the usages and

4    principles of law.

5          Now, the relators claim that the Anti-Injunction Act

6    prohibits the Court from enjoining their action, but, if

7    you look carefully at the Anti-Injunction Act, the

8    exceptions would allow this Court to enjoin the relators.

9          The Act provides:  A Court of the United States may

10   not grant an injunction to stay proceedings in a state

11   court except as expressly authorized by an act of Congress,

12   or where necessary in aid of its jurisdiction, or to

13   protect or effectuate its judgment.

14         So all three of these exceptions apply to this case,

15   but most obviously the second and third apply on their

16   face.

17         One of the other issues that the relators raise is

18   with respect to the appropriateness of the plaintiffs'

19   requested injunction.  The relators raise the district

20   court's – Judge Deloitte – statements and her opinion in

21   Hunter versus Hamilton County Board of Election where she

22   held:  It is within the province of the Ohio Supreme Court

23   to determine whether Secretary of State Jennifer Brunner's

24   directives comply with state law governing election

25   proceedings, and this Court will not enjoin the Ohio

1     Supreme Court from doing so.

2          My court does not dispute this proposition, nor does

3     it dispute for a moment the jurisdiction of the Ohio

4     Supreme Court to decide the laws of Ohio; however, where,

5     as in this case, the possibility of a contrary order from a

6     court of coordinate jurisdiction threatens to create an

7     unseemly conflict, or frustrate the orders of this court,

8     an injunction would be appropriate.

9          So based on the status of the record and based

10    principally on the fact that the relators are bound by

11    the -- as part of the State of Ohio, they're bound by the

12    consent decree, their proper remedy is to come before this

13    court and to seek to modify the consent decree based on the

14    information that you were going to present to the Supreme

15    Court, Mr. Dornette.

16          In other words, you would come to me essentially

17    with the same arguments that you would make to the Court,

18    and I suppose that you would argue that *Painter* has changed

19    the landscape such that the consent decree needs to be

20    modified.  Who knows, perhaps you will get an agreement

21    from all of the parties to the consent decree to modify it

22    in light of *Painter*.  But the proper recourse, because

23    you're parties to the consent decree, is to come before

24    this Court to seek to modify the terms of the consent

25    decree.

1        In that spirit, then, the Court is going to enjoin

2   the relators from prosecuting further their mandamus action

3   in the Ohio Supreme Court, and I am directing the relators

4   to dismiss forthwith, without prejudice, their mandamus

5   action that presently is pending before the Ohio Supreme

6   Court.

7        Are there any questions from the plaintiffs?

8        MS. GENTRY:  No, Your Honor.  Thank you.

9        THE COURT:  Any questions from counsel for the

10  relators?

11       MR. DORNETTE:  Your Honor, obviously we want to take

12  a look at the order when you have it.  I don't know if you

13  have thoughts on "forthwith."  We obviously have to talk to

14  our client.

15       THE COURT:  Forthwith -- I know how you meant the

16  question, Mr. Dornette, so I'm just chuckling.  But it

17  means now.  And because I'm directing you to dismiss it

18  without prejudice, once this order is appealed, I'm deemed

19  to be wrong, you can reinstate your proceeding and there

20  will not be a significant passage of time in light of the

21  fact that we're coming up on an election.

22       Now, while I have you, though, I'm assuming that the

23  parties wish a hearing, which will be in the nature of a PI

24  hearing because we need to address this as expeditiously as

25  possible if, for no other reason, so that you,

1      Mr. Dornette, can get this matter before the Sixth Circuit.

2      I don't know how much discovery you all will need to engage

3      in, in preparation for a hearing on this.

4           Mr. Dornette, since you are more directly affected

5      and your clients are more directly affected, how soon can

6      you be prepared to proceed?  How much time are you going to

7      need because, as I see it, I don't know that you need to --

8      this is mostly a legal argument.  I don't know that there's

9      a factual record that needs to be developed.  But I do

10     think that you can present to me and before my court the

11     arguments that you were going to make about the invalidity

12     of the consent decree in light of *Painter*, maybe you'll

13     want to do that at this time also.

