# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Leonard Green
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  August 30, 2012

Mr. Subodh Chandra
1265 W. Sixth Street, Suite 400
Cleveland, OH 44113

Mr. Richard N. Coglianese
Mr. Erick D. Gale
Office of the Ohio Attorney General
Constitutional Offices Section
30 E. Broad Street, 16th Floor
Columbus, OH 43215

Ms. Caroline H. Gentry
Porter, Wright, Morris & Arthur
One S. Main Street
Suite 1600 One Dayton Centre
Dayton, OH 45402

Mr. H. Ritchey Hollenbaugh
Carlile, Patchen & Murphy
366 E. Broad Street
Columbus, OH 43215

Mr. Lawrence B. Hughes
Porter, Wright, Morris & Arthur
41 S. High Street, Suite 3200
Columbus, OH 43215

Re:  Case Nos. 11-3035/3036/3037, *NE OH Coalition for Homeless, et al v. Secretary of State of Ohio*
Originating Case No. : 2:06-CV-896

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Leonard Green, Clerk

Cathryn Lovely
Deputy Clerk

cc:   Clerk of the U.S. District Court for the Southern District of Ohio

Enclosures

Mandate to issue.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0295p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

**11-3035/3036**

NORTHEAST OHIO COALITION FOR THE
HOMELESS; SERVICE EMPLOYEES
INTERNATIONAL UNION, LOCAL 1199,
      *Plaintiffs-Appellees/Cross-Appellant,*

KYLE WANGLER; COLUMBUS COALITION FOR
THE HOMELESS,
      *Plaintiffs,*

OHIO DEMOCRATIC PARTY,
      *Intervenor,*

    v.

SECRETARY OF STATE OF OHIO,
      *Defendant,*

STATE OF OHIO,
      *Intervenor-Appellant/Cross-Appellee.*

Nos. 11-3035/3036/3037

**11-3037**

NORTHEAST OHIO COALITION FOR THE
HOMELESS, SERVICE EMPLOYEES
INTERNATIONAL UNION, LOCAL 1199,
      *Plaintiffs-Appellees,*

    v.

SECRETARY OF STATE OF OHIO,
      *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:06-cv-896—Algenon L. Marbley, District Judge.

Argued: April 20, 2012

Decided and Filed: August 30, 2012

Nos. 11-3035/3036/3037    *NE OH Coal. for Homeless, et al. v. Sec'y of State of*    Page 2
                                          *OH, et al.*

Before:  MOORE, GIBBONS, and ALARCÓN, Circuit Judges.[*]

_____

**COUNSEL**

**ARGUED:** Erick D. Gale, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellant/Cross-Appellee.  L. Bradfield Hughes, PORTER, WRIGHT, MORRIS & ARTHUR LLP, Columbus, Ohio, for Appellees/Cross-Appellants.  **ON BRIEF:** Erick D. Gale, Richard N. Coglianese, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellant/Cross-Appellee in cases 11-3035/3036 and Appellant in 11-3037.  L. Bradfield Hughes, PORTER, WRIGHT, MORRIS & ARTHUR LLP, Columbus, Ohio, Caroline H. Gentry, PORTER WRIGHT MORRIS & ARTHUR LLP, Dayton, Ohio, Subodh Chandra, THE CHANDRA LAW FIRM, LLC, Cleveland, Ohio, H. Ritchey Hollenbaugh, CARLILE PATCHEN & MURPHY LLP, Columbus, Ohio, for Appellees/Cross-Appellants in cases 11-3035/3036 and Appellees in 11-3037.

GIBBONS, J., delivered the opinion of the court in which MOORE and ALARCÓN, J.J., joined.  MOORE, J. (pg. 21), also delivered a separate concurring opinion.

_____

**OPINION**

_____

JULIA SMITH GIBBONS, Circuit Judge.  In 2006, Plaintiffs-appellees/Cross-appellants Northeast Ohio Coalition for the Homeless ("NEOCH") and Service Employees International Union, Local 1199 ("SEIU") brought an action under 42 U.S.C. § 1983 against then Ohio Secretary of State J. Kenneth Blackwell challenging several provisions of Ohio's 2006 Voter ID law.  The parties negotiated consent orders in 2006 and 2008.  In 2009, NEOCH and SEIU filed a motion for attorneys' fees with respect to the 2008 orders, which the district court granted.  The Ohio Secretary of State appealed the fee and cost award, and the parties ultimately negotiated a consent decree signed by the district court in April 2010.  In June 2010, the plaintiffs filed another motion for

_____

[*]The Honorable Arthur L. Alarcón, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

attorneys' fees and costs, this time for work performed (1) regarding prior motions for attorneys' fees submitted in the litigation, (2) during the appeal of the award of attorneys' fees, and (3) negotiating the consent decree.  The district court granted the motion in part, but because it found that the motion regarded a supplemental fee request, it reduced the fee award to three percent of the award granted in the main case pursuant to *Coulter v. Tennessee*, 805 F.2d 146 (6th Cir. 1986).

On appeal, the State of Ohio and the Ohio Secretary of State argue that the 2010 consent decree was a settlement in full of all of the plaintiffs' claims, thus waiving any subsequent claim for further attorneys' fees.  The plaintiffs cross-appeal, arguing that the district court erred in applying *Coulter* to limit their supplemental fee award.  For the following reasons, we affirm.

