IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1, *et al.*, | : : : : | Case No. 2:12-CV-562 |
| Plaintiffs, | : : | |
| v. | : : | JUDGE ALGENON L. MARBLEY |
| JON HUSTED, *et al.*, | : : : | Magistrate Terence P. Kemp |
| Defendants. | : : : | |
| THE NORTHEAST OHIO COALITION FOR THE HOMELESS, *et al.*, | : : : | Case No. 2:06-CV-896 |
| Plaintiffs, | : : | |
| v. | : : | JUDGE ALGENON L. MARBLEY |
| JON HUSTED, in his official capacity as Secretary of the State of Ohio, | : : : | Magistrate Judge Terence Kemp |
| Defendant. | : : | |
| and | : : | |
| STATE OF OHIO | : : | |
| Intervenor-Defendant | : : | |

**OPINION AND ORDER**

**I.  INTRODUCTION**

These are two related actions in this Court: *Service Employees' International Union, Local 1, et. al.  v. Husted, et. al.*, Case No. 2:12-cv-562 ("the *SEIU* case") and *The Northeast Ohio Coalition for the Homeless, et. al. v. Husted & State of Ohio*, Case No. 2:06-cv-896 ("the

1

*NEOCH* case"). Plaintiffs in the *NEOCH* case have filed an Emergency Motion for Clarification and for Modification of October 26, 2012 Order Regarding Scope of Section III(5)(b)(vii) of the Consent Decree. (*NEOCH* Dkt. # 349) Plaintiffs in the *SEIU* case filed a Motion for Preliminary Injunction which sought the same relief as the *NEOCH* Plaintiffs' Motion, but on different legal grounds. (*SEIU* Dkt. # 97) Plaintiffs jointly submitted a Memorandum in Support of their motions. At oral argument, on November 7, 2012, the *SEIU* Plaintiffs withdrew their Motion for Preliminary Injunction. (*SEIU* Dkt. # 102) Thus, this Opinion and Order considers only *NEOCH* Plaintiffs' motions. These motions have been fully briefed and are ripe for consideration.

## II. BACKGROUND

The interwoven factual and procedural histories of these motions have become complicated owing to the many stages of this litigation both in this Court and the Sixth Circuit. The accelerated timeline of the motions resulting from the date of the November 6, 2012 Election and the November 17, 2012 start of provisional ballot counting has increased the complexity. It is appropriate, therefore, to review briefly the origins and purposes of the Consent Decree which is the subject of these motions.

*NEOCH* Plaintiffs brought the suit which resulted in the Consent Decree in 2006. (*NEOCH* Dkt. #2) They sought to prevent Ohio's then-new voter identification laws from disenfranchising impoverished Ohioans who could not afford to purchase any of the required forms of identification. Plaintiffs alleged that the requirement essentially levied an unlawful poll tax. In order to prevent disenfranchisement of the impoverished and to avoid further costly litigation, parties voluntarily entered into a negotiated settlement, memorialized as the Consent Decree. The Consent Decree went into effect on April 19, 2010 as an Order of this Court.

(*NEOCH* Dkt. #210)  The Decree only applies to provisional voters who identify themselves using the last four digits of their social security numbers, "SSN-4 voters."  It is scheduled to remain in effect until June 30, 2013, though parties may move to extend that date.

Since the Consent Decree was entered, the litigation has gone through numerous stages, in this Court and in the Sixth Circuit.  On October 26, 2012, the Court denied *NEOCH* Plaintiffs' previous Motion to Modify the Consent Decree.  (*NEOCH* Dkt. #334)  Chiefly, Plaintiffs sought to expand the scope of the Consent Decree to all provisional ballot voters to prevent a potential violation of Equal Protection under *Bush v. Gore*, 531 U.S. 98 (2000).  Plaintiffs requested the Court order the counting of provisional ballots with deficient affirmations resulting from poll-worker error.  One issue in contention was the definition of "poll-worker error."  This Court found the Sixth Circuit's Decision of October 11, 2012 held that the voter's failure to print her name or sign the provisional ballot affirmation was not the result of poll-worker error.[1]  *NEOCH v. Husted*, ___ F.3d ___, 2012 WL 4829033 (6th Cir. October 11, 2012).

