# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: November 16, 2012

Mr. Stephen P. Berzon
Ms. Barbara Jane Chisholm
Ms. Stacey Monica Leyton
Ms. Danielle E. Leonard
Altshuler Berzon
177 Post Street
Suite 300
San Francisco, CA 94108

Ms. Erin Elizabeth Butcher-Lyden
Mr. Richard N. Coglianese
Mr. Aaron David Epstein
Office of the Ohio Attorney General
30 E. Broad Street
16th Floor
Columbus, OH 43215

Mr. Subodh Chandra
1265 W. Sixth Street
Suite 400
Cleveland, OH 44113

Mr. John Corey Colombo
Mr. Mark A. McGinnis
McTigue & McGinnis
545 E. Town Street
Columbus, OH 43215

Ms. Caroline H. Gentry
Porter, Wright, Morris & Arthur
One S. Main Street
Suite 1600 One Dayton Centre
Dayton, OH 45402

Mr. Michael J. Hunter
Hunter, Carnahan, Shoub & Byard
3360 Tremont Road, Second Floor
Columbus, OH 43221

Mr. Donald J. McTigue
Law Office
550 E. Walnut Street
Columbus, OH 43215

Mr. Daniel B. Miller
Porter, Wright, Morris & Arthur
41 S. High Street
Columbus, OH 43215

      Re: Case No. 12-4354, *NE OH Coalition for Homeless, et al v. Jon Husted, et al*
        Originating Case No. : 2:06-cv-00896

Dear Counsel,

 The Court issued the enclosed Order today in this case.

             Sincerely yours,

             s/Cathryn Lovely for Laura Jones
             Case Manager
             Direct Dial No. 513-564-7023

cc: Clerk of the U.S. District Court for the Southern District of Ohio

Enclosure

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 12-4354

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Nov 16, 2012*
DEBORAH S. HUNT, Clerk

NORTHEAST OHIO COALITION FOR )
THE HOMELESS, et al., )
 )
    Plaintiffs-Appellees, )
 )
v. )
 )
JON HUSTED, )
 ) ON APPEAL FROM THE UNITED
    Defendant-Appellant, ) STATES DISTRICT COURT FOR THE
 ) SOUTHERN DISTRICT OF OHIO
STATE OF OHIO, )
 )
    Intervenor Defendant-Appellant, )

Before: GIBBONS and COOK, Circuit Judges; ROSENTHAL, District Judge.[*]

PER CURIAM. Before us is an emergency motion for stay pending appeal filed by appellants Jon Husted, the Secretary of State of Ohio ("Secretary"), and the State of Ohio. Appellants seek to stay the district court's order requiring the Secretary to count all SSN-4 provisional ballots cast on November 6, 2012, with an improperly completed "Step 2" on their provisional ballot affirmation and to issue a directive by noon on Friday, November 16, 2012, that instructs local boards of elections to count non-SSN-4 provisional ballots cast on November 6 with an improperly completed "Step 2." We grant the stay pending appeal.

---

[*]The Honorable Lee H. Rosenthal, United States District Judge for the Southern District of Texas, sitting by designation.

-1-

*NEOCH, et al. v. Husted, et*
Case No. 12-4354

I.

These new requirements are part of an order granting the NEOCH plaintiffs' motion for clarification and modification of the consent decree, entered November 13, 2012. The factual and procedural context from which the order arose is critical to an understanding of the request for stay. In January 2012 the Secretary issued Directive 2012-01, which provided instructions to election officials about the counting of provisional ballots, including a six-step process for determining their validity. Concurrent with the directive, the Secretary issued Form 12-B, entitled "Provisional Ballot Affirmation." On the evening of November 2, 2012, after prior litigation in this case had concluded, the Secretary issued Directive 2012-54, which superseded Directive 2012-01 but covered the same subject matter. Form 12-B remained unchanged.

