## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **THE NORTHEAST OHIO COALITION FOR THE HOMELESS**, *et al.*, | : : : | **Case No. 2:06-CV-00896** |
| **Plaintiffs,** | : : | **JUDGE ALGENON L. MARBLEY** |
| **v.** | : : | **Magistrate Judge Kemp** |
| **JON HUSTED, in his official capacity as Secretary of the State of Ohio,** | : : : | |
| **Defendant,** | : : | |
| **and** | : : | |
| **STATE OF OHIO** | : : | |
| **Intervenor-Defendant;** | : : : | |
| **SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1,** *et al.*, | : : : : | **Case No. 2:12-CV-00562** |
| **Plaintiffs,** | : : | **JUDGE ALGENON L. MARBLEY** |
| **v.** | : : | **Magistrate Judge Kemp** |
| **JON HUSTED,** *et al.*, | : : | |
| **Defendants.** | : | |

## OPINION & ORDER

This matter is before the Court on Plaintiffs' several motions for attorneys' fees (Doc. 388; Doc. 393; *SEIU v. Husted*, No. 2:12-CV-00562, Doc. 120).  Plaintiffs seek fees and costs related to the Consent Decree put in place on April 19, 2010 by the parties to resolve this case. (Doc. 210).  In particular, Plaintiffs attorneys' fees and costs stemming from:  (1) their work in 2013 obtaining an extension of the Decree (*see* Doc. 383); (2) their work in 2012 defending the

Decree in 2012; and, for the *SEIU* Plaintiffs, the work performed to obtain a preliminary

injunction in 2012 and a permanent injunction in 2013.  Generally, Defendants do not dispute

that Plaintiffs are prevailing parties under 42 U.S.C. § 1988, but challenge the fee rates requested

by Plaintiffs, and the reasonableness of the hours allegedly expended.

For the reasons set forth herein, Plaintiffs' Motions are **GRANTED with modification**.

## I.    BACKGROUND

For purposes of these Motions, the Court need not describe the complex substance of this

case at length.  In brief, the Northeast Ohio Coalition for the Homeless ("NEOCH") Plaintiffs

initiated their action in 2006, challenging various then-new provisions of the Ohio Revised Code

related to voter identification.  (*See Compl.*, Doc. 2).  On April 19, 2010, the Court entered a

Consent Decree resolving Plaintiffs' challenges.  The Decree mandated that the Secretary of

State instruct the Ohio Board of Elections to adhere to certain rules regarding "the casting and

counting of provisional ballots for persons without identification other than a social security

number," including, for example, preventing county elections boards from rejecting certain

provisional ballots on the grounds that the voter did not present identification, provide a date of

birth, provide an address, cast his vote in right location but using the wrong precinct ballot, etc.

(*Consent Decree*, Doc. 210 at 3).

Throughout 2012, the NEOCH Plaintiffs undertook various actions in this Court in order

to defend the Decree.  First, on April 26, 2012, members of the Ohio Legislature filed a writ of

mandamus in the Ohio Supreme Court seeking a declaration that the Decree was inconsistent

with Ohio law.  (Doc. 246-1).  On May 8, 2012, NEOCH Plaintiffs moved in this Court for an

injunction to prohibit the legislators from attacking the decree in state court.  (Doc. 246).  The

Court granted Plaintiffs' motion on May 11, 2012, and the legislators dismissed their suit in the

Ohio Supreme Court.  (Doc. 260).  The Court's written Order held that the requested relief was warranted given the extraordinary act of collaterally attacking the Decree.  (Doc. 261).

Second, in the wake of the legislator's collateral attack, on May 17, 2012, the Court ordered simultaneous briefing "on the threshold issue of the legal validity of the Consent Decree," with oral argument to follow.  (Doc. 264).  On July 9, 2012, NEOCH Plaintiffs were successful in defending the validity of the Decree.  (*See* Doc. 307).

While the challenge to the validity of the Decree was pending, Plaintiffs filed their own motion to modify the Decree to prevent further alleged constitutional violations.  (Doc. 288).  At the same time, on June 22, 2012, the Service Employees International Union ("SEIU") Plaintiffs filed their action, also seeking to invalidate various Ohio voter-ID laws, with particular focus on ballots that would be rejected because poll workers erroneously provided the voter with a precinct ballot that did not correspond to the voter's assigned precinct.  (*SEIU v. Husted*, *Compl.*, Doc. 1).  Based on the similar nature of these two cases, and the parallel relief sought, the Court ordered that the two cases were related, on June 26, 2012 (Doc. 302), and the Court heard joint arguments on NEOCH Plaintiffs' motion to modify (Doc. 288) and SEIU Plaintiffs' motion for preliminary injunction (*SEIU v. Husted*, Doc. 4).  (*See Joint Scheduling Order*, Doc. 308).

On August 27, 2012, the Court issued a preliminary injunction in *SEIU v. Husted*, and ordered the Secretary to direct county boards of elections to count all wrong-precinct provisional ballots absent evidence that the poll worker properly performed his or her duties, and to count all provisional ballots with technical errors in the ballot envelope.  (*SEIU v. Husted*, Doc. 67).  Because this order "grant[ed] the same equitable relief requested by [NEOCH Plaintiffs'] Motion to Modify," the Court stayed that motion as moot, subject to renewal if warranted.  (Doc. 332).

Defendants appealed the July 9, 2012 denial of the motion to vacate, as well as the preliminary injunction in *SEIU v. Husted*.  (Doc. 319; *SEIU v. Husted*, Doc. 71).  Argument was held October 1, 2012, and on October 11, 2012, the Sixth Circuit issued a published opinion affirming this Court's denial of Defendants' request to vacate the Decree, and affirming in part and reversing in part the preliminary injunction.  (Doc. 336; *SEIU v. Husted*, Doc. 82).

On July 1, 2013, SEIU Plaintiffs filed a motion for partial summary judgment and permanent injunction, asking the Court to make permanent the preliminary injunction requiring the counting of correct-location/wrong-precinct ballots. (*SEIU v. Husted*, Doc. 107).  Defendants did not contest the remedy, though they took issue with what they considered to be mischaracterizations and false allegations by SEIU Plaintiffs.  (*SEIU v. Husted*, Doc. 110).  On July 9, 2013, the Court granted summary judgment and issued a permanent injunction.  (*SEIU v. Husted*, Doc. 112).

Finally, as relevant to the Motions *sub judice*, the NEOCH Consent Decree was set to expire by its own terms on June 30, 2013.  According to NEOCH Plaintiffs, in anticipation of this expiration date, negotiations began to extend the degree by joint consent.  (Doc. 388 at 9).  Those efforts proved futile, however, and on June 10, 2013, Plaintiffs moved to extend the Decree.  (Doc. 362).  Plaintiffs initially sought an indefinite extension (*see* Doc. 362 at 28), but later, in the alternative, sought an extension for two presidential election cycles—that is, eight years (*see* Doc. 373 at 22).  After oral argument, the Court granted Plaintiffs' Motion, but opted to extend the Decree for only one election cycle, until December 31, 2016.  (Doc. 383).

