# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **THE NORTHEAST OHIO COALITION**<br>    **FOR THE HOMELESS,** *et al.*, | : | |
| | : | |
| **Plaintiffs,** | : | **Case No. 2:06-CV-896** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **JON HUSTED, IN HIS OFFICIAL** | : | **Magistrate Judge Terence P. Kemp** |
| **CAPACITY AS SECRETARY OF** | : | |
| **THE STATE OF OHIO,** | : | |
| | : | |
| **Defendants.** | : | |

## PRETRIAL ORDER ON MOTIONS *IN LIMINE*

Before the Court are Defendants' March 2, 2016 Motions *in Limine* to Exclude Evidence of Legislative Intent (Doc. 554) and to Exclude Plaintiffs' Expert Opinion Testimony and to Strike Plaintiffs' Expert Reports of Professor Jeffrey Timberlake (Doc. 555). For the following reasons, the Court **DENIES both** motions.

## I. BACKGROUND

This matter arises from an October 24, 2006 complaint alleging various federal statutory and constitutional violations brought by Plaintiffs the Northeast Ohio Coalition for the Homeless ("NEOCH"), *et al.*, against Defendants Ohio Secretary of State, *et al.* (Doc. 2.) In 2006, Plaintiffs challenged then-new provisions of the Ohio Revised Code concerning voter identification for same-day, absentee, and provisional ballots. Since then this matter has assumed various forms. For the purposes of this pretrial order the Court need not detail that development. Suffice to say that Plaintiffs' Second Amended Complaint alleges various federal statutory and constitutional violations arising from Ohio Substitute Senate Bills 205 ("SB 205") and 216 ("SB

216," collectively, "the bills"), which took effect on June 1, 2014. (Second Am. Compl., Doc. 453.) Plaintiffs allege that the bills violate provisions of the Voting Rights Act, Section 1983, and the First, Fourteenth, and Fifteenth Amendments to the United States Constitution. The matter is set for a bench trial on March 16, 2016 at 9:00 A.M. pursuant to the Court's September 25, 2015 Scheduling Order. (Doc. 460.)

## II. LEGAL STANDARDS

### A. Motions *in Limine*

Motions *in limine* allow the Court to rule on the admissibility of evidence in advance of trial to expedite proceedings and give the parties advance notice of the evidence they may not rely upon at trial. *Bennett v. Bd. of Educ. of Washington Cnty. Joint Vocational Sch. Dist.*, C2-08-CV-0663, 2011 WL 4753414, at * 1 (S.D. Ohio Oct. 7, 2011) (citing *Jonasson v. Lutheran Child & Family Servs.,* 115 F.3d 436, 440 (7th Cir. 1997)). To prevail on a motion *in limine*, the movant must show that the evidence is clearly inadmissible. *Id.* If the movant fails to meet this high standard, a Court should defer evidentiary rulings so that questions of foundation, relevancy and potential prejudice may be resolved in the context of trial. *See Ind. Ins. Co. v. Gen. Elec. Co.,* 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). Whether or not to grant a motion *in limine* is within the discretion of a trial court. *Delay v. Rosenthal Collins Grp., LLC*, 2:07-CV-568, 2012 WL 5878873, *2 (S.D. Ohio Nov. 21, 2012) (citing *Branham v. Thomas Cooley Law Sch.,* 689 F.3d 558, 560 (6th Cir.2012)). The Court may reconsider the admissibility of the evidence, however, and even change its ruling on a motion *in limine*, "as the proceedings give context to the pretrial objections." *Bennett*, 2011 WL 4753414, at * 1 (*citing Black v. Columbus Pub. Sch.*, No. 2:96-CV-326, 2007 WL 2713873, at *2 (S.D. Ohio Sept. 17, 2007)).

## B. Motions to Exclude Expert Testimony

Federal Rule of Evidence 702 governs the testimony of expert witnesses. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that prior to admitting expert evidence under Rule 702, district courts must act as a gatekeeper by making a preliminary assessment of "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." 509 U.S. 579, 593-94 (1993). In the context of a bench trial, however, *Daubert* and its progeny are largely irrelevant, and the Court will exercise its discretion to consider what amount of weight to give whatever expert opinion. *See Deal v. Hamilton Cnty. Bd. Of Educ.*, 392 F.3d 840, 852 (6th Cir. 2004) ("The 'gatekeeper' doctrine was designed to protect juries and is largely irrelevant in the context of a bench trial," and the Sixth Circuit "is not in the business of dictating to district courts the amount of weight" to give expert opinions).