14          MR. DORNETTE:  When you say "also," do you have in

15     mind also arguing about what we've argued about --

16          THE COURT:  Yes, that's right.

17          MR. DORNETTE:  I don't know that there is need for

18     further argument on that, Your Honor.

19          THE COURT:  I was going to leave it up to the

20     parties.

21          MR. BERZON:  Stephen Berzon for Local 1199 SEIU for

22     the plaintiffs.  I don't know if the relators will agree,

23     but it seems to me -- we will have to read the ruling, but

24     based on Your Honor's ruling, I would think we could treat

25     the order, insofar as it covers the Ohio State Supreme

1    Court proceedings, as the injunction because it is a legal

2    ruling, and then we could work out whatever timetable works

3    for the relators, if they want to proceed on a motion to

4    modify the consent decree, that works with your schedule

5    and the relators' schedule.

6             THE COURT:  I was thinking that.  That might make

7    the most sense.

8             Mr. Dornette, what do you think?

9             MR. DORNETTE:  As I said, Your Honor, I don't see

10   that there is a lot of benefit to anyone in wasting Your

11   Honor's time or the parties' time in essentially

12   re-litigating that which you have already decided.

13            THE COURT:  I agree.  You know, that's music to a

14   district judge's ears, Mr. Dornette.  I agree with you on

15   that.  If we're all in agreement, that order and opinion

16   will go out tomorrow, and you can seek whatever relief you

17   deem appropriate from that order.

18            In the interim, however, we -- I think that we need

19   to schedule a hearing to determine whether the consent

20   decree should be modified or amended or otherwise altered

21   in light of *Painter*, which is basically what you were going

22   to do before the Ohio Supreme Court.

23            MR. DORNETTE:  Yes, Your Honor.  And I obviously

24   need to talk to our clients about that.  I think, again,

25   though, that that is -- and I think you were suggesting

```
 1    that this is really a legal issue more so necessarily than

 2    a factual, intensive issue.

 3              THE COURT:  Right.

 4              MR. DORNETTE:  So it may make the most sense to just

 5    do a briefing schedule on it and then set a time for

 6    argument.

 7              THE COURT:  That's fine.

 8              MS. GENTRY:  Your Honor, Caroline Gentry for the

 9    plaintiffs.  I think there is a possibility that the

10    plaintiffs may also want to move to modify the consent

11    decree on different grounds, so it may be advantageous to

12    have the parties file their motions and then determine

13    whether a hearing is necessary.  I don't want to say at

14    this moment that a hearing will be necessary, but it's

15    possible that it will be.

16              THE COURT:  What would make the most sense is for

17    the parties to get together and determine -- you can

18    present to the secretary of state and to the relators how

19    you want the consent -- you, plaintiffs, want the consent

20    decree modified.  The relators can negotiate with you how

21    they want the consent decree modified, and if -- the

22    secretary, as a party to the consent decree, certainly can

23    weigh in on how he wants the consent decree modified, if at

24    all.

25              So, in other words, all of the parties to the
```

1      consent decree, before you start spending more of your

2      client's money and allocating more of your personal time

3      and resources, maybe the first thing that you should do

4      now, given the posture of the case, is to sit in a

5      conference room and determine whether you can agree on the

6      modifications of the consent decree.  If you can't, that's

7      fine, then we can just proceed to have a hearing on the

8      modification of the consent decree, the parties can submit

9      briefs, and I can conduct oral arguments on it.

10          Given the importance of the questions presented, I

11     could get a mediator like Professor Foley from Ohio State,

12     who specializes in election law, to mediate this dispute on

13     behalf of the Court.