## I.

This appeal over an award of attorneys' fees stems from litigation over Ohio's voter identification laws, passed in 2006, which culminated in a consent decree entered into by the parties in 2010.  Although the parties' appeal and cross-appeal focus on the consent decree and the district court's grant of the motion for attorneys' fees filed after the consent decree was entered, the parties' arguments are premised in part on an understanding of the factual and procedural background leading up to the consent decree.

In 2006, NEOCH and SEIU brought an action under 42 U.S.C. § 1983 against then Ohio Secretary of State J. Kenneth Blackwell in his official capacity seeking to have portions of the Ohio "new voter-identification laws" declared unconstitutional.  On November 1, 2006, the parties entered into a consent order, which governed the November 2006 general election and provided specific guidance and clarification to County Boards of Elections regarding identification procedures.  An enforcement order was entered on November 14, 2006, after it was discovered that some Board of Election employees failed to follow the provisions of the consent order.

On January 4, 2008, the plaintiffs filed a motion under 42 U.S.C. § 1988 and 28

Nos. 11-3035/3036/3037  *NE OH Coal. for Homeless, et al. v. Sec'y of State of*  Page 4
                        *OH, et al.*

U.S.C. §§ 1821 and 1920 for attorneys' fees and costs which were incurred in relation to the November 2006 consent order and the November 2006 enforcement order. Over the defendants'[1] opposition, on September 30, 2008, the district court granted the plaintiffs' motion for attorneys' fees pending a hearing to determine a reasonable fee award.

Prior to the November 2008 election, the plaintiffs sought leave to file a proposed supplemental complaint, citing concerns that the County Boards of Elections would continue to apply inconsistent standards to their evaluation of provisional ballots, and also requested a preliminary injunction to prevent the enforcement of the voter identification laws in the 2008 election. In order to settle the ongoing litigation, then Ohio Secretary of State Jennifer Brunner issued Directive 2008-101, which provided guidelines for Ohio's "boards of election in processing and counting provisional ballots." By agreement of the parties, the district court issued an order on October 24, 2008, which adopted the directive. The court also issued an additional order on October 27, 2008, which addressed the effect of poll worker error on the counting of provisional ballots and instructions regarding acceptable addresses for persons without a permanent addresses.

On January 20, 2009, the plaintiffs filed their second motion for attorneys' fees and costs. The second motion requested fees and costs related to procuring the October 2008 orders as well as fees reasonably related to the orders. On July 28, 2009, the district court granted the second motion for attorneys' fees and costs and also awarded reasonable attorneys' fees and costs relating to the first motion for fees and costs. In total, the district court awarded $474,418.50 in attorneys' fees and $29,995.61 in costs and expenses.

The State of Ohio, as intervenor-defendant, appealed the award of attorneys' fees to this court. The parties subsequently began to work with the office of the circuit

---

[1] "Defendants" refers to Jennifer Brunner, the then Ohio Secretary of State and the State of Ohio, as intervenor-defendant.

mediator in an effort to resolve the appeal.[2]  The district court approved and entered a
consent decree on April 19, 2010.  The parties included the following explanation of the
decree in the preamble:

> The parties, desiring that this action be settled by an appropriate
> Consent Decree . . .  and without the burden of protracted litigation,
> agree to the jurisdiction of this Court over the parties and the subject
> matter of this action.  Subject to this Court's approval of this Decree, and
> subject to the continuing validity of this Decree if it or its terms are
> challenged in any other court, the parties waive a hearing and findings of
> fact and conclusions of law on all issues, and further agree to the entry
> of this Decree as final and binding among and between themselves as to
> the issues raised in the Plaintiffs' Complaint and Supplemental
> Complaint, and the matters resolved in this Decree.
>
> This Decree, being entered with the consent of the parties, shall
> in no way constitute an adjudication or finding on the merits of Case No.
> 2:06-CV-896, nor be construed as an admission by the Defendants of any
> wrongdoing or violation of any applicable federal or state law or
> regulation.
>
> In resolution of this action, the parties hereby AGREE to, and the
> Court expressly APPROVES, ENTERS, and ORDERS, the following
> . . . .

The consent decree provided for general injunctive relief, including (1) the
adoption of Directive 2008-80 issued by the Ohio Secretary of State as an order of the
district court, and (2) the agreement that the Secretary of State would instruct the County
Board of Elections to follow agreed-upon rules governing the casting and counting of
provisional ballots for persons lacking identification other than a social security number.
The consent decree further provided that the Secretary of State "shall issue a Directive
to all Boards of Elections that sets forth the text of the injunctive relief described . . . ."
The consent decree also provided that it was to remain in effect until June 13, 2013, and
that "[a]ny of the parties may file a motion with the Court to modify, extend or terminate
this Decree for good cause shown."  Finally, the consent decree contained a

---

[2]Although the appeal was taken from the award of attorneys' fees, the mediation discussions and
subsequent negotiations of a consent decree included efforts to resolve substantive issues raised in the
plaintiffs' complaint and provide for injunctive relief.