Ohio law, however, requires other information on the provisional ballot affirmation as well, including the form of identification used by the provisional voter, which is required to be recorded by a poll-worker.  Ohio Revised Code §3505.181(B)(6).  The Sixth Circuit has held that when a ballot deficiency is "solely" the result of poll-worker error, the ballot may not be rejected; otherwise' there would be a violation of the Fourteenth Amendment.  *SEIU v. Husted*, ___ F.3d ___, 2012 WL 5352484 (6th Cir. October 31, 2012) at *2.  In denying the *NEOCH* Plaintiffs' Motion to Modify the Consent Decree, this Court relied on the Sixth Circuit's holding, Section III(5)(b)(vii) of the Consent Decree, O.R.C. §3505.181(B)(6), and the Secretary's representations to this Court, all of which confirmed the Court's understanding that the Secretary

---

[1] The Sixth Circuit held that the evidentiary record at that stage of the proceeding did not substantiate poll-worker error is the cause of a voter's failure to print her name or write her signature.  If parties adduce further evidence on that matter in the future, it may be appropriate to reconsider.

would not reject a provisional ballot because a poll worker had failed in her duty to record information.[2]

Following the issuance of this Court's Order on October 26, 2012, *NEOCH* Plaintiffs filed an Emergency Motion for Clarification, on November 1, 2012.  (*NEOCH* Dkt. #346)  They sought clarification from this Court that a provisional ballot could not be rejected "because certain form-of-identification information that *poll workers* are *statutorily* required to provide is missing or incorrect."  (emphasis in original).  The Court notes that Plaintiffs attempted to contact the Secretary multiple times to hear his interpretation of this issue before filing the motion.  The Secretary never responded to Plaintiffs' inquiries until filing a response with the Court.  (*NEOCH* Dkt. #346, Exh. 1, 2)

The first notice that Plaintiffs or this Court received that the Secretary intended to reject provisional ballots with "missing or incorrect" identification information arrived around 7:00 p.m. on Friday, November 2, 2012, just four days prior to the November 6, 2012 Election.  At that time, the Secretary issued Directive 2012-54, which stated, in relevant part, "[i]f the voter did not provide identification on the provisional ballot affirmation . . . the Board must **reject the provisional ballot**."  (emphasis in the original).  The Secretary, by admission of counsel, engaged in no fact-finding which suggested such a change would improve the integrity of the voting system.  At oral argument, the Secretary was unable to provide any explanation for the change, nor provide any specific account of the process by which it occurred.  It is significant

---

[2] The Secretary represented to the Court, through counsel that, "[t]he question is what is left of the concept of poll worker error in the context of defective ballot affirmations. [Plaintiffs' counsel] suggested to [the Court], for example, that there might still be poll worker error because there is an obligation to record on the form the mode of identification used.  And if that's missing, that's a defect in the ballot. *But that defect is not covered by the provision we're talking about, because as they say, the obligation to write down the identifying information is imposed upon the poll worker, not the voter.*  And in Section 7 [of the Consent Decree], it says that we won't invalidate ballots based upon the poll worker's failure to write something down." (Draft Transcript, October 24, 2012 Hearing, p. 47 at ll. 5-14).

that the Secretary has recently argued both in this Court and the Sixth Circuit that changing election rules in the October prior to an election is not practically feasible and is likely to result in confusion.

Early on the following Monday, November 5, 2012, *NEOCH* Plaintiffs timely filed the instant Emergency Motion for Clarification and Modification of Consent Decree. (*NEOCH* Dkt. #349) In the same Emergency Motion, *SEIU* Plaintiffs moved for a preliminary injunction. Both *NEOCH* and *SEIU* Plaintiffs sought the same relief: an extension of Section III(5)(b)(vii) of the Consent Decree to all provisional voters and an order that the Secretary not reject ballots because the poll-worker had failed in her duty to complete the voter's identification information on the provisional ballot affirmation. At that time, Plaintiffs had the understanding that provisional ballots with such errors would be counted if they came under the Consent Decree (SSN-4 ballots), but not if they were other provisional ballots. Such a result, Plaintiffs correctly contended, would constitute a *Bush v. Gore* violation of Equal Protection, per the Sixth Circuit's Decision of October 11, 2012. At the hearing on November 7, 2012, however, the Secretary clarified that he planned to reject all ballots with missing or improperly completed identification information, including SSN-4 ballots covered by the Consent Decree. The Secretary, thus, saw no violation of Equal Protection. This Court must now consider not only the Plaintiffs' briefed motions, but also whether Directive 2012-54 and its application to SSN-4 provisional ballots violates the Consent Decree and, if so, determine the proper remedy.