A day before the issuance of Directive 2012-54, on November 1, 2012, the NEOCH plaintiffs filed an emergency motion to clarify the district court's order of October 26, 2012, which denied plaintiffs' motion to modify the April 19, 2010, consent decree in this case and granted the Secretary's motion for modification. This motion addressed a provision of the consent decree not directly at issue in the October 26 order, paragraph 5(b)(vii), and raised an issue concerning Form 12-B. Essentially, the NEOCH plaintiffs contended that Form 12-B, by requiring the voter to fill in his own identification information, violated state law. According to the plaintiffs, under the consent decree, Form 12-B affirmations lacking identification information were not "properly completed" by poll workers and thus must be counted in accord with paragraphs 5(b) and 5(b)(vii) of the consent decree. On November 5, 2012, the NEOCH plaintiffs also moved to modify the consent decree to extend to all provisional voters the protections plaintiffs believed paragraph 5(b)(vii) afforded to

*NEOCH, et al. v. Husted, et*
Case No. 12-4354

SSN-4 voters.[1]  A primary aspect of their argument was that Directive 2012-54 marked a dramatic departure from the Secretary's earlier position on voters' responsibility to write their identification information on the provisional ballot affirmation and that judicial estoppel thus precluded his opposition to their request.

After a hearing, the district court granted the relief sought by the NEOCH plaintiffs.  It found that Directive 2012-54 violated state law and the consent decree.  It enjoined the application of Directive 2012-54 to SSN-4 provisional voters, found this injunction to violate the equal protection rights of non-SSN-4 provisional voters, extended the protections of the consent decree to non-SSN-4 provisional voters, and concluded that judicial estoppel barred the Secretary from arguing that the consent decree did not signficantly change the procedure for poll workers to follow in counting ballots.   The Secretary and the State of Ohio appealed and filed the instant motion.

II.

Appellants fail to cite the standard for granting a stay in their briefing.  Nevertheless, because they discuss the substance of the required factors, we consider their motion and their arguments.  This court examines four factors when considering a stay pending appeal under Federal Rule of Appellate Procedure 8(a):

> (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.

---

[1] On that same day, in the related matter of *SEIU v. Husted*, No. 12-cv-00562 (S.D. Ohio), the SEIU plaintiffs moved for a preliminary injunction.  That request was later withdrawn.

-3-

*NEOCH, et al. v. Husted, et*
Case No. 12-4354

*Michigan Coal. of Radioactive Material Users, Inc. v. Gripentrog*, 945 F.2d 150, 153 (6th Cir. 1991).  "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id.*  As the moving party, Ohio and the Secretary have the burden of showing they are entitled to a stay.  *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

We begin by examining the likelihood that Ohio and the Secretary will prevail on the merits of their appeal of the district court's order finding that Directive 2012-54 violates the Decree.  While we must give some degree of deference to the district court's interpretation of a consent decree that it approved, our review of an order interpreting a consent decree is *de novo*.  *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 371–72 (6th Cir. 1998).

Appellants have strong arguments that they will prevail on appeal on several critical issues. The claim that Directive 2012-54 violates state law is based on the Directive's utilization of Form 12-B. The portion to be filled out by the voter contains three steps.  The form instructs the voter that each step is "mandatory information required for your ballot to count." Ohio Sec'y of State, Directive 2012-54, at 9, *available at* http://www.sos.state.oh.us/SOS/Upload/elections/directives/2012/Dir2012-54.pdf  The second of these three steps asks the voter to "provide . . . [a] form of identification." The voter must either (1) write the last four digits of his social security number, (2) write their driver's license number, or (3) check a box indicating that another satisfactory form of identification has been shown to the poll worker, or that a Form 10-T, entitled "Affirmation of Voter Who Cannot Provide Information," has been completed.  *Id.*  As is the case on the sample provisional ballot affirmation found at Ohio Rev.

-4-

*NEOCH, et al. v. Husted, et*
Case No. 12-4354

Code § 3505.182,[2] the voter "provides" identification by writing it on the provisional ballot affirmation. While there is a very short section at the end of the form where the poll worker is supposed to provide information, there is no space on the form for the poll worker to "record" the type of identification used by the voter.

Form 12-B is not without its flaws. It appears to contemplate voting procedures that relieve the poll worker of the duty to record the type of identification provided by the voter, as Ohio Rev. Code § 3505.181(B)(6) requires.[3] But we note that § 3505.181(B)(6) does not ask the poll worker to "record" the information on the provisional ballot affirmation sheet. The form provided in § 3505.182 provides a separate "verification statement" page that allows the poll worker to "record" the type of identification the voter showed prior to casting a ballot. And it is not obvious that Form 12-B violates section 3505.181(B)(6) because it asks the voter to "provide" identification by writing down an identification number or checking a box. In any event, any violation would, in and of itself, merely be a violation of state law, not redressable by the district court or this court. *See*

---

[2] The statute replicates the text and format of a sample provisional ballot affirmation and provides that "the written affirmation shall be printed upon the face of the provisional ballot envelope and shall be substantially" in the form of the sample. Ohio Rev. Code § 3505.182.