NEOCH Plaintiffs move for attorney's fees and costs related to their successful 2013 extension of the Decree (Doc. 388), as well as their various efforts in 2012 defending the Decree in this Court and on appeal (Doc. 393).  SEIU Plaintiffs request fees and costs flowing from their

4

successful preliminary injunction, its defense on appeal, and the subsequent permanent injunction.  (*SEIU v. Husted*, Doc. 120).

## II.    STANDARD OF REVIEW

The Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988(b), permits a court to award reasonable attorney fees to the "prevailing party" in a civil rights action brought under 42 U.S.C. § 1983.  In order to be considered a "prevailing party," a litigant must secure an enduring, irrevocable, court-ordered change in the legal relationship between the parties. *McQueary v. Conway*, 614 F.3d 591, 596 (6th Cir. 2010) (citing *Sole v. Wyner*, 551 U.S. 74, 86 (2007)).  Put another way, "[a] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992).

## III.    ANALYSIS

Defendants do not dispute that Plaintiffs are "prevailing parties" under § 1988.  (Doc. 390 at 1; Doc. 407 at 11).  Accordingly, the Court proceeds to compute the proper award of costs and fees.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The "starting point for determining the amount of a reasonable attorney fee is the 'lodestar' amount which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008).

The party seeking an award of fees must "submit evidence supporting the hours worked and rates claimed.  Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433.  If the party seeking attorney's fees "has established that the number of hours and the rate claimed are reasonable, the lodestar is presumed to be the reasonable fee to which counsel is entitled." *Pennsylvania v. Delaware Valley Citizens Counsel for Clean Air*, 478 U.S. 546, 564 (1986); *see also City of Burlington v.*

*Dague*, 505 U.S. 557, 562 (1992) (The lodestar usually carries a "strong presumption" that is represents a reasonable fee). A "reasonable fee" is one which is "adequate to attract competent counsel, but does not produce a windfall to attorneys." *Hunter v. Hamilton Cnty. Bd. of Elections*, No. 1:10-CV-820, 2013 WL 5467751, at*14 (S.D. Ohio Sept. 30, 2013) (citing *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007)).

### A.    Hours Reasonably Expended

In determining the hours reasonably expended by a prevailing party's counsel, "[t]he question is not whether a party prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to obtain the relief requested"; rather, the standard is whether "a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1173 (6th Cir. 1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001). Moreover, attorneys who seek fees have an obligation "to maintain billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended" on the case, and the Court must be able to conclude that the party seeking the award has sufficiently documented its claim. *Id.* at 1177; *Imwalle*, 515 F.3d at 552.

Both NEOCH and SEIU Plaintiffs have provided the Court with extensive and detailed documentation of their hours, supported by affidavits of counsel related to billing entries, efforts to exclude excessive or redundant hours, and general exercise of billing judgment. The Court finds that Plaintiffs have submitted documentation containing sufficient detail and probative value to enable it to determine that the hours recorded were actually and reasonably expended in this action, with certain exceptions explained below.

NEOCH Plaintiffs have submitted, and the Court has reviewed, time sheets for the Chandra Law Firm, LLC, McTigue & McGinnis, LLC, and Porter, Wright, Miller & Arthur, LLP, for attorneys Subodh Chandra, Sandhya Gupta, and Senior Paralegal Suzanne Zaranko (Doc. 388-3); attorneys Donald McTigue and Corey Colombo (Doc. 388-4 at 7-9); and attorneys Caroline Gentry and Daniel Miller (Doc. 388-6).  Attorneys Chandra, McTigue, and Gentry stated in their declarations that each made a good faith effort to exclude hours that were excessive, redundant, or otherwise unnecessary, as well as in some cases foregoing compensation for some work performed in this case.  (Doc. 388-1 at 3-5; Doc. 388-4 at 2; Doc. 388-5 at 2-3).

Regarding their 2012 work, NEOCH Plaintiffs have submitted, and the Court has reviewed, time sheets for Altshuler Berzon LLP, Porter, Wright, Morris & Arthur, LLP, Hunter, Carnahan, Shoub, Byard & Harshman, McTigue & McGinnis LLC, and the Chandra Law Firm, LLC.  (Doc. 393-3; Doc. 393-8; 393-10; Doc. 393-12; Doc. 393-15).  At least 23 attorneys, as well as paralegals and law clerks, contributed to Plaintiffs' case for this stage of the litigation, at various levels of seniority and experience.  Attorneys Leyton, Gentry, Harshman, McTigue, and Chandra stated in their declarations that each made a good faith effort to exclude hours that were excessive, redundant, or otherwise unnecessary, as well as in some cases foregoing compensation for some work performed in this case.  (Doc. 393-1 at 10-14; Doc. 393-7 at 2-5; Doc. 393-9 at 4; Doc. 393-11 at 1-2; Doc. 393-13 at 4-6).

With regard to SEIU's success in obtaining a preliminary and permanent injunction, and successfully defending the preliminary injunction on appeal, SEIU Plaintiffs have submitted, and the Court has reviewed, time sheets for Altshuler Berzon LLP, Hunter, Carnahan, Shoub, Byard & Harshman, and the Advancement Project.  (*SEIU v. Husted*, Doc. 120-3; Doc. 120-7; Doc.

120-10).  Attorneys Leyton, Harshman, and Judge stated in their declarations that each made a

good faith effort to exclude hours that were excessive, redundant, or otherwise unnecessary, as

well as in some cases foregoing compensation for some work performed in this case.  (*SEIU v.

Husted*, Doc. 120-1 at 10-14; Doc. 120-6 at 4; Doc. 120-9 at 3-4).

Having reviewed Plaintiffs' counsel's declarations and time records, the Court finds that

there was no unnecessary duplication and that the time spent was reasonable.  With regard to the

2013 extension, the Court notes that NEOCH Plaintiffs were required to review and analyze the

lengthy record and docket of a seven-year-old case, numerous provisions of the Ohio Revised

Code, parallel and related litigation, in addition to significant substantive legal research, analysis,

and strategy.  As the Court noted at the time, the legal issues around extending the Decree were

complex and unsettled (*see* Doc. 383 at 8), and the briefing scheduled was expedited and

required intense engagement by all parties.  With regard to Plaintiffs' 2012 work, Plaintiffs

engaged in multiple avenues of defense in order to protect the Decree, including to enjoin the

collateral attack on the decree and move for civil contempt; preparing on an expedited basis to

intervene at the Ohio Supreme Court; defending the Decree against Defendants' motion to

vacate; and moving to modify the Decree.  With regard to SEIU Plaintiffs' work in securing a

preliminary injunction, defending it on appeal, and converting it to a permanent injunction, the

Court recognizes that Plaintiffs achieved court orders preventing the disenfranchisement of

thousands of Ohio voters in 2012 and thereafter; the work required them to attack novel and

complex issues of constitutional law, and required them to collect and analyze thousands of

pages of evidence showing Ohio's violations of voters' rights.

The Court further notes that, although multiple attorneys worked on these cases, "[t]here

is nothing inherently unreasonable about a client having multiple attorneys, and they may all be

compensated if they are not reasonably doing the same work and are being compensated for the distinct contributions of each lawyer." *James v. Frank*, 772 F. Supp. 984, 1002 (S.D. Ohio 1991) (quotation omitted).  The time records submitted in these cases are "sufficiently detailed to enable [the Court] to review the reasonableness of the hours expended," *Wooldridge*, 898 F.2d at 1177, and Plaintiffs have demonstrated proper "billing judgment with respect to the hours worked." *Imwalle*, 515 F.3d at 552 (quotation omitted).