## III. ANALYSIS

### A. Motion to Exclude Evidence of Legislative Intent

Defendants ask the Court to exclude evidence that Plaintiffs may proffer to prove legislative intent. Defendants expect Plaintiffs may try to introduce: (1) excerpts of legislative proceedings reflecting "isolated statements" of individual legislators; (2) statements and testimony submitted to the Ohio General Assembly; and (3) public statements about Ohio law made by persons who are not members of the Assembly or affiliated in any way with the Defendants in this case. (Defs.' Mot. *in Limine*, Doc. 554.) Defendants rely on these three grounds: (1) that evidence of legislative intent is irrelevant because Plaintiffs do not claim the challenged statutes are ambiguous; (2) that the particular categories of evidence Plaintiffs will

likely offer are not probative of legislative intent, prejudicial, and prohibited hearsay; and (3) that Ohio law precludes using Government Channel Videos ("GCVs") in judicial proceedings.

As to their first argument, Defendants submit that evidence of legislative intent is irrelevant because statutory construction begins with the statute's text and ends if that text is unambiguous. *See Deutsche Bank Nat. Trust Co. v. Tucker*, 621 F.3d 460, 463 (6th Cir. 2010) ("If the statutory language is unambiguous, the judicial inquiry is at an end, and the plain meaning of the text must be enforced") (internal quotations omitted). According to Defendants, this means that it is improper for the Court to consider evidence of legislative intent unless the Court first finds that "the language of the statute is, itself, capable of bearing more than one meaning." *Dunbar v. State*, 136 Ohio St.3d 181, 186 (2013).

Defendants err. Courts may not look to legislative intent in statutory construction when it is the meaning of an unambiguous statute that is at issue. The crux here is whether the legislature passed the bills with discriminatory intent. Plaintiffs have alleged that the bills violate the Equal Protection Clause of the Fourteenth Amendment. To prove their claims, Plaintiffs must thus demonstrate "[p]roof of racially discriminatory intent or purpose." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). To that end, nothing is more relevant than evidence that the legislature did in fact act with such intent.

Defendants' second argument is threefold. First, under Rule 402, Defendants argue that Plaintiffs' likely evidence of legislative intent, discussed *supra*, is of no probative value. Defendants submit that "'[i]solated statements of individual legislators' do not represent 'the intent of the legislature as a whole.'" (Doc. 554 at 3) (quoting *In re Davis*, 170 F.3d 475, 480 (5th Cir. 1999)). And that "'[t]o the extent that legislative history may be considered, it is the official committee reports that provide the authoritative expression of legislative intent,' not the

4

comments of individual legislators." (*Id.*) (quoting *In re Kelly*, 841 F.2d 908, 912 n.3 (9th Cir. 1988)). Defendants' argument is amiss. This goes to weight, not admissibility. While any one bit of evidence beyond the legislature's official reports cannot be an authoritative exposition of the legislature's intent, such evidence is not therefore worthless. Defendants' second sub-argument is that admission of this evidence will cause confusion and prejudice. According to Defendants, the "only conceivable reason" for admitting such evidence is to impute the particular statements improperly to the entire body. (*Id.* at 5.) To reiterate, even though any one statement cannot be imputed to the entire body, the evidence can still be probative. And Defendants' fear that the introduction of public statements or individual statements of legislators will confuse the Court or prejudice them is misplaced. Defendants' third and final sub-argument is that the statements are inadmissible hearsay. They are not. The statements are not being introduced to prove the truth of the matters asserted; rather, to evince the declarant's then-existing intent, which falls squarely under Rule 803(3), the state-of-mind exception to the rule against hearsay.

Defendant's third and final argument is that Ohio Revised Code § 3353.07 forbids the Court from considering the videos from the Ohio Government Channel that Plaintiffs plan to proffer. That section of the code provides for the Ohio government telecommunications service to give "the state government . . . multimedia support including audio, visual, and internet services, multimedia streaming, and hosting multimedia programs." R.C. § 3353.07(A). It goes on to say that "[s]ervices provided by the Ohio government telecommunications service shall not be used for political purposes included in campaign materials, or otherwise used to influence an election, legislation, issue, judicial decision, or other policy of state government." *Id.* Defendants understand this to mean that neither party may use the videos. According to Defendants, the

State "cannot ignore this clear legislative mandate and attempt to admit them in a federal court proceeding." (Doc. 554 at 4.)