14          Is anybody interested in that?  Mr. Dornette?

15          MR. DORNETTE:  Your Honor, obviously, we have to

16     talk to our client about this and the range of

17     opportunities that they have, including that which you

18     suggested about going immediately to a hearing or briefing

19     and argument on the merits of the claim we have raised in

20     the Ohio Supreme Court.  We will take a serious look at

21     that.  And obviously the other question that we've got and

22     they will have, and we will need to talk over with them, is

23     do we, in lieu of that, want to immediately take an appeal

24     from this and -- from this order.  So I guess I would like

25     to get back to you, and we can do it probably tomorrow but

1    I'm not certain about the availability of everybody, so it

2    may have to be on Wednesday.  That's what we would propose.

3         THE COURT:  Here is what -- I think this would be

4    the ideal circumstance.  I think that ideally we could all

5    convene and try to work through the disputes, because if

6    you can agree to the modifications, then that moots

7    everything.  That moots all of these proceedings.  If you

8    can agree to the modifications that you want and the

9    modifications that plaintiff wants, and any that the

10   secretary might also want, then you don't need to appeal

11   this order and you don't need to go to the Supreme Court,

12   even if the Sixth Circuit agrees with you, Mr. Dornette.

13   Everything becomes moot.  Don't you agree?

14        MR. DORNETTE:  That is obviously one possibility,

15   but, again, it is not one that I've talked with our clients

16   about.

17        THE COURT:  I understand that you haven't talked to

18   your clients, but you are experienced and skilled enough

19   that you're going to provide leadership to the clients and

20   not vice versa.  Just as a practical matter, if your

21   clients got what they wanted in terms of whatever

22   modification it was, you would agree with me that you don't

23   need to pursue this aspect of the litigation any further.

24   Is that right?

25        MR. DORNETTE:  Your Honor, I appreciate that.  I

```
 1    will remind you that my clients are elected officials.

 2         THE COURT:  I understand that.  But we don't have

 3    that burden.  Our only burden is to decide issues of law.

 4    And I will come back to my question because I want the

 5    record to be clear:  If you get the modifications to the

 6    consent decree that you have prosecuted the case in the

 7    Ohio Supreme Court for, then those issues become moot,

 8    don't they?

 9         MR. DORNETTE:  There is that possibility.  I just

10    don't know that that's what would be at the end of it.

11         THE COURT:  Okay.  Under normal circumstances,

12    Mr. Dornette, I would require an answer, but because you

13    just heard my ruling and you probably haven't had an

14    opportunity to reflect on all of the implications, I'll be

15    satisfied with what seems to be a provisional ruling in a

16    provisional ballot case -- a provisional opinion in a

17    provisional ballot case.

18         MR. BERZON:  This is Mr. Berzon.  Just so we're

19    really clear, while we proceed with the rest of the

20    discussion on what comes with regard to where we go with

21    next steps regarding modification of the consent decree,

22    dismissal without prejudice is required now just so that we

23    don't have any --

24         THE COURT:  That's a part -- Mr. Dornette

25    understands that.  That's a part of my order.  What we're
```

1    talking about now is post-order activity.  What I'm telling

2    you -- I'm trying to get a consensus among the parties that

3    if you can reach an agreement as to the modifications under

4    the consent decree -- put another way, if you can reconcile

5    *Painter* with the consent decree, then the issues that

6    Mr. Dornette raised in the Supreme Court are moot.

7         Perhaps I have missed something, but it seems to me

8    that that's what he sought the writ for, at least that's

9    what I was told during the conference yesterday.  That's on

10   the record.

11        If I misstated your position, Mr. Dornette, please

12   speak up.

13        MR. DORNETTE:  Your Honor, as I said before, it is

14   possible that in discussions about all of this, that what

15   our clients are interested in receiving, they could get and

16   I just need to find out -- I need to read what this is and

17   get with them on that.  So I go back to -- I may be able to

18   get back to the Court on that tomorrow, but it may not be

19   until Wednesday.

20        THE COURT:  Ms. Gentry, on behalf of the plaintiffs,

21   do you see any additional issues that are exigent if you

22   can agree on the modifications that Mr. Dornette has

23   requested from the Ohio Supreme Court?

24        MS. GENTRY:  Your Honor, the only other issue that I

25   think would be outstanding is the contempt portion of the

 1    motion, which is probably partly mooted by the relief that

 2    the Court has already ordered.