Nos. 11-3035/3036/3037    *NE OH Coal. for Homeless, et al. v. Sec'y of State of*    Page 6
                                           *OH, et al.*

"miscellaneous provision[ ]" where the parties agreed that within sixty days of the decree's entry the Secretary of State "shall pay to counsel for Plaintiffs the attorneys' fees that were previously awarded by this Court, as follows: $321,942.15.51 [*sic*] to Porter Wright Morris & Arthur LLP, $99,722.58 to Carlile Patchen & Murphy LLP, and $82,749.38 to The Chandra Law Firm, LLC."

On June 3, 2010, the plaintiffs filed their third motion for attorneys' fees and costs. The motion requested attorneys' fees and costs for (1) briefing and arguing the prior fees motions, (2) opposing and settling the appeal of the district court decision granting the prior motions, and (3) "negotiating the April 19, 2010 Consent Decree which terminated th[e] litigation." The requested fees and costs covered work the attorneys engaged in between January 2009 and April 2010.

The defendants opposed the third motion for attorneys' fees and costs, arguing that the consent decree was final and binding as to the claims set forth in the complaint, and that as a result, the plaintiffs waived any opportunity to seek additional fees by entering into the consent decree. The defendants submitted affidavits from an attorney in the Secretary of State's office and an attorney in the Ohio Attorney General's Office who acted as client contact for the State of Ohio during the settlement negotiations to argue that "inclusion of a final and certain amount of attorneys' fees was a material term of the complete settlement" and the defendants "would not have agreed to settle this case if the parties had intended to leave the issue of additional attorneys' fees open or unsettled." In the alternative, the defendants argued that the motion for fees should be denied or reduced because the requested fees were unreasonable. Specifically, they argued that because the third motion was essentially a request for attorneys' fees expended in obtaining a prior award of attorneys' fees (a "fees for fees" request), the fee award should be capped at three percent of the fee award in the main case under the rule announced in *Coulter v. Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986), and that the bills submitted were unreasonable for the work required.

On November 30, 2010, the district court granted in part and denied in part the third motion for fees and costs. The district court concluded that the plaintiffs did not

waive their right to receive further attorneys' fees because the parties did not intend the consent decree to be a final disposition of all claims and found that the plaintiffs were entitled to collect an additional fee award.  The district court found the requested hours and hourly rates to be reasonable, but agreed with the defendants that the three-percent rule from *Coulter* should apply to the request for supplemental fees.  The court found that "the hours spent at all three stages of this attorneys' fees case constituted preparation for and litigation of the attorneys' fees case" and that as a result, the entire fee request was subject to *Coulter*'s three percent rule.  The district court therefore awarded fees equivalent to three percent of the award in the main case, for a total supplemental attorney fee award of $15,132.50.[3]  The court also granted plaintiffs their requested costs and expenses.

The defendants appeal the award of fees and costs.  The plaintiffs cross-appeal the supplemental fee award.

## II.

"A district court's interpretation of a consent decree or judgment is a matter of law subject to de novo review, and the underlying findings of fact are reviewed for clear error."  *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 371 (6th Cir. 1998).  We review a district court's award of attorneys' fees and costs under 42 U.S.C. § 1988 for abuse of discretion.  *Dubay v. Wells*, 506 F.3d 422, 431 (6th Cir. 2007).  An abuse of discretion is a "definite and firm conviction that the trial court committed a clear error of judgment."  *Id.* (internal quotation marks omitted).

---

[3]The fee "awards in the main case were as follows: (1) $321,942.15.51 [*sic*] to Porter Wright; (2) $99,722.58 to Carlile Patchen; and (3) $82,749.38 to the Chandra Law Firm."  Because each firm requested fees greater than the three percent cap on supplemental fee awards, the district court awarded three percent of the fee awards made in the main case to each law firm: $9,658.30 to Porter Wright, $2,991.70 to Carlile Patchen, and $2,482.50 to the Chandra Law Firm.

III.

A.

The Civil Rights Attorney's Fees Award Act (the "Fees Act"), 42 U.S.C. § 1988(b), "permits a court in its discretion to award the 'prevailing party' in a § 1983 action 'reasonable' attorney's fees as part of the costs." *Pouillon v. Little*, 326 F.3d 713, 716 (6th Cir. 2003). The Fees Act does not "bestow[ ] fee awards upon attorneys nor render[] them nonwaivable or nonnegotiable . . . ." *Evans v. Jeff D.*, 475 U.S. 720, 731–32 (1986). Thus, a prevailing plaintiff may waive attorney's fees as part of a negotiated settlement. *See id.* at 732–37. In considering whether a settlement includes a release or waiver of a claim to fees under 42 U.S.C. § 1988, we have adopted an approach that does not require the parties to reach an explicit agreement on the issue of attorneys' fees. *McCuiston v. Hoffa*, 202 F. App'x 858, 863 (6th Cir. 2006) (citing *Jennings v. Metro. Gov't of Nashville*, 715 F.2d 1111, 1114 (6th Cir. 1988)). Instead, the critical inquiry is "whether the parties intended the settlement to be a final disposition of all claims, rather than whether the parties intended to include attorneys' fees in the settlement." *Jennings*, 715 F.2d at 1114. Because the parties need not have entered into "a separate agreement on each aspect of the claim in order to have reached a settlement in full," in conducting the inquiry, "the silence of the parties regarding attorneys' fees is not controlling." *Id.* Although intent is generally a question of fact, "it may be determined by the court when the record permits only one inference." *McCuiston*, 202 F. App'x at 865 (citing *Jennings*, 715 F.2d at 1114).