### III. LAW AND ANALYSIS

As this Motion requires the Court to construe the Consent Decree, it is appropriately before this Court because "[i]t is only sensible to give the court that wrote the consent judgment greater deference when it is parsing its own work." *Sault Ste. Marie Tribe of Chippewa Indians*

*v. Engler*, 146 F.3d 367, 371 (6th Cir. 1998).  The Sixth Circuit has also held that "[f]ew persons are in a better position to understand the meaning of a consent decree than the district judge who oversaw and approved it."  *Brown v. Neeb*, 644 F.3d 551, 558 n. 12 (6th Cir. 1981).

### A. Provisional Ballot Affirmations under the Consent Decree

Upon entering the Consent Decree, the parties agreed, and the Court approved and ordered that "[SSN-4] voters will not be deprived of their fundamental right to vote because of failures by poll workers to follow Ohio law."  To that end, the Court ordered, *inter alia*, the following "general injunctive relief":

> Boards of Elections must count the provisional ballot cast by a voter using only the last four digits of his or her social security number as identification if . . . [t]he individual's name and signature appear in the correct place on the provisional ballot affirmation form, unless the voter declined to execute the affirmation and the poll workers complied with their statutory duties under R.C. 3505.182 and R.C. 3505.181(B)(6) when a voter declines to execute the affirmation . . .
>
> Boards of Elections may not reject a provisional ballot [because] . . . vii. The poll worker did not complete or properly complete and/or sign the provisional ballot application witness line and/or the provisional ballot affirmation form, except for reasons permitted by the governing statutes.

(*NEOCH* Dkt. #210)  The significance of this excerpt with regard to Directive 2012-54 is two-fold.  First, it orders that votes not be rejected because a poll worker failed to complete properly her sections of the provisional ballot affirmation as defined under Ohio law.  Second, the excerpt explicitly incorporates §§ 3505.181(B)(6) and 3505.182 of the Ohio Revised Code, which define the poll worker's duties, into the Consent Decree.  Under O.R.C. § 3505.181(B)(6), those duties include:

> [A]t the time that an individual casts a provisional ballot . . . *the appropriate local election official shall record the type of identification provided*, the social security number information, the fact that the affirmation was executed, or the fact that the individual declined to execute such an affirmation and . . . [i]f the individual declines to execute the affirmation, *the appropriate local election official shall*

6

>    *record* the individual's name and include that information with the transmission of the ballot . . .

(emphasis added). This passage unambiguously tasks poll workers with the duty of recording the type of identification provisional voters provide. Although the Secretary accurately indicates that § 3505.182 also contemplates an affirmation which could provide a space for the provisional voter to fill-in her identification information, the draft of the provisional ballot affirmation in that statute is just that, a draft. Nowhere does § 3505.182 relieve the poll worker of her duty, explicitly imposed by § 3505.181(B)(6), to record the provisional voter's form of identification. Nor does § 3505.182 indicate whether the poll worker or voter should complete the identification section of the draft affirmation. At oral argument, the Secretary could point to no statute or other authority which relieved, or purported to relieve, poll workers of their duty to record the type of identification presented by a provisional voter. That duty, though imposed by Ohio law, was incorporated into the Consent Decree by Section III(5)(a)(4). (*NEOCH* Dkt. #210) While this Court usually does not enjoin the acts of state officials to comply with state law, the Court's power to enforce the Consent Decree is undisputed. Thus, to the extent that the Secretary's violations of state law also violate or conflict with the Consent Decree, this Court may enjoin such actions. *See NEOCH*, 2012 WL 4829033 at *19; *cf. Sault Ste. Marie Tribe of Chippewa Indians*, 146 F.3d at 371 (6th Cir. 1998), *Brown*, 644 F.3d at 558 n. 12 (6th Cir. 1981).