[3] If, at the time that an individual casts a provisional ballot, the individual *provides* identification . . . or *provides* the last four digits of the individual's social security number, or *executes an affirmation* that the elector does not have any of those forms of identification or the last four digits of the individual's social security number because the individual does not have a social security number, or declines to execute such an affirmation, *the appropriate local election officials shall record the type of identification provided, the social security number information,* the fact that the affirmation was executed, or the fact that the individual declined to execute such an affirmation and include that information with the transmission of the ballot or voter or address information under division (B)(3) of this section.

Ohio Rev. Code § 3505.181(B)(6) (emphasis added).

-5-

*NEOCH, et al. v. Husted, et*
Case No. 12-4354

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("A federal court's grant of relief against state officials on the basis of state law . . . does not vindicate the supreme authority of federal law.").

Whether use of Form 12-B and Directive 2012-54 violates the consent decree is more problematic. The consent decree's purpose is to protect voting rights for those who are indigent and may not have a home address or the funds to purchase identification. The method chosen for this protection is permitting the use of the last four digits of the voter's social security number as identification. The alleged violation of the consent decree is rejecting a provisional SSN-4 ballot when the voter has not provided identification; the violation occurs, in plaintiffs' view, because the voter is asked to write his own information on the form instead of relaying it to a poll worker to record. Such a violation is far afield from the potential harm the consent decree sought to redress. Moreover, the consent decree can be violated by this policy only if the meaning of "properly completed" in Paragraph 5(b)(vii) includes all kinds of mistakes and errors not germane to the purpose of the decree. This reading seems strained. The decree is not intended to enforce poll worker compliance with Ohio election law; it is designed to help voters without usual means of identification. Even if such poll worker omission to record identification information was deemed to violate the consent decree, the proper remedy for such a violation would not include an injunction that creates an equal protection violation and builds on that violation by imposing the more sweeping relief of expanding the consent decree and the scope of those it benefits. The district court's order improperly expands the class of voters it was intended to cover and the types of provisional ballot issues it was meant to address.

*NEOCH, et al. v. Husted, et*
Case No. 12-4354

Moreover, appellants' argument that the NEOCH plaintiffs lack standing to obtain relief on behalf of individuals who are non-SSN-4 provisional voters likely has merit. In expanding the consent decree on the NEOCH plaintiffs motion, the district court granted relief to a group of people who are not before the court, who have not requested relief, and whose interests are not implicated in the NEOCH litigation. The NEOCH plaintiffs lack the sort of "legally protected interest" in the voting rights of non-SSN-4 voters necessary to seek relief on their behalf. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he plaintiff must have suffered . . . an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical' . . . .") (internal quotation marks omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

The district court also likely misapplied the doctrine of judicial estoppel. "[J]udicial estoppel 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). The district court's analysis of this question focused on the following comment by counsel for the Secretary, made at a hearing to modify the consent decree in light of this court's *NEOCH* decision, which acknowledged the poll worker's responsibility to record identification information under section 3505.181(B)(6):

> [T]he question is what is left of the concept of poll worker error in the context of defective ballot affirmations.
>
> [Plaintiffs' counsel] suggested to you, for example, that there might still be poll worker error because there is an obligation to record on the form the mode of

-7-

*NEOCH, et al. v. Husted, et*
Case No. 12-4354

> identification used, and, if that's missing, that's a defect in the ballot. But that scenario is not covered by [paragraph 5(b)(vii) of the consent decree] we're talking about because, as they say, the obligation to write down the identifying information is imposed upon the poll worker, not upon the voter. [The consent decree] says that we won't invalidate ballots based upon the poll worker's failure to write something down.

The district court found that this comment constituted an assurance that the Secretary would not order provisional ballots to be discarded because the poll worker did not "record" the voter's identification information.

In Directive 2012-01, the Secretary asks election officials to "[d]etermine whether the provisional voter was required to provide additional information to the board of elections within ten days after the election." *See* Ohio Sec'y of State, Directive 2012-01, at 2, *available at* http://www.sos.state.oh.us/SOS/Upload/elections/directives/2012/Dir2012-01.pdf. Directive 2012-01 identified the only four situations under which Ohio law requires a voter to return to the board of elections to provide identification after an election:

> 1. The voter possesses a SSN or proper identification, but [is] unable to provide it to the precinct election official;
>
> 2. The voter possesses a SSN or proper identification, but decline[s] to provide it the precinct official;
>
> 3. The voter does not possess a SSN or proper identification, and refused to sign a SOS Form 10-T [an affirmation by the voter that he or she cannot provide identification];
>
> 4. The voter was challenged at the polling place and his or her eligibility to vote could not be determined by the precinct election officials.