Defendants argue, however, that Plaintiffs have included excessive and redundant hours in their documents presented to the Court.  In general, they attack Plaintiffs' attorneys' hours as "excessive and unreasonable," "exorbitant," "unbelievable," "untenable," and "extravagant." (Doc. 390 at 10-13; Doc. 407 at 27-30).  They insist that the hours expended by Plaintiffs in such activities as, for example, researching, drafting, editing, and consulting are too great, since, in their opinion, the Motions were far too short and contains too few case citations to justify the amount of work reported by Plaintiffs (Doc. 390 at 11), did not require as many lawyers to participate as Plaintiffs employed (Doc. 407 at 31-40), and the briefs "reflect a surprising amount of hours devoted to constitutional research" (*id.* at 41-43).

Defendants invoke a phantom specter.  Once a prevailing party has provided detailed billing records, as here, "conclusory allegations that the award was excessive and that . . . counsel employed poor billing judgment" do not suffice to establish that fees are unwarranted. *Imwalle*, 515 F.3d at 553 (quoting *Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991)). Moreover, Defendants can hardly be heard to complain about the number of hours expended by Plaintiffs, when they themselves engaged in a vigorous opposition to the Decree at nearly every phase of this litigation.  *See City of Riverside v. Rivera*, 477 U.S. 561, 581 n.11 (1986).  Indeed, "[t]he government cannot litigate tenaciously and then be heard to complain about the time

necessarily spent by the plaintiff in response." *Id.*; *see also Communities for Equity v. Michigan High Sch. Athletic Ass'n*, No. 1:98-CV-479, 2008 WL 906031, at *16 (W.D. Mich. Mar. 31, 2008) ("The time required to litigate increases when the defendant bitterly contests the case, forcing the plaintiffs to win their victory from 'rock to rock and from tree to tree.'  Accordingly, [Defendant] must reap what it has sown.") (citation omitted).

More specifically, and with greater merit, Defendants object to various categories of work performed by Plaintiffs as "not reimbursable."  (*See, e.g.*, Doc. 390 at 14).  The Court addresses each category in turn:

**1. Mediation** (2013 NEOCH Plaintiffs):  Defendants object to Plaintiffs' request for fees related to mediation and negotiations conducted at the Sixth Circuit.  (Doc. 390 at 14-15).  Defendants argue that the appeals at this time were not appeals of the extension of the Consent Decree, and thus the work done is non-compensable in relation to the 2013-based Motion.  (*Id.* at 15).  Defendants admit that the extension of the Decree may have been discussed at these mediations, but that it "played a limited role," in light of the greater issue of the matters actual pending on appeal.  (*Id.*).

Plaintiffs counter that it is commonplace for prevailing parties to be awarded fees for time spent attempting to mediate to avoid litigation.  (*See* Doc. 394 at 38 & n.121) (collecting cases).  Indeed, to do otherwise would be to discourage civil rights plaintiffs from attempting to resolve their cases amicably, in direct contrast to this Court's stated policy in support of alternative methods of dispute resolution.  *See* S.D. Ohio Civ. R. 16.3.  Even during the pendency of this action, this Court has repeated its preference for mediation.  (*See* Doc. 368 at 3) (preventing the parties from engaging in "good faith settlement discussions would be contrary to the practice of this Court to encourage parties to settle disputes.").

Moreover, while Defendants are reluctant to reveal the contents of the mediation which took place at the Sixth Circuit, they need not even reach that hurdle:  this Court has already explained that "[i]n the months prior to June 30, 2013, the parties engaged in settlement discussions that they hoped would bring about final resolution of the issues in this case. As the date approached without an agreement, however, Plaintiffs decided to move to extend the Consent Decree, filing the Motion on June 10, 2013."  (Doc. 383 at 3-4).

Accordingly, fees related to mediation are proper.  To the extent Plaintiffs have overbilled for this time, they have agreed to reduce their hours by 0.5 hours.  (Doc. 394 at 39).

**2. Travel** (All Plaintiffs):  Defendants take issue with Plaintiffs' billing for travel to and from the Court for various arguments.  (Doc. 390 at 17; Doc. 407 at 30-37).  Defendants maintain that "[v]arious courts have recognized the excessive nature of such travel charges." (*Id.*) (citing *Woods v. Willis*, 981 F. Supp. 2d 700, 703 (N.D. Ohio 2013) (holding that time spent traveling is reimbursable only where "the travel was related to attendance at court proceedings, depositions, and similar activities and the lawyer was lead counsel at the deposition or an active and essential participant in the other activities.")).

The Court has already addressed this objection in its previous award of fees.  (*See* Doc. 234).  When Plaintiffs have "properly distinguish[ed] between [] reimbursement for [] time spent traveling to various proceedings related to this matter that can be billed at [the] hourly rate[,] and the actual incidental costs inherent with travel such as gas and mileage . . . this Court finds no duplication in awarding [] costs that were incidental to travel and including [the] compensable time as part of the prior lodestar analysis of reasonable hours for the fee award."  *Ne. Coal. for Homeless v. Brunner*, No. 2:06-CV-896, 2010 WL 4939946, at *9 (S.D. Ohio Nov. 30, 2010) *aff'd*, 695 F.3d 563 (6th Cir. 2012).  Accordingly, Plaintiffs' requested fees are proper.

**3. <u>Alleged Clerical Work</u>** (All Plaintiffs):  Defendants object to work performed by Plaintiffs' counsel that was, in their view, "clerical work."  Defendants offer examples of Plaintiffs' attorneys billing for work that included "compilation of exhibits" or other work that Defendants characterize as inappropriate for an individual billing "at [] full attorney rate[s]." (Doc. 390 at 17; Doc. 407 at 45-46).  But as Plaintiffs point out, they are not required to document each detail of each minute of their time; rather, the key requirement for properly-documented billing is that the "documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle*, 515 F.3d at 553 (quotation omitted).  The Court is so satisfied here.  In addition, Plaintiffs have agreed to withdraw 2.6 hours of work done by Attorney McTigue. (Doc. 409 at 54).

**4. <u>Fees for Fees</u>** (All Plaintiffs):  Defendants insist that so-called "fees for fees," for work done in preparing the Motions *sub judice*, should be limited, based on the "general rule that in the absence of unusual circumstances, the hours allowed for preparing and litigating the attorney fee case should not exceed 3% of the hours in the main case."  (Doc. 390 at 16) (quoting *Ne. Ohio Coal. for Homeless v. Sec'y of Ohio*, 695 F.3d 563, 574 (6th Cir. 2012)).

NEOCH Plaintiffs opted to defer until a later request their "fees for fees" for Attorneys Gentry and McTigue related to the fee motion for their 2013 work.  (Doc. 394 at 44).  To the extent that time was included, or time for Attorney Chandra was included, Plaintiffs have already deducted those hours from the 2013-related Motion.  (*Id.* at 45).  In their second motion, Plaintiffs argue that the complexity and importance of these cases, the coordination of the two cases, the time required to eliminate and categorize hours, Defendants' vigorous opposition to

the fees motions, and Plaintiffs' substantial write-off of merit hours justify an award of greater

than the customary 3% for Plaintiffs' "fees for fees."  (Doc. 409 at 67 to 70).