Federal question cases can be bound by no State evidentiary law unless "an issue governed by State substantive law is the object of evidence." Fed.R.Evid. 501 advisory comm. nn., 28 U.S.C.A.; *see Baldwin v. Rice*, 144 F.R.D. 102, 106 (E.D. Cal. 1992) ("There can be no doubt, however, that a state legislature cannot purport to make binding pronouncements of law concerning what evidence may be privileged or otherwise inadmissible in a federal court action involving claims based on federal law."). That is not the case here. Furthermore, the Court's role is to determine whether Plaintiffs successfully prove that the challenged provisions of the bills pass federal statutory and constitutional muster. Any effect that the Court might have on Ohio law in fulfilling that role is tangential to the task at hand.

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Exclude Evidence of Legislative Intent (Doc. 554).

### B. Motion to Exclude Plaintiffs' Expert Testimony and to Strike Expert Reports

Defendants ask the Court to exclude the testimony of Professor Jeffrey Timberlake and to strike his expert reports. (Defs.' Mot. *in Limine*, Doc. 555.) According to Defendants, Professor Timberlake's experience is removed from the controversy at issue, his data unreliable, his methodology shaky, and his testimony self-contradictory. (*Id.*) Defendants erroneously rely on *Daubert* and its progeny to support their arguments. But as discussed in Section II.B., *supra*, the Court's role as gatekeeper in a bench trial is "largely irrelevant." *See Deal*, 392 F.3d at 852. Defendants simply have not met their high burden of showing that Professor Timberlake's testimony is clearly inadmissible.

Even if this Court were to analyze the admissibility of Professor Timberlake's testimony under the *Daubert* factors, his testimony "readily would meet the threshold for admissibility." *See id.*  For one thing, the professor's qualifications as an expert in sociology, demographics, and quantitative methods seem beyond dispute.  He earned a PhD in sociology from the University of Chicago, serves as a tenured Associate Professor of Sociology at the University of Cincinnati, and focuses much of his work—which is quantitative in nature—on racial and ethnic segregation in Ohio and nationally.  Indeed, Professor Timberlake recently qualified as an expert witness to testify and report about the same challenged laws at issue in this case, in an action against the same Defendants, represented by some of the same counsel—in this very court (albeit before a different judge). *See Ohio Democratic Party v. Husted*, Case No. 2:15-cv-1802 (Minute Entry, Dkt. 85, PageID 3522) (S.D. Ohio. Nov. 17, 2015) (Watson, J.). Notably, defense counsel did not object to Professor Timberlake's proffered expert testimony on the impact of the challenged laws just four months ago.  *Id.* (Trial Tr., Dkt. 97, PageID 3969, 3996-97).

For another, Professor Timberlake's testimony and reports are relevant to this case (*i.e.*, they will assist the trier of fact to understand the evidence and to determine facts in issue) and sufficiently reliable. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008). Defendants do not contest the relevancy of his testimony and reports and, as Plaintiffs persuasively argue, the professor has refined his methodology since testifying in *Ohio Democratic Party v. Husted* last fall. (*See* Pls.' Mem. in Opp'n, Dkt. 579, PageID 17541-42.) Defendants fail to articulate how Professor Timberlake's already-accepted methodology has become unreliable in the past four months.  Moreover, Defendants overlook that sociological and demographic modeling, including evidence of the history or ongoing effects of discrimination, has long been a proper subject of expert testimony in Voting Rights Act cases. *See generally*

*League of United Latin Am. Citizens v. Perry*, 548 U.S. 399 (2006); *Husted*, Case No.

2:15-cv-1802 (S.D. Ohio 2015); *United States v. Euclid City Sch. Bd.*, 632 F. Supp. 2d 740

(N.D. Ohio 2009); *Williams v. City of Dallas*, 734 F. Supp. 1317 (N.D. Tex. 1990).

      All told, the Court—acting as the finder of fact in this bench trial—can and will

determine what weight to give Professor Timberlake's testimony and reports in due time.  But

excluding his testimony or reports altogether simply makes no sense at this juncture. The Court

thus **DENIES** Defendants' Motion to Exclude Plaintiffs' Expert Testimony and to Strike Expert

Reports (Doc. 555).

<u>**CONCLUSION**</u>

      The Court **DENIES both** of Defendants' Motions *in Limine* to Exclude Evidence of

Legislative Intent (Doc. 554) and to Exclude Plaintiffs' Expert Testimony and Motion to Strike

Plaintiffs' Expert Reports of Professor Jeffrey Timberlake (Doc. 555).

      **IT IS SO ORDERED.**

                                       **s/Algenon L. Marbley**
                             **ALGENON L. MARBLEY**
                             **UNITED STATES DISTRICT COURT**

**Dated: March 16, 2016**