 3        THE COURT:  It is.  I'm not going to hold them in

 4    contempt for going to -- at least on the record before me

 5    and under my order, I'm not going to issue a rule to show

 6    cause why the relators should be held in contempt.

 7        MR. BERZON:  Your Honor, this is Mr. Berzon.  We

 8    would agree and point out that civil contempt always goes

 9    forward, so, as long as they dismiss the decree

10    immediately, as Your Honor -- dismiss the writ of mandamus

11    immediately without prejudice, as Your Honor has ordered,

12    the contempt becomes moot.

13        THE COURT:  Yes.

14        Is there anything else?

15        MS. GENTRY:  No, Your Honor, not from the

16    plaintiffs.

17        THE COURT:  Now, we aren't done yet.  I don't want

18    you to get relaxed and get ready to hang up because we

19    haven't decided on next steps.  I want us to stay on track.

20    We can schedule another conference call for Wednesday,

21    after you, Mr. Dornette, have a opportunity to speak with

22    your clients.

23        MR. DORNETTE:  I think that makes sense, Your Honor.

24        THE COURT:  But I want counsel for the plaintiffs,

25    and you, Mr. Dornette, and all counsel to be able to take

1    the following suggestion back, because we can work

2    collaboratively in this process.

3         What I think that you should all do is before we

4    proceed with any further court action is I think we should

5    agree to a mediation, to see if we can reconcile -- see if

6    there's any need to modify the consent decree.  Apparently,

7    all parties -- well, not all parties, but at least the

8    plaintiffs and the State of Ohio, both parties to the

9    consent decree, wish to modify it in some way.

10        So whether you agree with this position,

11   Mr. Dornette, or you, Ms. Gentry, if the parties can agree

12   to the modification, the remaining issues are moot.  Then

13   you can modify the -- assuming that the Court goes along

14   with the modifications, you can modify the consent decree,

15   and then we can have an election in which votes count,

16   because I know that the real point of all of this is to

17   make sure that the franchise is not undermined.  At least I

18   can get agreement to that.  Right, Counsel?

19        MR. DORNETTE:  Absolutely, Your Honor.

20        MS. GENTRY:  Yes, Your Honor.

21        THE COURT:  And all counsel also are probably

22   painfully aware that the courts will protect the franchise.

23        So the first step would be, in my mind, to have a

24   mediation.  Either I can conduct the mediation, or I can

25   get one of my colleagues on the bench to conduct the

1    mediation, or I can get an outside mediator like Professor

2    Foley, who is an expert in election law, to conduct the

3    mediation, or perhaps Dean Rogers, who does mediations and

4    who is an expert on mediations and was former acting

5    attorney general.  I can get someone of that stature to

6    conduct the mediation on behalf of the Court for anyone who

7    would be concerned that the same person who was presiding

8    over the case is also presiding over the mediation.

9         So there are any number of expert mediators who

10   would be willing to do it.  I could provide a list of names

11   in the event that -- I don't know Professor Foley's

12   political affiliation.  I don't know Dean Roger's political

13   affiliation.  I just know their expertise and that they are

14   preeminent in their respective fields, and their fields

15   touch on these issues.  I would be willing to hear

16   someone's argument if they objected to either of the

17   mediators, if someone had some jurisprudential concerns or

18   some concerns that might touch upon the appearance of

19   impropriety or unfairness.

20        Then, assuming that we can't get the issue resolved

21   by mediation, then we would hold arguments.  We can set a

22   tentative schedule now so people will know what they have

23   to look forward to, or we can set a tentative mediation

24   schedule now.  I do think that mediation should be a part

25   of this calculus before we go forward either appealing this

23

 1    to the Sixth Circuit or having an oral argument in my court

 2    on these matters.

 3          Ms. Gentry, your position?

 4          MS. GENTRY:  Your Honor, I agree that it makes sense

 5    for us to see if we can work something out without the need

 6    to further trouble the Court.  I think what we should do

 7    for now is have an opportunity for counsel to speak

 8    together.  We may be able to agree on certain things,

 9    including a mediator.  It would make sense to have us talk

10    to each other and get back to the Court with another status

11    conference.