In *Jennings*, we found that the settlement in question was a final disposition of all claims precluding a later request for attorneys' fees where, after the monetary settlement was paid, the district court entered a final order dismissing the action "with prejudice" which did not mention costs. 715 F.2d at 1112, 1114. In reaching this conclusion, we emphasized that the intention of the parties was to settle all claims, that one of the lawyers requesting fees admitted that he had not intended to request fees at the time of settlement (and thus that he did not intend to reserve settlement of that issue), and that the lawyer agreed to an order of dismissal with prejudice which was a final

disposition of the lawsuit.  *Id.* at 1114.  We have also previously found that a stipulated consent judgment was a comprehensive settlement in full where the terms of the judgment stated that the judgment was a "final order of the court, disposing of all remaining claims in this action."  *McCuiston*, 202 F. App'x at 861, 865.  Similarly, in *Toth v. UAW*, we found that a district court's grant of a fee award was precluded because the parties had entered into a settlement agreement which "made a final disposition of all claims, including any request for attorneys' fees, regardless of whether or not such fees were specifically mentioned in that agreement."  743 F.2d 398, 406–407 (6th Cir. 1984).  We found that the provision which provided that the "agreement constitutes the full and complete settlement of all claims, allegations, or other causes of action which relate in any manner to the allegations set forth in Count III" was the "provision of th[e] settlement most directly bearing on the fee issue."  *Id.* at 406.

## B.

The consent decree does not explicitly refer to attorneys' fees and costs incurred during the time period claimed in the plaintiffs' third motion for fees (between January 2009 and April 2010).  Instead, it only provides for the payment of "attorneys' fees that were previously awarded . . . ."  The issue of attorneys' fees seems to be an afterthought, included only in a miscellaneous provision of the consent decree, which is largely merits-focused.  Indeed, the majority of the consent decree focuses on issues relating to the substantive challenge to the procedures surrounding the implementation of the state voter ID laws and provides for injunctive relief.  The consent decree lists the purposes of the decree as ensuring that the "fundamental right to vote is fully protected for registered and qualified voters who lack the identification required by the Ohio Voter ID laws, including indigent and homeless voters," that the voters not be "required to purchase identification as a condition to exercising their fundamental right to vote," that the votes be counted "even if they are cast by provisional ballot on Election Day," and that voters will not be deprived of the right to vote because of differing interpretations of the Provisional Ballot Laws or because of poll worker error.  Because the consent decree is overwhelmingly focused on the merits and is silent as to the availability of the

Nos. 11-3035/3036/3037     *NE OH Coal. for Homeless, et al. v. Sec'y of State of*  Page 10
                                              *OH, et al.*

attorneys' fees requested in the third motion, we must consider whether the parties
intended the consent decree to operate as a final disposition of all claims.  *Jennings*, 715
F.2d at 1114.

To support their argument that the parties intended the consent decree to be a
comprehensive settlement, the defendants argue that the plain language of the decree
requires the conclusion that it was a final disposition of all claims because the preamble
refers to the desire to settle the "action . . .  without the burden of protracted litigation"
and states that the decree is "final and binding" and that the parties agree to the terms of
the consent decree "in resolution of this action."  It is true, as defendants argue, that the
scope of the consent decree is specifically defined as "final and binding . . . as to the
issues raised in the Plaintiffs' Complaint and Supplemental Complaint, and the matters
resolved in this Decree" and that the plaintiffs did request attorneys' fees in their
complaint.  However, the language in the consent decree is distinguishable from the
language in *McCuiston*—where a final disposition of all claims was found—which stated
that the consent judgment "dispos[ed] of *all remaining claims* . . . ."  202 F. App'x at
865 (emphasis added).   Similarly,  the  agreement  here  is  distinguishable  from  a
settlement agreement which stated that the defendant was "fully and forever" released
from "any and all claims, demands, damages, actions, rights of actions"—language we
found "sweeping" and that indicated the parties' intent to bar future fee awards.  *Fulford
v. Forest Hills Eagle Supermarket*,  822 F.2d 1088, 1987 WL 38035, at *1 (6th Cir.
1987) (*per curiam*) (table).   Because the language in the consent decree is limited in
scope when compared to the operative language in *McCuiston* and *Fulford*, the concern
that "allow[ing] attorney's fees to [the plaintiffs] in the face of such language would
make it impossible to devise a complete settlement of claims" is reduced.  *Id.*  Further,
a natural reading of the specific language chosen, "issues raised in the Complaint," does
not automatically lead to the conclusion that all claims are extinguished by the consent
decree.  "Issues raised" suggests claims or the counts raised in the complaint, and not
necessarily the relief prayed for in a complaint.