### B. Directive 2012-54 Violates the Consent Decree

When Plaintiffs initially filed this Motion, they reasonably believed the Secretary intended the Directive to affect only provisional ballots not covered by the Consent Decree. (*NEOCH* Dkt. #346) At oral argument, however, the Secretary made clear that he intended to reject provisional ballots with the defects at issue regardless of whether they fell under the

7

Consent Decree.[3]  Now, having established this Court's jurisdiction to enjoin violations of the Consent Decree, the question is whether Directive 2012-54 violates the Decree, as Plaintiffs allege.

Plaintiffs claim, specifically, that the Secretary's Directive 2012-54 contravenes O.R.C. § 3505.181(B)(6), incorporated into the Consent Decree, by ordering election officials to reject provisional ballots with some deficiency in recording the type of identification used by the voter. The violation is rooted in the Secretary's drafting of the Provisional Ballot Affirmation, also known as "Form 12-B." "Step 2" of Form 12-B instructs the provisional voter to either (a) write the last four digits of her Social Security number; or (b) her full eight-digit Ohio driver's license number; or (c) show another form of identification from the included list and check the box indicating the form of identification produced. The Secretary contends Step 2 is a minimal burden on the voter and actually reduces the risk of error by eliminating the chain of transmitting the identification information from voter to poll worker, and then poll worker to Form 12-B. Although the Secretary adduces no evidence to support this contention, the absence of facts is irrelevant, as the Court need not engage in a factual inquiry, nor perform a Constitutional analysis. O.R.C. § 3505.181(B)(6) relieves the voter of the responsibility to record her identification information as a matter of law.  In *NEOCH*, the Sixth Circuit validated this legal interpretation, stating that Ohio law "require[s] election officials to 'record the type of identification provided, the social security number information, the fact that the affirmation was executed, or the fact that the individual declined to execute such an affirmation and include that information with the transmission of the ballot.'"  *NEOCH*, 2012 WL 4829033 at *10-13, quoting O.R.C. § 3505.181(B)(6).

---

[3] It is important to reiterate that even if the Secretary did not intend to reject the provisional ballots covered by the Consent Decree, that would not resolve the issue.  In that case, the Secretary would simply have created the same violation of Equal Protection that occurs here in a different way.

Accordingly, in shifting that duty to the voter, Step 2 of Form 12-B imposes an impermissible burden in violation of O.R.C. § 3505.181(B)(6) and, therefore, the Consent Decree. By admission of counsel, the Secretary engaged in no fact-finding to determine that such a change would increase the integrity of the voting system. The General Assembly made the policy judgment to place the duty to record the identification of a provisional voter with a trained election official. The Secretary may not second guess that decision. If the Secretary could arbitrarily shift any duties of an election official to an individual voter, the Secretary could ensure no error would ever be the fault of a poll worker simply by reassigning all of the poll worker's duties to the voter. This result is not contemplated by Ohio law or permitted by the Constitution.

Additionally, the Secretary's argument that Plaintiffs' Motion is not timely is incorrect. The poor drafting of Form 12-B which, by design or accident, purports to shift the poll worker's statutory duty to record the form of identification to the provisional voter, did not provide occasion for the Plaintiffs to seek injunctive relief until the Secretary issued Directive 2012-54, at 7:00 p.m. on November 2. Until that time, Plaintiffs did not have reason to believe a provisional ballot would be rejected if the poll worker did not record information required by § 3505.181(B)(6). Plaintiffs correctly understood the law to place the duty to record that information on the poll worker (per O.R.C. § 3505.181(B)(6) and its incorporation in the Consent Decree) and to forbid the rejection of a provisional ballot due to poll-worker error. The Sixth Circuit's *NEOCH* decision of October 11, 2012 held unconstitutional "the disenfranchisement of voters who arrive at the correct polling place (and are otherwise eligible to vote) solely as a consequence of poll-worker error." *SEIU v. Husted*, ___ F.3d ___, 2012 WL 5352484 at *2, citing *NEOCH*, 2012 WL 4829033 at *10-13. Since the Ohio law places the

9

duty to record the provisional voter's form of identification with the poll-worker, if such information is absent, that indicates that the poll worker failed to perform her duty. To reject the ballot for that reason would violate the Fourteenth Amendment's guarantee of Due Process. Until November 2 at 7:00 p.m., Plaintiffs did not have reason to believe such a result was within the realm of possibility. Thus, this Motion is timely made.