*Id.* If the voter is "not required to provide additional information," or provides the information to the local election board within ten days of the election, then the election official can move to the next

*NEOCH, et al. v. Husted, et*
Case No. 12-4354

step in the provisional ballot evaluation process. *Id.* at 3. Otherwise, the ballot must be rejected. *Id.* Form 12-B, which was issued alongside Directive 2012-01 in January 2012, requires the voter, and not the poll worker, to "provide" this information by writing it on the provisional ballot affirmation. The only fair reading of Directive 2012-01 is that if the voter does not properly write this information down, the provisional ballot will be rejected.

The modified version of this procedure found in Directive 2012-54, issued in early November 2012 with no changes to Form 12-B, attempts to streamline its elements. It asks the election official to determine (1) "[i]f the voter provided one of the acceptable forms of identification," (2) if the voter "completed a Form 10-T" affirmation at the polling place, or (3) the voter returned to the county election board within ten days to either provide the identification or complete a Form 10-T affirmation. Directive 2012-54, at 3. If the voter did not "provide identification on the provisional ballot affirmation," complete a Form 10-T, or return to the election board, "the [election official] must reject the provisional ballot." *Id.*

Read in this context, the district court's interpretation of counsel's statement appears problematic. The comment made during the motion hearing is not the sort of "unequivocal" prior position necessary for the imposition of judicial estoppel. *See McMeans v. Brigano*, 228 F.3d 674, 686 (6th Cir. 2000). This is particularly so in light of the history of Form 12-B and the directives. The precise problem appellees raise here has not previously been a subject in this litigation and was not at issue during the motion hearing in which the comment was made. While Directive 2012-54 is more explicit than Directive 2012-01 in specifying that ballots will be rejected when the voter has not provided identification, either at the polling place or subsequently within ten days of the election,

*NEOCH, et al. v. Husted, et*
Case No. 12-4354

and has not filled out a form stating he lacks a social security number, the change is more stylistic than substantive. Form 12-B, when read in conjunction with the two directives at issue, confirms the Secretary's consistency on this point.

We also find that the three equitable *Gripentrog* factors weigh in favor of the issuance of a stay. In the most recent opinion arising from this litigation, we addressed a request made by the plaintiffs for a preliminary injunction just weeks before election day. *SEIU v. Husted*, --- F.3d ----, 2012 WL 5352484 (6th Cir. Oct. 31, 2012). We concluded that a stay was equitable because (1) "last-minute injunctions changing election procedures are strongly disfavored," particularly in cases "when a party does not seek to clarify or expand the scope of relief after having an opportunity to do so," and (2) "the harm to Ohio, the Secretary, and the general public caused by issuance of this injunction easily outweighs any potential harm to the plaintiffs." *Id.* at *3–4.

Both observations apply *a fortiori* here. First, any claim of irreparable harm to the NEOCH plaintiffs is belied by their waiting until five days before the election to raise issues concerning a form prescribed months earlier. Plaintiffs and the district court are simply inaccurate in portraying Directive 2012-54 as a dramatic departure from prior policy. At most, it represents a modest clarification of a policy that was in place for months. Second, there is an even greater disparity between the harms to either side if the stay were to be denied than there was in the *SEIU* case. The requirement that a voter write down identification information on a provisional ballot is a "rather simple instruction[]." *NEOCH v. Husted*, 696 F.3d 580, 599–600 (6th Cir. 2012). By contrast, the interests of the defendants and the public in obtaining a stay are significant. Voting in the November 2012 election is now complete. Poll workers performed their duties during that election based on

-10-

*NEOCH, et al. v. Husted, et*
Case No. 12-4354

longstanding instructions provided by the Secretary which put the voter in charge of writing down identification information. Changing the rules by which votes are counted after they have already been cast compromises the interest of Ohio, the Secretary, and the general public in fair and orderly election procedures. *See SEIU*, 2012 WL 5352484, at *4.

### III.

For the reasons stated above, we grant the motion of Ohio and the Secretary to stay the district court's order pending appeal.