Plaintiffs are correct that the 3% rule must not be a "hard and fast" commandment, else

the rule run afoul of § 1988 and its purposes.  (Doc. 417-1 at 67 n.15).  And the Court agrees that

Defendants have indeed offered "vigorous" opposition to Plaintiffs' fee requests.  But the Court

is nevertheless reluctant to penalize Defendants for raising non-frivolous challenges to the fees

and costs sought.  While it is no doubt true that "[t]he government cannot litigate tenaciously and

then be heard to complain about the time necessarily spent by plaintiff in response," *Rivera*, 477

U.S. at 580 n.11, this concern applies most strongly to litigation over the constitutional violations

themselves; each successful round of meta-litigation takes the Court further from the purposes of

vindicating the constitutional rights protected by § 1983 and funded via § 1988.

The Court is persuaded, however, to accept Plaintiffs' suggestion that the 3% limitation

for "fees for fees" "should be applied to the total merit hours in the two cases combined."  (Doc.

417-1 at 68 n.16).  Defendants opted to file a joint response in opposition to Plaintiffs' fees

requests, and thus to require Plaintiffs' counsel who represent parties in one case but not the

other "to review and sort through significant amounts of irrelevant material in order to identify

which arguments related to" each case.  (Doc. 417-1 at 69 n.18).  Accordingly, the Court finds

that 3% "fees for fees" award should be applied to the total merit hours in the two cases

combined, to reflect their interrelatedness.

**5. Unsuccessful Claims** (All Plaintiffs):  Defendants make several attacks on various

claims and arguments which they characterize as unsuccessful, and thus not warranting fees.

Having reviewed the record evidence at length, and given the above discussion, the Court is

satisfied that no unwarranted fees are included in Plaintiffs' request, other than those previously

mentioned, and other than those which Plaintiffs have already voluntarily removed:  those fees reflected in Defendants' Exhibit 6 (Doc. 407-7), and 21.1 attorney hours and paralegal hours spent on briefing the ballot affirmation issue on appeal, as reflected in some entries in Defendants' Exhibit 7 (Doc. 407-18).  (*See* Doc. 409 at 56-57).

Moreover, § 1988 allows for reimbursement for "all hours reasonably expended on the litigation," and should not be reduced "simply because plaintiff failed to prevail on every contention raised in the lawsuit."  *Hensley*, 461 U.S. at 435.  Indeed, litigants may, in good faith, raise alternative legal grounds for their desired outcome, and "the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee."  *Id.*; *see also Fox v. Vice*, 131 S. Ct. 2205, 2214 (2011).  Similarly, the Sixth Circuit has explained that the proper question is, first, whether plaintiffs have prevailed; once that issue is determined, "they are entitled to recover attorneys' fees for 'all time reasonably spent on a matter,'" even if "some of that time was spent in pursuing issues on research which was ultimately unproductive, rejected by the court, or mooted by intervening events."  *Northcross v. Bd. of Ed. of Memphis City Schools*, 611 F.2d 624, 636 (6th Cir. 1979).

Nevertheless, the Court will address the specific objections raised by Defendants in turn:

a. <u>*Permanent Injunction*</u> (SEIU Plaintiffs):  Defendants dispute that obtaining a permanent injunction in *SEIU v. Husted* cannot have taken Plaintiffs as many hours as they seek fees for, since they did not oppose it.  (Doc. 407 at 54-55).  Defendants object to Plaintiffs' use of an attorney who had no prior experience in the case, necessitating, they assert, that this new attorney expend additional time learning about the case.  (*Id.* at 54).  They also note that the Court's Order granting the injunction (*SEIU v. Husted*, Doc. 112) required only four pages, and

14

found it "necessary only to summarize the rationale of [prior] decisions," further supporting their claim that Plaintiffs' hours were unreasonable and should be reduced.  (Doc. 407 at 55).

Plaintiffs respond that "[n]o competent counsel would ask this Court" to "rubber stamp a conversion of [a] preliminary injunction into a permanent injunction without providing supporting argument or evidence."  (Doc. 409 at 42).  Plaintiffs maintain that, even if Defendants did not oppose the motion, they needed to present the Court with sufficient law and evidence to hold a state law unconstitutional and impose permanent injunctive relief.  (*Id.* at 42-43).  Especially in light of the history of intervention by third parties, Plaintiffs argue, they could not be guaranteed that the injunction would not be attacked.  (*Id.* at 42).  Lastly, Plaintiffs note that, all Defendants did not technically oppose the motion, nor did they consent, necessitating that some evidence and argument be presented to the Court to sustain the request.  (*Id.* at 44).

The Court is satisfied that Plaintiffs' work in seeking a permanent injunction, and providing the Court with the factual and legal basis to enter its Order, was of the sort that "a reasonable attorney would have believed . . . to be reasonably expended in pursuit of success at that point in time when the work was performed."  *Dowling v. Litton Loan Servicing, LP*, No. 2:05-CV-098, 2008 WL 906042, at *3 (S.D. Ohio Mar. 31, 2008) *aff'd and remanded*, 320 F. App'x 442 (6th Cir. 2009) (quoting *Wooldridge*, 898 F.2d at 1173).

*b. Certification of Defendant Class* (SEIU Plaintiffs):  Defendants next object to SEIU Plaintiffs' seeking fees for its motion to certify a defendant class of all of Ohio's 88 boards of elections.  Defendants note that the Court questioned why it was necessary to certify such a class (*see Tr. 6/27/12*, Doc. 329 at 75-76), yet Plaintiffs nevertheless filed their motion to certify on June 29, 2012 (*SEIU v. Husted*, Doc. 25).  The Secretary did not oppose the motion (*see SEIU v. Husted*, Doc. 30, Doc. 50), and Plaintiffs eventually amended their Complaint and removed the

15

request for class certification (*SEIU v. Husted*, Doc. 57, Doc. 63), and the Court ultimately found the request to be moot (*SEIU v. Husted*, Doc. 62).

Plaintiffs respond, and the Court agrees, that although Plaintiffs' motion was ultimately moot, it was not *unreasonable*, particularly in light of the fact that, a month before, in the NEOCH case, the State legislators had argued that they were not bound by the Decree, and so could not be enjoined to comply with it. (*See* Doc. 255 at 3-7). This Court ultimately ruled that the county boards of elections are agents of the Secretary, rendering the attempt to join them as a defendant class unnecessary. But this does not render Plaintiff's motion unreasonable.

c. <u>Motion to Modify</u> (2012 NEOCH Plaintiffs): Defendants also take issue with Plaintiffs' attempt to seek fees for the motion to modify in the NEOCH case, given that the motion was ultimately held to be moot, in light of the SEIU preliminary injunction. (*See* Doc. 332). Defendants insist that Plaintiffs are seeking to "receive fees for work performed in a completely separate case," since it was SEIU Plaintiffs that achieved success with their preliminary injunction. (Doc. 407 at 61) (quoting *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 631 (6th Cir. 2013)). This is not an instance, Defendants argue, where one plaintiff brought alternative legal theories; rather, two different plaintiff-groups filed two different motions, and only one was granted. (*Id.* at 62). Defendants note that, if Plaintiffs are relying on the interrelatedness of the two motions in order to claim success via the Court's ruling, "then counsel are double billing for the same work," especially in light of the "significant overlap between the NEOCH and SEIU legal teams." (*Id.*).