12          THE COURT:  Mr. Dornette?

13          MR. DORNETTE:  I obviously cannot guarantee that my

14    clients would be interested in the mediation or the

15    discussions, but certainly we'll have a conversation with

16    them.  We'll certainly be happy to participate in what

17    Ms. Gentry is talking about.

18          THE COURT:  Can I ask you something without your

19    disclosing any client secrets or confidences?  Is there any

20    particular reason that you believe that your clients would

21    not be interested in trying to negotiate what they wanted

22    the Supreme Court to give them?

23          MR. DORNETTE:  Your Honor, I don't know if they will

24    or don't know if they won't, but I just want to make sure

25    that I do not lead the Court on if they were to decide that

```
 1      was not the route they wanted to take.

 2              THE COURT:  I understand that.  I just thought that

 3      maybe there was something of which I was unaware that would

 4      lead your clients to take a rather unusual position that

 5      "we don't want to settle and get what we want."  That's

 6      just anathema to me.  I've been on the bench at least

 7      fifteen years.  You don't know they won't get what they

 8      want, but it almost seems that you're saying that there is

 9      a possibility they may only want to get what they want

10      through the court; they don't want to get what they want

11      through negotiations with the other side.

12              Did I misunderstand what you were saying?

13              MR. DORNETTE:  I think that you -- I just don't

14      know, but I think you have described what I said

15      accurately.

16              THE COURT:  Mr. Epstein?

17              MR. EPSTEIN:  Yes, Your Honor.  I'm sorry, what was

18      the question?

19              THE COURT:  Unfortunately, you aren't in law school,

20      so you can't take a pass.

21              MR. EPSTEIN:  I, at least, appreciate the

22      opportunity to be on the record.

23              THE COURT:  It's bad that you and Ms. Vest and

24      Ms. Corn and Mr. Leiberman have kind of just not had an

25      opportunity to have an active role, but my question is:  Do
```

```
 1    you have any objection to the game plan that I set out?

 2          MR. EPSTEIN:  We don't have any objection, Your

 3    Honor.  I do think what Ms. Gentry is suggesting makes some

 4    sense, that at least the parties talk to find out how close

 5    the respective concerns about the consent decree are, or

 6    whether they're pointing in such diametrically opposed

 7    directions that the mediation might be futile.  I think it

 8    makes sense to have that conversation first before we

 9    commit to anything else.

10          THE COURT:  Ms. Corn?

11          MS. CORN:  I agree with what Mr. Epstein said.  We

12    don't object to the game plan, but I think it would be a

13    good idea for the parties to talk to each other to see how

14    far apart we are.

15          THE COURT:  I agree.  Given that, then, why don't we

16    schedule our next status conference for Wednesday the 16th.

17          MS. GENTRY:  Your Honor, this is Ms. Gentry.  I am

18    unavailable from 2:30 to 4 that day, but otherwise

19    available.

20          THE COURT:  Mr. Dornette, would later in the

21    afternoon be better for you, to give you more time to talk

22    with your clients?

23          MR. DORNETTE:  Your Honor, I think by Wednesday

24    whatever time works for you and for the others will be

25    fine.
```

```
 1              THE COURT:  Okay.  Ms. Gentry, you said you're

 2    unavailable from 2:30 to 4?

 3              MS. GENTRY:  Yes, Your Honor.

 4              THE COURT:  Let's do it at -- when will you be

 5    available after four, Ms. Gentry?

 6              MS. GENTRY:  Your Honor, I could be available right

 7    at four o'clock.

 8              THE COURT:  We'll make it a four o'clock status

 9    conference, then.

10              MS. GENTRY:  Thank you, Your Honor.

11              MS. CORN:  Your Honor, this is Ms. Corn.  I take it

12    we'll be on the phone again.

13              THE COURT:  Yes.  I don't want all of you to have to

14    travel here unless we're going to be conducting some

15    business that we couldn't otherwise conduct telephonically.

16              So, in the meantime, Mr. Dornette, your clients,

17    pursuant to my order, will dismiss without prejudice the

18    mandamus action.  We will have a status conference next

19    Wednesday, the 16th, at four o'clock, telephonically, to

20    discuss next steps.  Then, in the interim, the Court will

21    file its written opinion by close of business tomorrow, and

22    counsel will talk among themselves to see if it can be

23    resolved informally.  You will understand that my position

24    is going -- and I want you to know I can be persuaded

25    otherwise, which is the purpose of the status conference,
```

```
 1    but just so that you will know as you're advising your

 2    clients, Ms. Gentry, Mr. Dornette, Mr. Epstein and

 3    Ms. Corn, my position is going to be, first, there be a

 4    mediation.  Then, if mediation doesn't resolve it, then

 5    we'll continue litigation.

 6          MR. DORNETTE:  Thank you, Your Honor.

 7          THE COURT:  So that there's no misunderstanding,

 8    Mr. Dornette, I don't know whether there is still time this

 9    afternoon for you to dismiss the lawsuit without prejudice

10    because it's five o'clock now.  I would imagine that the

11    Supreme Court's clerk's office is closed.

12          MR. DORNETTE:  I believe it is closed, Your Honor,

13    and the last I knew they did not accept electronic filing.

14          THE COURT:  Right.  They open tomorrow at 8:30, but

15    I'm not sure.  I want it dismissed without prejudice first

16    thing tomorrow morning, so by nine.

17          MR. DORNETTE:  Thank you, Your Honor.

18          THE COURT:  And would you file the dismissal

19    papers -- would you file with this court, Mr. Dornette,

20    time stamped copies of the dismissal papers?

21          MR. DORNETTE:  We shall, Your Honor.

22          THE COURT:  Thank you very much.  Are there any

23    other matters we need to take up from the plaintiffs,

24    Ms. Gentry?

25          MS. GENTRY:  Two quick questions.  One is whether
```