The defendants contend that to distinguish the specific language referring to the

decree as "final and binding among and between themselves as to the issues raised in the Plaintiffs' Complaint and Supplemental Complaint," from the language in *McCuiston*, which stated that the stipulated consent judgment was a "final order of the court, disposing of all remaining claims in this action," 202 F. App'x at 865, is to make a "hyper-technical distinction without any meaning." Appellants' Br. at 31. However, we must consider the specific terms of any settlement when determining whether the parties intended to make a final disposition of all claims. *See McCuiston*, 202 F. App'x at 865 (finding a comprehensive settlement where consent judgment contained language stating that it "dispose[d] of 'all remaining claims'"); *Toth*, 743 F.2d at 406 (finding provision stating that settlement agreement "constitutes the full and complete settlement of all claims" probative on fee issue); *Jennings*, 715 F.2d at 1114 (noting that parties agreed to terms that called for an order of dismissal with prejudice). It makes little sense to argue that specific word choices should not be viewed as probative and potentially significant when the terms of a relevant settlement agreement are key to shedding light on the intent of the parties. Here the words chosen are at least somewhat more specific and limited than those used in other settlement agreements where final dispositions of all claims have been found.

The defendants cite *In re Lybarger*, 793 F.2d 136, 138 (6th Cir. 1986), to support their argument that the inclusion of language referring to the parties' desire to settle the action "without the burden of protracted litigation" demonstrates the intent of the parties to resolve all claims. In *Lybarger*, we found that a plaintiff waived her right to appeal an order denying an application for supplemental attorney's fees where the consent decree specifically stated that the parties were "desirous of settling these matters without further litigation" and provided that the parties would attempt to agree on a fee award and if they failed to do so, the plaintiff's lawyer would submit his fee request to the district court which would make a final and non-appealable decision on fees. 793 F.2d at 137–38. When the district court denied plaintiff's attorney's request for supplemental fees, the plaintiff attempted to argue that the consent decree only prohibited appeal of the district court's decision regarding fees incurred in connection with the merits and in

preparation of the original application for fees. We rejected reading the language of the consent decree so narrowly as to allow appeal of the district court decision on supplemental fees. *Id.* at 138. But unlike the case at hand, the decision in *Lybarger* focused on whether or not the plaintiff waived the right to *appeal* the district court decision regarding a *supplemental* fee award, not whether the right to request the supplemental fee award itself was precluded. *Lybarger* is thus of little help to the defendants.

The affidavits submitted by both parties are consistent with each side's purported intentions regarding attorneys' fees when negotiating the consent decree. Ohio law allows the consideration of extrinsic evidence regarding an ambiguous term in a contract or consent decree. *See Seals v. Gen. Motors Corp.*, 546 F.3d 766, 771 (6th Cir. 2008); *Waste Mgmt. of Ohio, Inc. v. City of Dayton*, 169 F. App'x 976, 988–89 (6th Cir. 2006). Here, the extrinsic evidence offered is confined to the parties' statements regarding what they intended to negotiate for during the consent decree negotiations and what they believed they were agreeing to under the terms of the consent decree.[4] The affidavits simply reflect the fact that the parties had competing goals in forming the decree and possessed differing conceptions as to whether the decree was to extinguish all further claims for fees; they do not demonstrate that the parties explicitly discussed whether or not supplemental fees would be available. Thus, the affidavits do not provide substantial assistance in determining whether the consent decree was intended as a final disposition of all claims.

The parties also disagree as to the import of the fact that the consent decree

---

[4]The defendants argue that the affidavits from plaintiffs' counsel are not probative of intent and provide no evidence to contradict their view of the settlement negotiations precisely because they are affidavits from *counsel* and not from the *prevailing party* (NEOCH and SEIU). The defendants contend that *Venegas v. Mitchell*, 495 U.S. 82, 88 (1990), establishes that the prevailing party, not the lawyer, is the one eligible for the attorney fee award and that only the prevailing party possesses the right to waive, settle, or negotiate their eligibility for an attorney fee award. However, *Venegas* did not confront the question of whether an attorney affidavit is inappropriate extrinsic evidence for a court to consider in evaluating whether a consent decree was intended to be a full disposition of all claims. Further, in *Jennings*, we cited an admission of the plaintiff's lawyer to support our finding that the settlement was a final disposition of all claims. 715 F.2d at 1113–14. We also noted that the district court accepted the truthfulness of affidavits provided by the defendants' attorneys regarding the settlement agreement entered into by the parties. *Id.* at 1113.

contained language allowing for modification, extension, and termination of the decree for good cause, as well as the fact that the decree was only to remain in effect until June 30, 2013.  The district court found that because the parties agreed to allow for modification and extension of the agreement, the consent decree was further distinguishable from the consent judgment in *McCuiston*, which "did not allow the parties to seek to modify or extend the terms of the agreement and contained no qualifiers as to the scope of the consent judgment's terms."  The defendants contend that because a consent decree is a settlement agreement subject to continued judicial oversight, it is standard to include termination dates and that the ability to modify a consent decree should not preclude finding a settlement in full.

It is true that a consent decree is a "settlement agreement subject to continued judicial policing."  *Vanguards of Cleveland v. City of Cleveland*, 23 F.3d 1013, 1017 (6th Cir. 1994) (internal quotation marks omitted).  In that sense, the defendants are correct that the ability to modify a consent decree should not prevent a finding of a settlement in full.  However, it is also true that the fact that the *district court* retains the power to modify or police a consent decree is different from the affirmative decision to include a provision that allows *any party* to move to "modify, extend, or terminate" the decree for good cause.  The fact that the decree expressly provides for modification or extension by the parties for good cause does provide some, albeit limited, support for reading the decree as providing for something less than a final disposition of all claims. If the parties truly thought that the decree worked a final disposition of all claims, they might have opted not to include the language regarding modification or extension and simply relied on the default rule allowing for continued judicial policing and modification.