In summary, Directive 2012-54 violates the Consent Decree and the law of Ohio. Plaintiffs timely moved for clarification to declare Directive 2012-54 a violation of the Consent Decree. Plaintiffs' Motion is, hereby, **GRANTED**. The Court **ORDERS** that provisional ballots of SSN-4 voters be counted if the voter has properly completed "Step 1" and "Step 3" of the Provisional Ballot Affirmation (Form 12-B).

### C. Appropriate Remedy for Violation of Consent Decree

Since Directive 2012-54 violates the Consent Decree and the Court must enjoin Directive 2012-54, as it applies to SSN-4 voters, the Secretary's application of the Directive to non-SSN-4 voters creates a *Bush v. Gore* violation of Equal Protection. Under the Sixth Circuit's *NEOCH* Decision of October 11, 2012, that result cannot stand.[4] The Court must either vacate Section III(5)(b)(vii) of the Consent Decree to allow Directive 2012-54 to operate, or extend the protections of the Consent Decree to all provisional voters for the purposes of the November 6, 2012 Election. Therefore, the Court also **ORDERS** that an incomplete or improperly completed "Step 2" shall not cause any provisional ballot to be rejected, unless: (1) a poll-worker has recorded on the provisional ballot affirmation that the voter is required to return to the county board of elections with proper identification; (2) a poll worker has recorded what identification

---

[4] This is not a situation where the Court's Order has created a violation of Equal Protection. The Secretary attempted to do something forbidden by the Consent Decree voluntarily entered into by the Secretary. By the terms of the Consent Decree, this Court must enjoin the violation. Thus, it is the Secretary's eleventh hour attempt to reject provisional ballots with "Step 2" deficiencies that violates Equal Protection, not the Order of this Court.

information the voter must bring; and (3) the voter did not return with the necessary identification within ten days of the election.

The Secretary contends that if the information sought by "Step 2" is not completed, there is no way to determine whether the provisional voter was an SSN-4 voter or a voter who provided another type of identification, or even a voter who did not provide proper identification when casting the provisional ballot. That is not accurate. Under O.R.C. § 3505.181 (B)(7), if a provisional voter does not arrive at the polling place with an acceptable form of identification an "election official shall indicate, on the provisional ballot verification statement required under section 3505.182 of the Revised Code" that the voter is "required to provide additional information" to the county's board of elections "to determine the eligibility" of the voter. If a poll-worker has properly recorded that information on the provisional ballot and the voter does not return with the proper identification within ten days of the election, that provisional ballot will be rejected.

The Secretary's proposed relief, vacating Section III(5)(b)(vii), is unacceptable for numerous reasons. First, having created the equal protection issue by issuing a directive that violates both state law and a voluntarily entered Consent Decree, the Secretary cannot benefit from his illegal act by using it to escape his obligations under the Consent Decree. Second, if the Secretary has drafted Form 12-B in such a way that it both illegally shifts the burden of recording identification information from election officials to voters *and* does not allow election officials to distinguish poll-worker error from voter failure to provide identification, that is the Secretary's mistake. There were myriad options available to the Secretary to create a form which would have made such distinctions clear, but he chose not to pursue those options. It is an established rule of contract law that ambiguities are construed against the drafter of the

document. Since the Secretary drafted Form 12-B, if the form is inadequate, the Secretary must bear the consequences of that inadequacy. The voter acting in good faith cannot suffer disenfranchisement as a result of the Secretary's drafting errors.