Plaintiffs respond that their motion, as explained above, was not *unreasonable*, and moreover that Defendants have ignored one of the key aspects of the motion: that it was undertaken "to prevent constitutional violations in the November 2012 implementation of the

16

Decree that would have rendered it vulnerable to post-election attack and vacatur." (Doc. 409 at 63). In addition, Plaintiffs argue that their motion was *not* denied; rather, the Court's ultimate Order "grant[ed] the same equitable relief requested by the[] Motion to Modify." (Doc. 332 at 61). Thus, Plaintiffs assert that, unlike the parties in *Binta*, they seek fees for work reasonably undertaken in their case, before the specific motion was rendered moot by the grant of the same relief in the SEIU case. (Doc. 409 at 63).

In light of the above, and the Supreme Court's holdings in *Hensley* and *Fox*, the Court finds that Plaintiffs' work for their motion to modify was reasonably undertaken in pursuit of their case at the time they performed the work. Plaintiffs need not show success on every specific motion in order to obtain fees, and, regardless, Plaintiffs' motion was not unsuccessful.

d. *Contempt Motion* (2012 NEOCH Plaintiffs): Defendants ask the Court to exclude fees for Plaintiffs' motion to hold in contempt the relator-legislators who filed for mandamus in the Ohio Supreme Court, and were subsequently enjoined in this Court from challenging the Decree. (Doc. 407 at 64). Defendants assert that, of the 532 hours claimed relating to the motion to enjoin, 130 hours reference the issue of contempt (or, accounting for block billing, around 89 hours). These hours should be discounted, argue Defendants, since the Court in fact denied issuing any show cause order, and found instead, in its May 11, 2012 Opinion and Order (Doc. 261), that Plaintiffs' request for contempt was premature, since the relators should be given an opportunity to comply with the injunction. (Doc. 407 at 64-65).

Plaintiffs counter that their motion was not denied, it was merely found to be premature; and further that, as the Court noted above, prevailing plaintiffs are generally entitled to fess for pursuing reasonable alternative strategies. (Doc. 409 at 64-65). The Court agrees. Moreover, Plaintiffs' motion was not unreasonable for the reason that relators' extraordinary actions in

17

attempting to circumvent this Court's authority demanded urgent action. Given the short timeframe and uncertainty of the result of the Ohio Supreme Court proceeding, Plaintiffs were justified in pursuing the parallel remedy of a contempt motion while also seeking an injunction. *See Hadix*, 143 F.3d at 256 ("[D]efending a remedy from collateral attack is indistinguishable from affirmatively moving for contempt to enforce compliance with the remedy").

      **6. <u>Work related to the Intervenor Voters</u>** (SEIU Plaintiffs): Lastly, Defendants object to an award of fees for Plaintiffs' work, totaling roughly 40 hours, related to the group of individual voters who sought to intervene at both the trial and appellate levels in the SEIU case. (Doc. 407 at 63). The State Defendants remained neutral as to these attempts, and accordingly argue that, based on the (admittedly mixed) Sixth Circuit authority, they should not be forced to pay Plaintiffs' fees for this work. (*Id.* at 63-64).

      Plaintiffs, for their part, note that they "would not have been in a position of spending time opposing intervention if Defendants had not been engaged in constitutional violations," but nevertheless concede that the Sixth Circuit's decision in *Binta* "appears to foreclose fees for opposing intervention here." (Doc. 409 at 66); *see Binta*, 710 F.3d at 635 ("we conclude that [*Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 757 (1989)] discourages sticking defendant with the bill for plaintiffs' litigation against plaintiff-intervenors. The opinion clearly implies that those costs should be borne by plaintiffs.").

      The Court concludes that it is bound by the holding in *Binta*. This conclusion is even more appropriate where, as here, "making plaintiffs bear the financial responsibility for time spent litigating against []intervenors is not going to destroy the incentive to sue for civil rights violations." *Id.* The Court is hard-pressed to conclude that its refusal to reimburse Plaintiffs' counsel for 40 hours of work, where Plaintiffs are seeking over $1 million in legal fees, will

18

cause the sort of disincentive feared by the Sixth Circuit.  Accordingly, as set forth in Plaintiffs'
Reply, the Court finds that 35.9 hours should be omitted from the award of fees.  (*See* Doc. 409
at 66 & n.14).

### B.    Reasonable Hourly Rate

A reasonable hourly rate is typically "the prevailing market rate, defined as the rate that
lawyers of comparable skill and experience can reasonably expect to command within the venue
of the court of record."  *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004).  The appropriate
rate "is not necessarily the exact value sought by a particular firm, but is rather the market rate in
the venue sufficient to encourage competent representation."  *Sykes v. Anderson*, 419 F. App'x
615, 618 (6th Cir. 2011) (quoting *Gonter*, 510 F.3d at 618).

The Court should look to "the fair market value of the services provided . . . the hourly
rate charged by an attorney for his or her services will normally reflect the training, background,
experience and skill of the individual attorney."  *Wells v. New Cherokee Corp.*, 58 F.3d 233, 239
(6th Cir. 1995).  In determining the reasonable rate, the Court has the discretionary authority to
consider a party's submissions, awards in analogous cases, and its own knowledge and
experience from handling similar requests for fees.  *Project Vote v. Blackwell*, No. 1:06-CV-
1628, 2009 WL 917737, at *5 (N.D. Ohio Mar. 31, 2009).  Moreover, because "the
determination of a reasonable rate is difficult given wide variations in lawyers' experience, skill
and reputation," an attorney's "customary client billing rate is one reliable indicia of that
attorney's prevailing market rate."  *West v. AK Steel Corp. Ret. Acc. Pension Plan*, 657 F. Supp.
2d 914, 932 (S.D. Ohio 2009) (citing *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995)).

Six factors relevant in determining the reasonable rate of an attorney's services:  (1) the
value of the benefit rendered to the client; (2) society's stake in rewarding attorneys who produce
such benefits in order to maintain an incentive to others; (3) whether the services were

undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the

complexity of the litigation; and (6) the professional skill and standing of counsel involved on

both sides. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974).