1    the Court will file an order today.  I understand the

2    opinion will be tomorrow, but just an order on the

3    injunctive relief.

4         And the second question is, if a stipulated

5    dismissal is required because an answer has been filed,

6    whether the Court's order also contemplates the Secretary

7    of State will agree to a stipulated dismissal.

8         MR. EPSTEIN:  Your Honor, this is Mr. Epstein.  As

9    to the second question, we will stipulate to the dismissal

10   without an order from the Court.

11        THE COURT:  All right.

12        Anything else, Ms. Gentry?

13        MS. GENTRY:  Yes, Your Honor, whether the Court will

14   file an order today on the injunctive relief issue?

15        THE COURT:  Well, the fact that my order is on the

16   record is sufficient and my -- it will be docketed today.

17        MS. GENTRY:  Thank you, Your Honor.

18        THE COURT:  So it will be docketed today.

19        MS. GENTRY:  Nothing else from the plaintiffs.

20        THE COURT:  Any other questions from the relators,

21   Mr. Dornette?

22        MR. DORNETTE:  No, Your Honor.  Thank you.

23        THE COURT:  Mr. Epstein, anything further from you?

24        MR. EPSTEIN:  No, Your Honor.

25        THE COURT:  Ms. Corn, from you?

29

1          MS. CORN:  No, Your Honor.

2          THE COURT:  Listen, thank you, everyone, for your

3     patience and helping to work through this.  I will talk to

4     everyone on Wednesday.  Thank you.

5       (Proceedings concluded at 5:07 p.m.)

6                          –  –  –

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>C E R T I F I C A T E</u>

    I, Shawna J. Evans, do hereby certify that the foregoing is a true and correct transcript of the proceedings before the Honorable Algenon L. Marbley, Judge, in the United States District Court, Southern District of Ohio, Eastern Division, on the date indicated, reported by me in shorthand and transcribed by me or under my supervision.


                        <u>s/Shawna J. Evans</u>
                        Shawna J. Evans, RMR
                        Official Federal Court Reporter