The defendants finally argue that construing the consent decree to be anything but a final disposition of all claims would set a dangerous precedent because it would make states wary of entering into consent decrees.  We disagree with such a broad assertion.  The potential impact of our construction is merely to incentivize prudent parties to exercise care in drafting settlement agreements and encourage them to ensure

that the language they choose clearly indicates whether they intend a final disposition
of all claims.  In the consent decree at issue, the defendants could have negotiated for the
addition of a single sentence to the miscellaneous provisions section stating that the
agreement regarding attorneys' fees previously awarded constitutes the entire agreement
regarding fees and costs and that it disposes of any and all existing or future requests for
attorneys' fees and costs, or the defendants could have requested language in the
preamble that clearly states that *all* remaining claims are extinguished by the consent
decree.  They simply did not do so.

Accordingly, because the language of the consent decree contains both broad
language and language limiting its scope, it is distinguishable from other consent decrees
or settlements where a final disposition of all claims has been found on the basis of clear
and broad language.  The affidavits in the record do not clarify matters so as to permit
a single inference that the parties intended a final disposition of all claims.  As a result,
we conclude that the plaintiffs did not waive their right to petition for supplemental fees
and costs.

IV.

In their cross-appeal, the plaintiffs essentially challenge two aspects of the
district court's grant of supplemental attorneys' fees and costs.  First, the plaintiffs argue
that although the district court correctly found that they are entitled to an attorneys' fees
award, the district court erred in applying the three percent cap from *Coulter* to limit the
fee award because the "unusual circumstances" exception to the rule renders the three
percent rule inapplicable to the supplemental fees award.  They also contend that the
"three percent rule" from *Coulter* should be reexamined because it leads to severe
consequences and because a rigid misapplication of *Coulter* is inconsistent with the
intent of Congress in passing the Fees Act, which was to provide an economic incentive
for attorneys to take on meritorious civil rights cases.  Second, they argue that even if
*Coulter* is correctly applied to *some* of the work that provided the basis for the third
motion for fees and costs, the district court erroneously applied *Coulter* to *all* of the
work underlying their third motion.

Nos. 11-3035/3036/3037    *NE OH Coal. for Homeless, et al. v. Sec'y of State of*  Page 15
                              *OH, et al.*

A.

"Although time spent in preparing, presenting, and trying attorney fee applications is compensable; some guidelines and limitations must be placed on the size of the[ ] fees.  Otherwise the prospect of large fees later on may discourage early settlement of cases by rewarding protracted litigation of both the civil rights case and the attorney fee case." *Coulter*, 805 F.2d 151.  Because the "attorney fee case is not the case Congress expressed its intent to encourage[,] . . . in order to be included, it must ride piggyback on the civil rights case." *Id.*  We established a general rule that "[i]n the absence of unusual circumstances, the hours allowed for preparing and litigating the attorney fee case should not exceed 3% of the hours in the main case when the issue is submitted on the papers without a trial and should not exceed 5% of the hours in the main case when a trial is necessary." *Id.*  Subsequent cases have applied and affirmed the controlling nature of the *Coulter* three percent rule.  *See Gonter v. Hunt Valve Co.*, 510 F.3d 610, 620–21 (6th Cir. 2007); *Auto Alliance Int'l, Inc. v. U.S. Customs Serv.*, 155 F. App'x 226, 229 (6th Cir. 2005).

B.

The plaintiffs argue that we should reexamine *Coulter*, largely because they contend that *Coulter*'s three percent rule is in tension with *Weisenberger v. Huecker*, 593 F.2d 49 (6th Cir. 1979).  The plaintiffs argue that we should return to the principles espoused in *Weisenberger*.  In *Weisenberger*, we found that the district court erred in denying prevailing plaintiffs requested attorneys' fees and costs incurred in pursuing their attorneys' fees awards in two § 1983 cases and awarded the plaintiffs ninety percent of the hours submitted in their supplemental request.  593 F.3d at 54 & n.12.  However, in *Weisenberger*, we were focused on applying the recently passed Fees Act and determining whether, under the Fees Act, attorneys' fee awards should include an award for time spent pursuing attorneys' fees.  *Id.* at 53–54.  *Weisenberger* predated *Coulter*, which found, consistent with *Weisenberger*, that attorneys are entitled to attorneys' fees for preparing and litigating the attorneys' fees case—but also found that a limiting principle was necessary to prevent the pursuit of such supplemental fee awards

from subverting Congress's intent in passing the Fees Act, which was "to encourage
lawyers to bring successful civil rights cases, not successful attorney fee cases."
*Coulter*, 805 F.2d at 151.