### D. Judicial Estoppel Bars the Secretary from Advocating His Proposed Remedy

While the Plaintiffs' requested remedy is proper on substantive grounds, the Secretary is also judicially estopped from seeking his proposed remedy because he relies on a position contrary to that which he previously took before this Court and upon which this Court has relied. Judicial estoppel is an equitable doctrine which "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749, quoting *Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8 (2000). The doctrine dictates that, "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interest have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Id*. at 749. In this Court's previous decision, the Court denied Plaintiffs' request to expand the protections of Section III(5)(b)(vi) and (vii) to all provisional voters. In denying that request, the Court relied primarily on the Secretary's assurances that provisional ballots would not be rejected if a poll worker failed to comply with her statutory duties:

> [T]he question is what is left of the concept of poll worker error in the context of defective ballot affirmations. [Plaintiffs' counsel] suggested to [the Court], for example, that there might still be poll worker error because there is an obligation to record on the form the mode of identification used. And if that's missing, that's a defect in the ballot. *But that defect is not covered by the provision we're talking about, because as they say, the obligation to write down the identifying information is imposed upon the poll worker, not the voter.* And in Section 7 [of the Consent Decree], it says that we won't invalidate ballots based upon the poll worker's failure to write something down.

(Draft Transcript, October 24, 2012 Hearing, p. 47 at ll. 5-14).  At that time, the Court also understood O.R.C. §3505.181(B)(6) to protect other provisional voters not covered by the Consent Decree from having their ballots rejected when poll workers fail to record the identifying information.  In reliance on the Secretary's verbal assurances to this Court and Ohio law, this Court denied Plaintiffs' previous request to modify and expand the Consent Decree, stating that, "Critically, Section III(5)(b)(vii) remains in the Consent Decree to ensure no provisional ballot is disqualified when a poll worker fails to complete her designated portion of the envelope and the State does not dispute that."  *SEIU Local 1 v. Husted*, 2012 WL 5334080 at *12 (S.D. Ohio October 26, 2012).  While the Secretary argues that judicial estoppel does not apply where a litigant's assertions are "open to interpretation," the relevant statements are not open to interpretation.  Counsel for the Secretary unambiguously assured this Court that the Secretary understood the recording of "identifying information" to be a duty "imposed upon the poll worker" and that the failure to do so would not "invalidate ballots."  The Court relied on this statement to the Plaintiffs' detriment.  Nine days after making that representation to the Court, the Secretary ordered that no provisional ballots be counted if the identification information was improperly recorded, without ingaging in fact-finding to support the change.  This is an archetypal situation in which judicial estoppel applies.

The Court also notes, with grave misgivings, that the Secretary changed an election rule on a Friday evening for an election scheduled for the following Tuesday, after repeatedly asserting, to both this Court and the Sixth Circuit, that he could not comply with injunctive relief ordered by this Court because he lacked sufficient time prior to the election.  The surreptitious manner in which the Secretary went about implementing this last minute change to the election rules casts serious doubt on his protestations of good faith.  Thus, in addition to the Plaintiffs'

13

successful legal arguments, the equitable doctrine of judicial estoppel is grounds for denying the relief sought by the Secretary and granting that sought by Plaintiffs.

### E. Directive 2012-54 Violates Fourteenth Amendment Substantive Due Process

Although this Court's decision to grant Plaintiffs the injunctive relief they seek rests on the Secretary's violation of the Consent Decree and Equal Protection violation thereby created, the Court reaches the same conclusion under the Fourteenth Amendment's guarantee of due process. The right to vote is a federal right guaranteed to all citizens by the Fourteenth Amendment. It may not be withheld without due process.

While, generally, a federal court may not enjoin a state official from violating state law, there are exceptions. *Ex parte Young*, 209 U.S. 123 (1908). The Fifth Circuit has held that, "[i]t is fundamentally unfair and constitutionally impermissible [under the substantive prong of the due process clause] for public officials to disenfranchise voters in violation of state law." *Duncan v. Poythress*, 657 F.2d 691, 704 (5th Cir. 1981), *cert. denied*, 459 U.S. 1012 (1982). In *Duncan*, the Fifth Circuit found the state's failure to hold a special election as required by state law presented one of "those rare, but serious, violations of state election laws [which] undermine the basic fairness and integrity of the democratic system." *Duncan*, 657 F.2d at 699. Here the Secretary's eleventh hour Directive, which disenfranchises an unknown but potentially large number of Ohio voters and violates state law, is one of the "rare, but serious" violations of state election law identified by the *Duncan* court. Directive 2012-54 ordered elections officials to "reject[]" any provisional ballot without the voter's properly completed identification information. Under O.R.C. § 3505.181(B)(6), however, the poll worker has the duty to record the identification information. The poll worker administers the election on behalf of the state, so the poll worker's failure to fulfill her statutory duty is state action that, under Directive 2012-54,