Based on their evidence of their attorneys' customary rates, the prevailing market rates,

and their assessment of their experience, skill, and reputation, Plaintiffs seek the following:

| Firm | Attorney | Rate ($/hr) |
|---|---|---|
| Altshuler Berzon LLP | Stephen P. Berzon | 750 |
| | Jonathan Weissglass | 615 |
| | Stacey M. Leyton | 565 |
| | Danielle E. Leonard | 490 |
| | Peder Thoreen | 490 |
| | Barbara J. Chisholm | 490 |
| | Caroline Cincotta | 355 |
| | Diana Reddy | 340 |
| | Matthew Murray | 320 |
| | Law Clerks | 215 |
| | Paralegals | 190 |
| Chandra Law Firm | Subodh Chandra | 435 |
| | Ashlie Case Sletvold | 350 |
| | Sandhya Gupta | 300 |
| | Paralegals | 120 |
| McTigue & McGinnis | Donald McTigue | 550 |
| | J. Corey Colombo | 360 |
| | Mark A. McGinnis | 360 |
| Porter, Wright, Morris & Arthur | Kathleen Trafford | 445 |
| | Caroline Gentry | 350 |
| | L. Bradford Hughes | 335 |
| | Eric Gallon | 335 |
| | Daniel Miller | 275 |
| | Jared Klaus | 215 |
| | Law Clerks | 125 |
| | Paralegals, support | 125 |
| Hunter, Carnahan, Shoub, Byard & Harshman | Michael J. Hunter | 450 |
| | Cathrine Harshman | 300 |
| Advancement Project | Donita Judge | 375 |

Plaintiffs argue that their counsel have significant experience in complex civil litigation, including constitutional cases and elections-related litigation. Indeed, this Court has recognized the substantial experience brought to bear by Plaintiffs' attorneys. (Doc. 203 at 19) (noting Plaintiffs' counsel's "substantial expertise in litigating not only civil rights cases, but more specifically election law civil rights actions."). Plaintiffs assert that counsel with "comparable skill and experience" have been awarded similar rates for complex litigation in Ohio. *See Leonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010) (awarding rates up to $825 per hour in cases of "complex civil litigation" when lawyers had "experience and expertise" in that particular area of law); *Hunter*, 2013 WL 5467751, at *17 (noting that the Court awarded rates up to $500 in 2009 and 2010). Plaintiffs also maintain that their counsel are paid "these or higher rates by clients in the legal market." (Doc. 393 at 25) (citing *Leyton Decl.*, Doc. 393-1, ¶ 21; *Gentry Decl.*, Doc. 393-7, ¶ 12; *Chandra Decl.*, Doc. 393-13, ¶¶ 17-18).

Defendants reject the rates proffered by Plaintiffs as "unreasonably high." (Doc. 407 at 67). Although Defendants "acknowledge that there is conflict authority regarding what constitutes reasonable attorney rates" (Doc. 390 at 8), they stress that hourly rates "should not exceed what is necessary to encourage competent lawyers within the relevant community to undertake legal representation," and that, for the appropriate rate, courts should "look to [rates] prevailing community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Hadix*, 65 F.3d at 535-36 (quotation omitted). To calculate "reasonable market rates," the Court may look to a variety of materials, including "a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 499 (6th Cir. 2011). Defendants accordingly encourage the Court to

consider several recent cases reducing fee requests (*see* Doc. 407 at 72-76) , as well as the recent

report by the Ohio State Bar Association, "The Economics of Law Practice in Ohio in 2013"

(Doc. 394-10) ("the 2013 OSBA Report").

In *Libertarian Party of Ohio v. Husted*, for example, a voting rights case challenging an

Ohio law governing ballot access, the plaintiffs' attorneys sought fees at an hourly rate of $350.

No. 2:11-CV-722, 2013 WL 4833033, at *4 (S.D. Ohio Sept. 11, 2013).  This Court considered

fees in similar cases from around this District, "ranging from $300-400," when determining the

appropriate rate for the 134.3 hours expended in 2011 and 2012 by three attorneys.  *Id.*  In light

of the success achieved—a preliminary injunction which was vacated on appeal, on account of

the fact that the offending bill was repealed by the state legislature—the Court concluded that

$300 "appear[ed] to be sufficient to motivate skillful attorneys to undertake representation in §

1983 cases, but not excessive so that it would constitute a windfall."  *Id.* at *4.

*Hunter v. Hamilton County* is also instructive.  In that case, involving a challenge to

voting procedures and protection of the right to vote in Ohio counties within this District, and

involving over 3000 hours of attorney labor, Chief Judge Dlott undertook an extensive analysis

of the proper attorney rates, based on rates set by the 1983 Rubin Committee, adjusted to allow

for a 4% annual cost of living allowance.  *Hunter*, 2013 WL 5467751, at *17.  As a result, the

Court ordered a fee award at the rate of up to $410/hour for certain experienced counsel,

including $410/hour for Attorney Chandra.  *Id.*  The Court observed that the rates requested by

counsel were "below the rates awarded to other plaintiff's attorneys in Ohio with similar years of

experience, including:

> [f]or example, in 2010, this Court awarded fees to the following
> attorneys at the following rates: Jim Helmer (admitted 1975)—
> $498 per hour; Frederick Morgan, Jr. (admitted 1983)—$500 per
> hour; Julie Popham (admitted 1992)—$425 per hour; and Jennifer

22

> Verkamp (admitted 1996)—$450 per hour.  *U.S. ex rel. Ellison v.
> Visiting Physicians Ass'n, P.C.*, No. 1:04-cv-220, 2010 WL
> 2854137 (S.D. Ohio July 19, 2010).  The prior year, the District
> Court approved experienced counsel rates ranging from $351 to
> $497 per hour in an ERISA matter.  *West*, 657 F. Supp. 2d at 934).
> And in 2009, the District Court awarded fees to Mr. McTigue at
> $400 per hour and Mr. McGinnis at $250 per hour.  *Project Vote v.
> Blackwell*, No. 1:06-cv-1682, 2009 WL 917737 (N.D. Ohio March
> 31, 2009).  And the Sixth Circuit recently affirmed a decision from
> the Northern District of Ohio in which the court approved rates
> ranging from $250 to $450 per hour, depending on each attorney's
> experience.  *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F.
> App'x 496, 499 (6th Cir. 2011).

*Id.*

Defendants cite frequently to *Lavin v. Husted*, No. 1:10-CV-1986, 2013 WL 2950334

(N.D. Ohio June 13, 2013), where the district court imposed steep discounts on the hourly rates

and fee award to the plaintiffs' counsel, including several attorneys involved in this litigation.

But Defendants' reliance on this case is belied by the recent decision of the Sixth Circuit

vacating this order.  *Lavin v. Husted*, No. 13-3838, 2014 WL 4357564 (6th Cir. Sept. 4, 2014).

The Court of Appeals roundly criticized the district court's lack of impartiality and improper

reliance on impermissible facts, such as the burden a fee award would place on the taxpayers,

and the district court's apparent aversion for the plaintiffs, described as "abundantly capable of

paying for representation."  *Id.* at *3-4.  Accordingly, the Court will not consider the logic or

conclusions of that vacated opinion.

Lastly, in a prior ruling in this case, the Court considered the appropriate rates for several

of the same attorneys currently seeking fees in these Motions *sub judice*.  In that Opinion, the

Court determined that, for the work of briefing and arguing Plaintiffs' prior motions for fees and

costs, opposition to and settlement of the State of Ohio's appeal of this Court's previous award

of fees, and negotiation of the Consent Decree, Plaintiffs' counsel merited hourly rates ranging

from $325 to $400.  (Doc. 234 at 12-13) (awarding fees to Attorney Chandra at a rate of

$400/hour, and to Attorney Gentry at a rate of $290/hour).