Although the supplemental fee award granted by this court in *Weisenberger* is
likely greater than that which would have been awarded under *Coulter*,[5] the two cases
are easily reconciled.    *Coulter* elaborates upon and develops the law surrounding
attorney fee cases, which *Weisenberger* acknowledged are recoverable under the Fees
Act.  As noted above, we have followed *Coulter*, a published case, in both published and
unpublished cases.  *Coulter* itself also provides that in "unusual circumstances" the cap
on the supplemental fee award at three percent of the hours in the main case (or five
percent if the main case goes to trial) will not apply.  *Coulter*, 805 F.2d at 151.  Thus,
*Coulter* would not necessarily or automatically preclude the fees granted in
*Weisenberger*.  Because this is not a case where a later decision conflicts with an earlier
one, *see Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985),
we cannot revisit *Coulter* here.

Although the plaintiffs argue that it is unlikely that attorneys will continue to act
as private attorneys general in taking on civil rights suits "if they will be compensated
for only a tiny fraction of every 100 hours that they reasonably spend briefing legitimate
fee requests, defending appeals of fee awards, and negotiating lengthy and detailed
consent decrees," this argument overstates the impact of the *Coulter* rule.  The plaintiffs
are correct that any cap on attorneys' fees *might* discourage attorneys from taking on
civil rights cases, but the Fees Act itself presumes that the award in the main case
provides sufficient incentive for attorneys.    And as *Coulter* explains, while the
availability of an award of fees for defending fee awards provides additional protection
for such lawyers, this needs to be balanced against the unwanted incentives that could

---

[5]It appears that the supplemental fee award granted in *Weisenberger* would likely exceed the
three percent cap established in *Coulter*.  The cases were decided without trial, *see Milburn v. Huecker*,
500 F.2d 1279 (6th Cir. 1974), and the district court awarded $2,500.00 and $2,000.00 to the respective
plaintiffs for attorneys' fees in the main cases.  *Weisenberger*, 593 F.2d at 51.  This court awarded the
plaintiffs $5,096.00 for defending their fee award on appeal.  *Id.* at 54.

result from protracted litigation seeking fees for fees.  Moreover, the plaintiffs err in
arguing that attorneys will only receive a tiny fraction of every 100 hours they work on
their attorneys' fees cases.  The *Coulter* rule focuses on the hours spent on the main case.
Thus, in a particularly complicated and lengthy main case, an attorney may be able to
recover all of the claimed hours spent on the attorneys' fees case.

The plaintiffs argue that even if the panel declines to reexamine *Coulter*, the
*Coulter* rule should not apply to their third motion for fees and costs because "unusual
circumstances" exist which render the three percent cap inapplicable.  In essence, the
plaintiffs argue that the protracted and complicated nature of the litigation on the merits,
as well as the significant challenges to the fee requests mounted by the defendants,
demonstrate unusual circumstances distinguishable from the case in *Coulter*, which the
district court characterized as a "simple" case.

We have previously rejected an argument that "'protracted' fee litigation [in the
district court] is itself an unusual circumstance justifying a larger recovery . . . ."  *Auto
Alliance*, 155 F. App'x at 229.  However, we have also found the three percent cap on
fees for fees inappropriate where the losing party engaged in "protracted and needless
appellate litigation" because granting fees would discourage the losing party from
engaging in the kind of protracted fees for fees litigation *Coulter* sought to limit.  *Lamar
Adver. Co. v. Charter Twp. of Van Buren*, 178 F. App'x 498, 502 (6th Cir. 2006).

Although the litigation over the fees award in this case involved a somewhat
unusual procedural history and the main case was arguably more complex than the one-
day bench trial involved in *Coulter*, the district court did not abuse its discretion in
capping the supplemental fee award at three percent.  The district court necessarily has
a "superior understanding of the litigation."  *Hensley v. Eckerhart*, 461 U.S. 424, 437
(1983).  And here, the district court did not find that the actions of the defendants in
appealing the fee award justified a finding of "unusual circumstances."  Although the
defendants' appeal did prolong the fee litigation, there is no indication that the appeal
was needless or meritless.  The defendants opposed the original motion for fees on
several grounds that do not appear to be frivolous.  For example, the defendants opposed

the original fees motion, arguing in part that if the district court were to find that the plaintiffs were prevailing parties, the court should still reduce any fee award to reflect the plaintiffs' less-than-complete degree of success.  The district court agreed with this argument and noted in its analysis of a reasonable fee award that the "Plaintiffs' success . . . is not as broad as they have characterized it" and, in light of the partial success, that "the lodestar amount may be reduced because attorney's fees are not typically awarded for unsuccessful claims."  As a result, the district court granted a hearing on the reasonableness of the claimed fees, which both parties had requested.  The district court also agreed with some of the defendants' further objections to the plaintiffs' fee requests in its analysis of the first and second motions for fees and costs.  The court reduced the hours claimed by the plaintiffs and also applied a twenty percent reduction to the lodestar amount in recognition of its finding that the plaintiffs achieved less-than-total success on all of their claims.  Therefore, the defendants' initial challenges to the fee awards were not frivolous, and it is unlikely that their decision to appeal the district court's fee award for the first and second fee requests was needless, given that some of their objections to the plaintiffs' claims were already recognized by the district court as reasonable.  This is distinguishable from the situation in *Lamar Advertising*, where the losing defendant had engaged in a needless appellate challenge to the fee award.  178 F. App'x at 502.  Thus, the district court's decision to apply *Coulter*'s three percent rule to the supplemental fee award does not lead to a "definite and firm conviction that the trial court committed a clear error of judgment."  *Dubay*, 506 F.3d at 431 (internal quotation marks omitted).