14

would lead to an individual losing her right to vote without due process. Just as in *Duncan*, the Secretary's action here is a flagrant violation of a state election law, O.R.C. § 3505.181(B)(6), and it has the result of disenfranchising voters, by rejecting provisional ballots cast in good faith. This violation of state law rises to an abuse of federal due process and necessitates the granting of injunctive relief by a federal court.

While the Sixth Circuit has conjectured that asking a provisional voter to record her identification information may not constitute an undue burden under the *Burdick/Anderson* test, it also held that the duty to record that information, under Ohio law, is the poll worker's. *NEOCH*, 2012 WL 4829033 at *16 ("Ohio law does not task poll-workers with quality control of ballot affirmations. Rather, the Ohio provisions cited by the district court . . . require elections officials 'to record the type of identification provided . . .'"). Ohio voters reasonably expect that the Secretary of Ohio will abide by the General Assembly's laws in administering a federal election. For an executive official of the state to flaunt state law in arbitrarily reassigning a poll worker's statutory duty to a voter, with the result being disenfranchisement of the voter, is "fundamentally unfair and constitutionally impermissible." *Duncan*, 657 F.2d at 704. Thus, this Court finds Directive 2012-54 violates substantive due process as guaranteed by the Fourteenth Amendment. The due process violation provides an alternative ground for providing the injunctive relief sought by Plaintiffs.

## IV. CONCLUSION

For the foregoing reasons, *NEOCH* Plaintiffs' Motion for Clarification of the Consent Decree is, hereby, **GRANTED**. The Court declares that Directive 2012-54 violates the Consent Decree and **ORDERS** that the Secretary not reject any provisional ballots cast by SSN-4 voters

with an improperly completed "Step 2" (requesting voter's identification information) on the Provisional Ballot Affirmation.

*SEIU Local 1* Plaintiffs have **WITHDRAWN** their Motion for Preliminary Injunction. The Court, therefore, has no occasion to consider that Motion.

Since the Sixth Circuit's *NEOCH* Decision of October 11, 2012 held that treating SSN-4 provisional ballots differently from other provisional ballots violates Equal Protection, this Court's relief must be implemented in a uniform fashion for all provisional ballots. Thus, for the foregoing reasons, *NEOCH* Plaintiffs' Motion for Modification of the Consent Decree is also **GRANTED**.

The Court **ORDERS** that the Secretary not reject any provisional ballots cast by non-SSN-4 voters with an improperly completed "Step 2" on the Provisional Ballot Affirmation. This latter relief, pertaining to the non-SSN-4 voters applies only to provisional ballots cast in the November 6, 2012 Election. The only circumstances in which the Secretary may reject a provisional ballot for a deficiency in "Step 2" of Form 12-B is if: (1) a poll-worker has recorded on the provisional ballot affirmation that the voter is required to return to the county board of elections with proper identification; (2) a poll worker has recorded what identification information the voter must bring; and (3) the voter did not return with the necessary identification within ten days of the election.

The Court **ORDERS** the Secretary to issue a Directive consistent with this Order by no later than November 16, 2012 at 12:00 p.m. Prior to issuing the Directive, the Secretary shall provide the relevant proposed language for the Directive to Plaintiffs' counsel by no later than 12:00 p.m. on November 14, 2012. If the parties cannot agree to the proposed language after

conferral, they shall submit separate proposals to the Court by no later than 12:00 p.m. on

November 15, 2012.

    **IT IS SO ORDERED.**

                                                                **s/Algenon L. Marbley**
                                                                 Algenon L. Marbley
                                                                 United States District Judge

**Dated: November 13, 2012**