With regard to the 2013 OSBA Report, Defendants assert that the Court should consider

the median, mean, and 75th percentile rates for the over 1,000 Ohio attorneys that responded to

the survey.  (Doc. 407 at 77).  Thus, Defendants argue that many of Plaintiffs' requested rates are

inappropriate, as they far exceed the median rates of $200-250/hour (depending on seniority), the

mean rates of $207-261/hour, or even the 75th percentile rates of $205-325/hour.  (*Id.* at 77-79).

Indeed, Defendants note, thirteen of the twenty-five attorneys here "seek to bill above the 95th

percentile of Ohio attorneys, by years of practice, reported within [the 2013 OSBA Report]."

(*Id.* at 79).  At minimum, Defendants conclude, the Report "provides helpful guidance and a

comparison point for attorney rates in Ohio," especially given that it includes attorneys from

across Ohio, which, Defendants maintain, more accurately reflect the "varied characteristics" of

the 48 counties within the Court's jurisdiction (or 30 within this Court's venue) than a focus

merely on rates at firms in downtown Columbus, Cleveland, or Cincinnati.  (*Id.* at 80-81).

Defendants maintain that the supporting evidence submitted by Plaintiffs does not sustain

Plaintiffs' burden of establishing the reasonableness of their requested rates.  (*Id.* at 81).

Defendants take issue in particular with the declaration of Daniel R. Mordarski (Doc. 393-16),

on the grounds that Mr. Mordarski does not establish expertise on this subject, and his opinions

provide "little, if any, value given the circumstances of these cases," since he spent such little

time reviewing the "voluminous record" yet offers "sweeping generalizations" and "conclusory

opinions." (Doc. 407 at 82).  Defendants take issue with Mr. Mordarski's analogizing to "hand-

picked bankruptcy cases" of questionable relevance, and his comparison of the Altshuler Berzon

firm to the much-larger Jones Day.  (*Id.* at 83).  Defendants also question the relevance of out-of-

town billing rates when compared to the Columbus market, and find Plaintiffs' suggested 15% discount, from San Francisco to Ohio rates, to be "insufficient." (*Id.* at 84).

Finally, Defendants argue that this case, and specifically the work for which Plaintiffs seek reimbursement, while "important and disputed issues," was not "overly" or "extraordinarily complex" in comparison to other areas of legal practice. (Doc. 407 at 85; Doc. 390 at 8). Defendants insist that the "underlying claims in both cases involved well-developed areas of constitutional law," and so were not "of such complexity to justify any considerable deviation from prior Ohio election-law fee awards or standard legal market rates within the South District of Ohio." (Doc. 407 at 85).

Accordingly, Defendants ask the Court to adjust Plaintiffs' requested rates down to the level of the mean rates reported in the 2013 OSBA Report or, at best, the 75th percentile number, resulting in rates of around $205-245/hour for junior attorneys, $275-300/hour for more senior attorneys, and $325/hour for the most senior. (Doc. 407 at 86-87). Defendants also ask the Court to reduce the hourly rates for paralegals and law clerks to $90, or at most $125, the figure reported by Porter Wright. (*Id.* at 87). In any event, Defendants strongly oppose any rate over $400/hour for any attorney. (*Id.*).

Defendants' analysis of the appropriate rates misses the mark in several respects. First, Defendants' reliance on the 2013 OSBA Report is inappropriate. The Report, by its own terms, is "not intended for use in setting minimum, average, or maximum attorney fees or salaries." (*2013 OSBA Report*, Doc. 394-10 at 4). It does not reflect information regarding the skill, experience, and reputation of the responding attorneys—key considerations in the attorney's fees reasonableness analysis. Indeed, the Report aggregates all types of lawyers in Ohio, including non-litigators, transactional attorneys, lawyers who do not practice in federal court, and lawyers

with little or no civil-rights or constitutional-law experience. (*See Stiffman Decl.*, Doc. 394-9, ¶ 20). As Lawrence Stiffman, the Report's author, recounts, the Report also "significantly understates" rates for attorneys, because of the failure of many attorneys and firms to respond; in 2013, only 53% of active attorneys in Ohio responded, with no evidence to suggest that this was a random sampling. (*Id.*, ¶¶ 11, 14; *2013 OSBA Report*, Doc. 394-10 at 5). Moreover, Defendants incorrectly overlook what evidence the Report does offer regarding civil-rights practitioners in Ohio. Although only 13 attorneys reported civil-rights work as they primary practice, and 26 attorneys with civil rights as their primary, secondary, or tertiary practice area, the data available with respect to these lawyers point to rates much closer to those sought by Plaintiffs: $400-500/hour for primary civil-rights practitioners, and $300-550/hour for those attorneys with civil-rights work as some part of their practice. (*See Stiffman Decl.*, Doc. 394-9, ¶¶ 20-21 & Ex. B).

Second, Defendants are incorrect that Plaintiffs' victory in this case was anything but a substantial victory in a hugely complex case involving unsettled areas of both constitutional and procedural law. *See B & G Min., Inc. v. Dir., Office of Workers' Comp. Programs*, 522 F.3d 657, 665 (6th Cir. 2008) (The Sixth Circuit, and other courts, "have routinely referred to factors like experience and complexity in justifying a particular lodestar rate."). Plaintiffs' results ensured the franchise of tens of thousands of Ohio voters. Plaintiffs' work that is the subject of these Motions entailed far more hours of attorney labor than *Libertarian Party* or even *Hunter*; indeed, Plaintiffs seek in total over 6000 hours of attorney work, which, with the exception of the small number of adjustments noted above, the Court considers to be a fair and reasonable assessment of the efforts expended here. (*See* Doc. 393 at 18; 394 at 47; *SEIU v. Husted*, Doc. 120 at 13). The litigation was fast-paced, complicated, and conducted under public scrutiny.

Defendants vigorously opposed Plaintiffs at nearly every step of the case. Mr. Mordarski's declaration further supports the Court's conclusion regarding the complexity of this litigation, and the value of the highly skilled and experienced attorneys who litigated on behalf of Plaintiffs. (*See, e.g.*, *Supp. Mordarski Decl*, Doc. 415, ¶ 8). Plaintiffs have submitted considerable evidence to explain the complexity, risk, time pressure, and significance of this case, and to demonstrate that the market rates for attorneys of comparable skill and experience, in cases as complex, are significantly higher than the rates sought by Defendants. (*See, e.g.*, *Mordarksi Decl.*, Doc. 393-16, ¶¶ 7-17; *Supp. Mordarski Decl.*, Doc. 415, ¶¶ 7-10; *Chandra Decl*, Doc. 393-13, ¶¶ 3-13, 19-20; *Gentry Decl.*, Doc. 393-7, ¶¶ 2-4, 12; *Harshman Decl.*, Doc. 393-9, ¶¶ 2-4; *Leyton Decl.*, Doc. 393-1, ¶¶ 2-11, 20-22; *McTigue Decl.*, Doc. 393-11, ¶ 3; *Judge Decl.*, *SEIU v. Husted*, Doc. 120-9, ¶¶ 2-4, 8).