C.

In their final challenge to the district court's partial grant of their third motion for costs and fees, the plaintiffs argue that the district court abused its discretion when it applied *Coulter* to all of the work for which they sought to be compensated in the third motion.  The district court found that all three stages of work claimed in the third motion for fees "constituted preparation for and litigation of the attorneys' fee case" and as a result, applied the *Coulter* three percent rule to all of the hours claimed in the third

motion.  The plaintiffs argue that the time spent defending their main case fee award on
appeal and the time spent negotiating the consent decree should not be considered time
spent preparing and litigating the attorney fee case and that *Coulter* should not apply to
cap their fee award for the hours claimed for those hours.[6]

The district court did not abuse its discretion in finding that the time spent
opposing and settling the appeal of the fee award for the main case was time spent
preparing and litigating the attorney fee case.  The plaintiffs argue that *Weisenberger* and
*Lamar Advertising* demonstrate that  prevailing plaintiffs should be able to recover fees
incurred defending main case fee awards on appeal.  However, *Weisenberger* predated
*Coulter*'s limitation on the total possible recovery and does not support the proposition
that a deviation from *Coulter* is appropriate when a plaintiff must defend a fee award on
appeal.  Further, *Lamar Advertising* actually notes that fees for fees are available for
litigation "on the fee request at both the lower court level and at the appellate level."
178 F. App'x at 502.  While we did not apply the *Coulter* rule to limit the fees the
plaintiffs requested in *Lamar Advertising* for hours their attorneys spent defending their
fee award, our decision was premised not upon the mere fact that time was spent
defending the appeal, but upon the facts that the losing party "protracted the 'fees for
fees' litigation by making spurious arguments" on appeal and engaged in "protracted and
needless appellate litigation."  *Id.*

Nor did the district court abuse its discretion in finding that the hours spent
negotiating the consent decree were hours spent preparing and litigating the attorneys'
fees case.  While the consent decree negotiations present a somewhat unique situation,
the time spent working on the decree *is* traceable to the litigation of the attorneys' fees
case.  The parties engaged in discussions with the circuit mediator only after the
defendants appealed the original fee award; accordingly, the decree negotiations—and
the inclusion of the provision that the Secretary of State would pay the entire fee award
for the main case in the consent decree—are the direct result of the appeal of the fee

---

[6]The plaintiffs do not challenge the finding that the request for fees for the time spent briefing
and arguing the first two motions for fees and costs was a supplemental fees request.

award.  The negotiations which led to the inclusion of the provision regarding payment
of fees previously awarded are thus traceable to litigation in pursuit of obtaining fees and
the district court did not abuse its discretion in finding that the hours spent negotiating
the consent decree are properly limited by the *Coulter* three percent rule.

V.

For the foregoing reasons, we affirm the judgment of the district court.

Nos. 11-3035/3036/3037    *NE OH Coal. for Homeless, et al. v. Sec'y of State of*    Page 21
                          *OH, et al.*

---

## CONCURRENCE

---

KAREN NELSON MOORE, Circuit Judge, concurring.  I write separately because I question the continued vitality of the three-percent rule in cases seeking attorneys' fees to recover the costs of pursuing fees under 42 U.S.C. § 1988.  No other circuit—to my knowledge—has adopted a bright-line rule for calculating "fees for fees" like the one we stated in *Coulter v. Tennessee*, 805 F.2d 146 (6th Cir. 1986), *cert. denied*, 482 U.S. 914 (1987).  Although I am sympathetic to the reasoning espoused in *Coulter* for such a rule, I see no justification in the statute or the legislative history for divesting the district courts of their discretion to determine whether fees for fees should be awarded and in what amount.  However, because *Coulter* is binding Sixth Circuit precedent, I concur with the majority's analysis in this case.  I also agree that the exception for unusual circumstances warranting a departure from the three-percent rule is not applicable in this case.  The parties were free to contract around *Coulter* upon realizing that the consent decree would encompass more than just settling the litigation over the attorneys' fees, just as they were free to specify clearly that the consent decree would be final as to all claims.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nos. 11-3035/3036/3037

**11-3035/3036**
NORTHEAST OHIO COALITION FOR THE HOMELESS;
SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1199,
        Plaintiffs - Appellees/Cross - Appellants,

KYLE WANGLER; COLUMBUS COALITION FOR THE HOMELESS,
        Plaintiffs,

OHIO DEMOCRATIC PARTY,
        Intervenor,

    v.

STATE OF OHIO,
        Intervenor-Appellant/Cross -Appellee.

**11-3037**
NORTHEAST OHIO COALITION FOR THE HOMELESS;
SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1199,
        Plaintiffs - Appellees,

    v.

SECRETARY OF STATE OF OHIO,
        Defendant - Appellant.

Before: MOORE, GIBBONS, and ALARCÓN, Circuit Judges.

**JUDGMENT**

On Appeal from the United States District Court
for the Southern District of Ohio at Columbus.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION WHEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_____
Leonard Green, Clerk

FILED

*Aug 30, 2012*

LEONARD GREEN, Clerk