But Defendants are nevertheless correct that there exists "conflicting authority" in this Circuit regarding "what constitutes reasonable attorney rates." (*See* Doc. 390 at 8). Keeping in mind this conflicting guidance, and in light of the recent fee awards in relevant cases such as *Libertarian Party of Ohio v. Husted*, *Hunter v. Hamilton County*, and this Court's own fee awards earlier in this very case (*see* Doc. 234), the Court is unpersuaded that the full rates sought by Plaintiffs are "the market rate[s] in th[is] venue sufficient to encourage competent representation." *Sykes*, 419 F. App'x at 618 (quotation omitted). Both the civil-rights focused rates in the 2013 OSBA Report, and those rates awarded for voting-rights work in *Libertarian Party of Ohio* and *Hunter* suggest that at least some of the rates requested by Plaintiffs are out-of-step with the prevailing market rates for lawyers of similar skill and experience in this venue.

Having reviewed the customary rates of Plaintiffs' counsel, their training, background, skill, and experience, as well as fee awards in analogous cases, and the Court's own knowledge

27

and experience, the Court hereby concludes that the following rates are reasonable and reflect the prevailing market rate for lawyers of comparable skill and experience. This award, in the Court's view, appears to be sufficient to motivate skillful attorneys to undertake representation in § 1983 cases, but not excessive so that it would constitute a windfall. *See Libertarian Party of Ohio*, 2013 WL 4833033, at *5.

| Firm | Attorney | Rate ($/hr) |
|---|---|---|
| Altshuler Berzon LLP | Stephen P. Berzon | 600 |
| | Jonathan Weissglass | 550 |
| | Stacey M. Leyton | 475 |
| | Danielle E. Leonard | 450 |
| | Peder Thoreen | 450 |
| | Barbara J. Chisholm | 450 |
| | Caroline Cincotta | 320 |
| | Diana Reddy | 305 |
| | Matthew Murray | 290 |
| | Law Clerks | 150 |
| | Paralegals | 135 |
| Chandra Law Firm | Subodh Chandra | 425 |
| | Ashlie Case Sletvold | 350 |
| | Sandhya Gupta | 300 |
| | Paralegals | 120 |
| McTigue & McGinnis | Donald McTigue | 450 |
| | J. Corey Colombo | 360 |
| | Mark A. McGinnis | 360 |
| Porter, Wright, Morris & Arthur | Kathleen Trafford | 445 |
| | Caroline Gentry | 350 |
| | L. Bradford Hughes | 335 |
| | Eric Gallon | 335 |
| | Daniel Miller | 275 |
| | Jared Klaus | 215 |
| | Law Clerks | 125 |
| | Paralegals, support | 125 |
| Hunter, Carnahan, Shoub, Byard & Harshman | Michael J. Hunter | 450 |
| | Cathrine Harshman | 300 |
| Advancement Project | Donita Judge | 375 |

### C.        Reasonableness of the Lodestar Calculation

As the Court noted above, generally, "a strong presumption favors the prevailing

lawyer's entitlement to his lodestar fee." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350

(6th Cir. 2000) (citation and quotation omitted).  Moreover, where, as in these cases, "a plaintiff

has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*,

461 U.S. at 435.  This Court has repeatedly emphasized the importance of this litigation.  (*See,

e.g.*, *SEIU v. Husted*, Doc. 89 at 65-66) ("[The Court] appreciate[s] everyone's time and attention

to what [it] consider[s] the most important matters that come before [it] . . . so [the Court]

want[s] to commend all of the lawyers on jobs very well done.").

This case also involved significant novel and complex constitutional and procedural

issues, including the All Writs Act, the Anti-Injunction Act, the applicability of Fed. R. Civ. P.

60(b), and the constitutionality of state laws and practices under the Equal Protection and Due

Process Clauses.  The Court concludes that:  this case was taken on a contingent fee basis;

Section 1983 litigation involves constitutional rights and is inherently complex, particularly

where the subject is voting regulations, which exist at the intersection of state and federal law;

Section 1983 also seeks to vindicate citizens' constitutional rights and, thus, society has an

interest in encouraging attorneys to take such cases; the skill and standing of counsel on both

sides of this case is substantial; Plaintiffs' counsel ultimately obtained all the relief sought by his

client.  Accordingly, the Court finds that the lodestar calculation represents a fair and reasonable

award.

### D.        Costs and Expenses

Plaintiffs also seek reimbursement for the litigation expenses undertaken in the

prosecution of these actions.  Under § 1988, a prevailing party may recover "reasonable out-of-

pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in

the course of providing legal services," including "[r]easonable photocopying, paralegal expenses, and travel and telephone costs." *Northcross*, 611 F.2d at 639.  Filing and docket fees are also compensable, as is research via online databases such as LexisNexis and Westlaw.  *See Project Vote*, 2009 WL 917737, at *20 & n.17.

Plaintiffs assert that they are entitled to recover their costs for precisely the sorts of categories compensable under § 1988.  (Doc. 388 at 27-28; Doc. 393 at 26-27; *SEIU v. Husted*, Doc. 120 at 18-19)  In particular, Plaintiffs ask for fees for the following categories of expenses: photocopying and printing; online legal research; telephone, fax, and conference services; shipping, postage, and courier service; court filing and transcript fees; overtime expenses and related meals and transportation; travel, including airfare, mileage, taxi fare, meals, and lodging; and expert fees.  (*Id.*).  Plaintiffs note that, with regard to travel expenses, they "distinguish between the reimbursement for . . . time spent traveling to various proceedings related to this matter that can be billed at [their] hourly rate and the actual incidental costs inherent with travel such as mileage and gas."  (*SEIU v. Husted*, Doc. 120 at 19) (quoting Doc. 234 at 16).

Defendants ask the Court to reduce the requested expenses by fifty percent, "to reflect the unreasonable nature of counsel's requests," such as, in Defendants' view, the "excess travel, communications, and research."  (Doc. 407 at 89).  Defendants also insist that some of the expense entries are not sufficiently specific to make clear which costs relate to the work that is the subject of these Motions.  (Doc. 390 at 18).

After review of the costs and expenses submitted by Plaintiffs, and in light of the Court's finding that nearly all of Plaintiffs' hours of attorney work are reasonable, the Court concludes that Plaintiffs' requested costs are reasonable and appropriate, with the exception of any costs associated with the 35.9 hours of attorney work related to the intervenor-voters.  *See supra*, Part.

III.A.6.  Defendants offer no substantive objections to the balance of the costs and expenses sought by Plaintiffs, and the Court is not persuaded that the expenses are unreasonable.

## IV.    CONCLUSION

For the reasons stated above, Plaintiffs' Motions for Attorney's Fees and Costs (Doc. 388; Doc. 393; *SEIU v. Husted*, Doc. 120) are **GRANTED with modifications**, as set forth above.  Plaintiffs are hereby **ORDERED** to submit to the Court, within **30 days** of the date of this Order, a **Bill of Costs**, together with supporting documentation, reflecting the hours the Court has approved, including those omissions and reductions made voluntarily by Plaintiffs, as well as those ordered by the Court, billed at the hourly rates the Court set forth above, and including "fees for fees" for no more than 3% of the total merit hours in the two cases combined.

Furthermore, NEOCH Plaintiffs' Motion for a Hearing (Doc. 419) is **DENIED**.  SEIU Plaintiff's Motion for Extension (*SEIU v. Husted*, Doc. 119) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

_____s/ Algenon L. Marbley_____
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  September 29, 2014**

31